

# State of Wisconsin



# Judicial Commission

## Annual Report

*2025 Calendar Year*

*110 East Main Street*
*Suite 700, Tenney Building*
*Madison, WI 53703-3328*
*Phone: 608-266-7637*
*Fax: 608-266-8647*
*www.wicourts.gov/judcom*



# Wisconsin Judicial Commission

## Annual Report
**2025 Calendar Year**

**Commission Members as of December 31, 2025**

Mary Beth Keppel, Chair

Donald A. Daugherty, Jr.

Analiese Eicher

Roberta Gassman

John Hendricks

Tom Hruz

Rhonda Lanford

Christopher Meuler

Barbara Notestein

**Executive Director**
Jeremiah C. Van Hecke

**Paralegal**
Karen S. Wojtczak

Case 2:25-cv-01384-LA    Filed 08/03/26    Page 2 of 59    Document 29-4

# Wisconsin Judicial Commission

## Table of Contents

| | | Page |
|---|---|---|
| I. | Introduction | 4 |
| II. | History of the Judicial Commission | 4 |
| III. | Jurisdiction | 4 |
| IV. | Procedure | 5 |
| V. | Membership and Staff | 6 |
| VI. | Meetings and Budget | 7 |
| VII. | Allegations and Disposition | 7 |
| | A. Summary of Activities Related to Allegations | 7 |
| | B. Subjects of Dismissal with Concern or Warning | 9 |
| | C. Formal Disciplinary Proceedings | 9 |
| VIII. | Activity Unrelated to Allegations | 9 |
| | A. Educational Activities | 9 |
| | B. Commissioner Changes | 10 |
| | Appendix | 11 |

## I. Introduction

The Wisconsin Judicial Commission investigates and prosecutes allegations of misconduct or disability on the part of Wisconsin judicial officials. The Commission's purpose is to protect the integrity of the judicial process and to preserve public confidence in the courts. The Commission's mission is to hold Wisconsin judicial officials accountable for violations of the Wisconsin Code of Judicial Conduct while maintaining the independence of the judiciary so necessary to the proper functioning of a democracy. The Commission also strives to strengthen the Wisconsin judiciary and the public's confidence in it by creating a greater awareness, on the part of both the judiciary and the public, of what constitutes proper and improper judicial conduct.

## II. History of the Judicial Commission

A Code of Judicial Ethics was first adopted by the Wisconsin Supreme Court and was in effect from 1968 to 1996. In order to help enforce the Code's standards and rules, and to "discipline and correct judges who engage in conduct which has an adverse effect upon the judicial administration of justice and the confidence of the public in the judiciary and its process," the Court created the first Judicial Commission in 1972. That Commission performed both investigatory and adjudicatory functions. It also had authority to impose limited sanctions upon a judge, subject to review by the Supreme Court.

A 1977 constitutional amendment gave the Supreme Court the authority to suspend or remove judges, as well as to reprimand or censure them. The amendment further provided for this authority to be exercised "pursuant to procedures established by the legislature by law." Effective August 1, 1978, the legislature created the present Judicial Commission as an independent agency within the judicial branch of government. In 1992, the legislature made court commissioners subject to the Commission's jurisdiction.

The Commission reviews and investigates allegations of judicial misconduct or disability. If it finds probable cause of judicial misconduct or disability, it initiates and prosecutes an action in the Supreme Court against the judicial official. The Commission itself does not adjudicate the matter. It does not hold formal hearings and cannot impose discipline on judicial officials.

The present Code of Judicial Conduct was enacted on October 29, 2004 by the Wisconsin Supreme Court with an effective date of January 1, 2005. The Code was further amended by Wisconsin Supreme Court Orders 06-10, 08-25, 09-10, 11-09, 13-14, and 18-06.

## III. Jurisdiction

The Commission's jurisdiction extends to over 500 Wisconsin judges, including the justices of the Supreme Court, the judges of the Court of Appeals, circuit courts, and municipal courts, and those former judges who serve in a reserve or temporary capacity. The Commission's jurisdiction also extends to approximately 350 full- and part-time court commissioners in Wisconsin. Federal Court judges, Tribal Court judges, Administrative Law judges, Referees, and Reserve Judges Emeritus are not subject to the Commission's jurisdiction. The Commission has statutory authority to initiate an investigation upon receipt of information from any reliable source alleging that a judicial official has engaged in misconduct or has a permanent disability that impairs his or her performance.

The Commission has no authority to act as an appellate court. It cannot review, reverse, or vacate a judicial official's decision or interfere in ongoing litigation. For example, the Commission does not investigate claims that a judicial official wrongfully excluded certain evidence, was too lenient or harsh in sentencing, failed to follow child support guidelines, resolved a legal issue incorrectly, or believed perjured testimony. The Commission also lacks the authority to order judicial officials to remove (recuse) themselves from hearing a particular case. The mere filing of a request for investigation does not entitle a complainant to the assignment of a different judicial official to hear a case. Where appropriate, Commission staff may

Case 2:25-cv-01384-LA    Filed 08/03/26    Page 4 of 59    Document 29-4

suggest referral of a matter to another agency or consultation with legal counsel, as the Commission and its staff do not provide legal advice to parties or their attorneys.

Examples of allegations that may be investigated by the Commission include, but are not limited to: improper ex parte communications, conflicts of interest, displays of injudicious temperament, improper demeanor, persistent neglect of duties, racist or sexist remarks, prohibited political or campaign conduct, abuse of power, acceptance of gifts from litigants or lawyers, and serious personal misconduct.

A judicial official's conduct is measured primarily by the Code of Judicial Conduct (Supreme Court Rules, Chapter 60).

## IV. Procedure

An initial substantive contact with the Commission is referred to as an "initial inquiry." The Commission can consider information from any reliable source, including anonymous contacts, media reports, or referrals from other agencies. Persons contacting the Commission with allegations of judicial misconduct or disability are encouraged to submit their allegations in writing. A form is available from the Commission to assist individuals in doing so. (See Appendix D). Commission staff reviews all allegations against judicial officials to determine whether they are within the jurisdiction of the Commission and are not patently frivolous or unfounded. Allegations that do not meet these criteria may be administratively dismissed by the Commission's Executive Director with an appropriate referral, when possible. All allegations disposed of by staff are subject to periodic review by the Commission's Screening Committee.

In all matters not administratively dismissed by staff, the Commission opens a request for investigation (RFI) file. If necessary, the Executive Director seeks additional information from the complainant, his or her attorney, or other persons. A judicial official may be asked at this early stage for an informal, preliminary response. The Executive Director then prepares an evaluation report for the Commission's review. The Commission evaluates the request for investigation to determine whether to authorize an investigation.

Many dismissals occur at this evaluation stage because the complaint: (1) is frivolous or unfounded, or proves so after preliminary inquiry; (2) represents an effort by a disappointed litigant to secure review of the merits of a judge's or court commissioner's decision; or (3) is based on a misunderstanding of the judicial process, the proper role of the court, or the extent of a judicial official's discretion. Other reasons for the Commission's dismissal of a complaint include the following: (1) there is little likelihood of obtaining credible evidence to support the allegation; (2) the allegation, even if true, would constitute a single and minor violation; (3) the judicial official has already taken corrective action on what was, at most, a minor violation; (4) the judicial official no longer holds judicial office; or (5) the alleged conduct is not a violation of the Code of Judicial Conduct.

Judicial officials may be notified of dismissed complaints made against them. However, the Commission may not provide such notification to the judicial official where, for example, the identity of a complainant who requested confidentiality cannot be adequately protected with disclosure; the complaint is so stale or patently frivolous as to not merit notifying the judicial official of the dismissal; or litigation remains pending in a matter involving the complainant before the accused judicial official.

An investigation authorized by the Commission may involve interviewing the complainant, witnesses to the alleged conduct, court personnel, or lawyers who practice before the judicial official who is the subject of the investigation. An investigation may also involve examining relevant transcripts and other documents. Court reporters, court employees, other judicial officials, and lawyers are all required by statute to comply with Commission requests for information, documents, and other materials related to a matter under investigation. The Commission must afford the judicial official who is the subject of the investigation the opportunity to be heard, prior to making any probable cause finding. The Commission also has subpoena power. Investigations may be expanded, accordingly, if additional allegations of

misconduct are made concerning the same judicial official.

State law mandates that all proceedings before the Commission are confidential, unless the judicial official waives confidentiality or one of the narrow statutory exceptions applies. Complainants and others who provide information during an investigation may request that their identities not be disclosed to the judicial official while the matter is pending before the Commission.

Under the administrative rules (*see* Appendix H), once the Commission concludes an investigation, it may dismiss the matter without further action or, after affording the judicial official an opportunity to respond, may dismiss the matter with an expression of the Commission's concerns or an expression of warning, cautioning the judicial official not to engage in specified behavior. Dismissal with an expression of concern or warning may occur when, for example, the alleged misconduct is not willful, persistent, or aggravated, is no longer relevant to continued judicial performance, or constitutes a minor violation which has already been corrected.

If the Commission finds cause to proceed further, the judicial official is notified in writing of the allegation and its factual basis and is given a formal opportunity to respond both in writing and in person before the Commission.

After considering the response(s) of the judicial official, the Commission may dismiss the matter. However, if at this point the Commission finds that there is probable cause to support an allegation that the judicial official has engaged in misconduct warranting discipline, or that the judicial official has a disability substantially and permanently affecting judicial performance, then the Commission must initiate and prosecute a public action against the judicial official in the Supreme Court. The rules of civil procedure apply to the court action, and the judicial official is afforded full due process, including discovery and confrontation rights. The Chief Judge of the Court of Appeals selects a panel of three judges, which consists of at least two judges from the Court of Appeals, to hear the case. The Commission must prove its allegations to a reasonable certainty by clear and convincing evidence. The panel reports its findings of fact, conclusions of law, and recommended disposition to the Supreme Court. The Court then may receive briefs from the parties and hear oral arguments before making the final decision in the case.

Sanctions for misconduct include reprimand, censure, suspension, and removal from office and are determined by the Supreme Court. Article VII, Wisconsin Constitution, provides that a judge who is removed for misconduct is not eligible for reappointment to judicial office or for temporary judicial service.

## V.     Membership and Staff

The Judicial Commission has nine members. The Supreme Court appoints one judge from the Court of Appeals, one circuit court judge, and two lawyers; the Governor, with the advice and consent of the Senate, appoints five nonlawyers. Each member may not be appointed for more than two consecutive, three-year full terms.

The following persons were members of the Commission during 2025: Attorney Donald A. Daugherty, Jr., Analiese Eicher, Roberta Gassman, John Hendricks, Judge Tom Hruz, Attorney Marci Kawski, Mary Beth Keppel, Judge Rhonda Lanford, Judge Wynne Laufenberg, Attorney Christopher Meuler, and Barbara Notestein.

The Commission appoints a lawyer to serve as Executive Director. The Executive Director acts as the Commission's chief administrator and legal counsel, and is responsible for hiring and supervising the Commission's staff and any special investigators, and adhering to the Commission's direction and policies. In 2025, Attorney Jeremiah C. Van Hecke served as Executive Director, and Karen S. Wojtczak served as the Commission's paralegal.

## VI. Meetings and Budget

The Judicial Commission held six regularly scheduled meetings and five special meetings in 2025. Additionally, the Commission's Nominations Committee and Screening Committee each held one meeting in 2025.

The Commission's budget for the current fiscal year of July 2025 through June 2026 is $363,100. An additional $16,200 is allocated for contracting with outside investigators, vendors, and special counsel, as needed.

## VII. Allegations and Disposition

### A. Summary of Activities Related to Allegations

In 2025, the Judicial Commission received 806 initial inquiries from which it evaluated 34 new RFI files. The Commission authorized thirteen new investigations in 2025.

Tables 1 through 4 categorize the 34 new RFI files reviewed in 2025 by type of judicial official, source of information, type of case, and nature of the allegations made. Table 5 illustrates the results of the investigations authorized by the Commission that were completed in 2025.

**Table 1 – Types of judicial officials named in RFIs**

| | |
|---|---|
| Circuit Court Judges | 25 |
| Supreme Court Justices | 4 |
| Municipal Court Judges | 3 |
| Court Commissioners | 2 |
| **Total** | **34** |

**Table 2 – Sources of RFIs**

| | |
|---|---|
| Litigant (*pro se*) | 8 |
| Citizen/Court Watcher | 6 |
| Court Personnel | 5 |
| Litigant (represented) | 4 |
| Attorney | 4 |
| Self-Report | 4 |
| Non-Party | 2 |
| Friend/Relative of Litigant | 1 |
| **Total** | **34** |

**Table 3 – Types of cases giving rise to RFIs***

| Type of Case | Number |
|---|---|
| Non-case | 17 |
| Criminal | 10 |
| Civil | 6 |
| Domestic Relations | 3 |
| Juvenile | 2 |
| Guardianship | 1 |
| Small Claims | 1 |
| **Total** | **40** |

*RFIs may arise from multiple types of cases.

**Table 4 - Allegations in RFIs***

| Nature of Allegation | Number |
|---|---|
| Demeanor/Injudicious Temperament | 15 |
| Improper Ex Parte Communication | 6 |
| Campaign Activity | 6 |
| Failure to Act with Integrity | 6 |
| Partiality/Bias/Prejudice | 5 |
| Delay | 5 |
| Abuse of Power | 4 |
| Denial of Fair Hearing | 4 |
| Conflict of Interest | 3 |
| Charitable/Business Activity | 3 |
| Criminal Conduct | 3 |
| Partisan Politics | 2 |
| Favoritism | 1 |
| Sexual Misconduct | 1 |
| Failure to Respect and Comply with the Law | 1 |
| **Total** | **65** |

*RFIs may address multiple allegations.

**Table 5 - Investigation results completed**

| Disposition | Number |
|---|---|
| Dismissed with expression of concern or warning | 5 |
| Dismissed, no action | 2 |
| Complaints filed with the Supreme Court | 1 |
| **Total** | 8 |

### B.    Subjects of Dismissal with Concern or Warning

Pursuant to the administrative rules, upon conclusion of an investigation, the Commission may dismiss a matter with an expression of concern or warning, cautioning the judicial official not to engage in specified behavior.  Such an expression of concern or warning is not discipline.  In 2025, the Commission expressed concern or warning to judicial officials about conduct as it relates to the following:

- Charitable/Business activity
- Partisan political activity
- Bias
- Improper ex parte communications
- Improper demeanor
- Failure to respect and comply with the law
- Denial of a fair hearing

### C.    Formal Disciplinary Proceedings

On May 27, 2025, the Wisconsin Supreme Court issued its opinion in <u>Wisconsin Judicial Commission v. The Honorable Ellen K. Berz</u>, finding that the judge engaged in misconduct and imposing a seven-day suspension upon Dane County Circuit Court Judge Ellen K. Berz.

On February 7, 2025, the Commission filed a formal complaint against the Honorable Mark Powers, North Prairie Joint Municipal Court Judge.  As of December 31, 2025, that matter was pending before a three-judge Judicial Conduct Panel.

## VIII.    Activity Unrelated to Allegations

### A.    Educational Activities

The Commission, through its Executive Director, receives and responds to numerous inquiries from judges, attorneys, court commissioners, and other individuals on the issue of judicial conduct.  The Commission does not issue advisory opinions, but the Executive Director responds to requests for informal guidance made by judicial officials and candidates for judicial office on the propriety of contemplated conduct as it relates to the Code of Judicial Conduct.  In 2025, the Executive Director responded to 144 requests for informal guidance.  Such communications are encouraged by the Commission. (See Table A-5 in Appendix A for a comparison to past years).

In 2025, the Executive Director attended the Association of Judicial Disciplinary Counsel (AJDC) annual meeting and conference in Washington, D.C.

In 2025, the Executive Director also gave presentations on judicial ethics to new judges at the 2025 New Judge Orientation, as well as to members of the judiciary in Milwaukee County, to court commissioners, and to municipal court judges.  He served on a panel at the Family Law Seminar to discuss independent fact investigations and spoke to officers in the Judge Advocate General's Corps (JAG Corps) from all over the country regarding judicial ethics and judicial discipline systems.

Memberships are maintained with the Wisconsin State Bar, the Association of Judicial Disciplinary Counsel, and the Center for Judicial Ethics for the National Center for State Courts.

### B.	Commissioner Changes

As of August 1, 2025, Commissioner Lanford was newly appointed to the Commission to replace Commissioner Laufenberg, and Commissioner Meuler was newly appointed to the Commission to replace Commissioner Kawski.

Commissioner Keppel was appointed by the Commission to serve as chair, effective September 2025.

# Appendix

Page

A.     Cumulative Tables .................................................................................................... 12

B.     Biographies ............................................................................................................. 21

C.     Succession Chart of Commission Members ............................................................ 25

D.     Request for Investigation Form............................................................................... 27

E.     SCR Chapter 60, Code of Judicial Conduct............................................................ 30

F.     Article VII, Sec. 11, Wisconsin Constitution......................................................... 50

G.     Wisconsin Stat. §§ 757.001, 757.81 to 757.99...................................................... 51

H.     Wisconsin Administrative Code, Rules of the Judicial Commission........................ 55

**Appendix A**

# Cumulative Tables

## Table A-1
## Initial Inquiries, RFIs, Preliminary Evaluations
### (2021-2025)

| | 2021 | 2022 | 2023 | 2024 | 2025 | 5-YEAR TOTAL |
|---|---|---|---|---|---|---|
| **Initial Inquiries** | 2043 | 588 | 664 | 655 | 806 | 4,756 |
| **RFIs** | 36 | 34 | 42 | 36 | 34 | 182 |
| **RFIs dismissed on preliminary evaluation[1]** | 17 | 19 | 33 | 23 | 16 | 108 |
| **Investigations authorized[2]** | 18 | 11 | 8 | 7 | 13 | 57 |

[1]Includes matters which may have been initially submitted during a prior year and excludes those submitted too late in the reporting year to be evaluated before December 31.

[2]More than one RFI may be included in one investigation, and more than one judge may be named in an RFI.

## Table A-2
## Results of Commission Investigations
### (2021-2025)

| | 2021 | 2022 | 2023 | 2024 | 2025 | 5-YEAR TOTAL |
|---|---|---|---|---|---|---|
| **Dismissed, no action*** | 2 | 7 | 2 | 3 | 2 | 16 |
| **Dismissed with expression of concern or warning** | 10 | 8 | 6 | 5 | 5 | 34 |
| **Complaints filed in the Supreme Court** | 0 | 0 | 0 | 1 | 1 | 2 |
| **Total** | 12 | 15 | 8 | 9 | 9 | 52 |

*Includes dismissals resulting from resignations.

## Table A-3
## Subjects of Informal Resolution*
**(1985-2025)**

| | | |
|---|---|---|
| 1. | Intemperate courtroom conduct (e.g., yelling, rudeness, inappropriate language) | 75 |
| 2. | Ex parte or other improper communication | 40 |
| 3. | Delay in performing judicial duties (e.g., in administering or deciding case, signing final order) | 35 |
| 4. | Failure to disqualify or disclose facts relevant to appearance of partiality | 33 |
| 5. | Misuse of the prestige of judicial office | 27 |
| 6. | Abuse of or threat to abuse power (e.g., retaliated against person who filed substitution request or cooperated with Judicial Commission) | 22 |
| 7. | Public comments on a pending case, bias, or prejudgment | 21 |
| 8. | Inappropriate off-the-bench conduct | 17 |
| 9. | Partisan political activity | 9 |
| 10. | Charitable or political fundraising | 9 |
| 11. | Active participation in criminal plea-bargaining | 7 |
| 12. | Failure to respect and comply with the law | 6 |
| 13. | Appointing a close relative to a court position | 4 |
| 14. | Interfering with a party's right to appeal | 3 |
| 15. | Obstruction of justice | 3 |
| 16. | Failure to address attorney misconduct | 3 |
| 17. | Denial of an opportunity to be heard under the law | 3 |
| 18. | Other** | 7 |

*Numbers in table do not correspond with number of informal resolutions or number of judges because many resolutions involved communication about more than one subject or type of conduct.*

** *Past subjects of informal resolution have also included one of each of the following: 1) failure to timely file Trust Account Certification and pay State Bar dues; 2) violation of the gift rule; 3) inaccurate or incomplete financial disclosure report; 4) actively discouraging entry of not guilty pleas; 5) accepting public official's plea in chambers; 6) private use of public resources; and 7) failure to act with integrity.*

**Table A-4**
**Results of Public Disciplinary Cases**
**(1978 – 2025)**

| | |
|---|---|
| **Suspension** | **16** |
| **Reprimand** | **12** |
| **Removal** | **3** |
| **Complaint dismissed by Supreme Court** | **1** |
| **Other\*\*** | **3** |
| **TOTAL** | **35** |

\*\*Includes two unpublished voluntary dismissals and one statement of
discontinuance after conflicting directives by the Supreme Court.

**Table A-5**
**Requests for Informal Guidance**
**(2021-2025)**

| | |
|---|---|
| **2021** | **190** |
| **2022** | **194** |
| **2023** | **161** |
| **2024** | **177** |
| **2025** | **144** |

**Table A-6**
**Published Judicial Disciplinary Cases**

**In re Kading**

70 Wis. 2d 508, 235 N.W.2d 409 (1975), 238 N.W.2d 63 (1976), 239 N.W.2d 297 (1976); 74 Wis. 2d 405, 246 N.W.2d 903 (1976)

*Type of Case:* Violation of financial disclosure rule; violation of court order.
*Results:* Order to comply with rule, public reprimand, civil contempt finding.

**In re Van Susteren**

82 Wis. 2d 307, 262 N.W.2d 133 (1978)

*Type of Case:* Practice of law in violation of rule (other charges dismissed).
*Results:* Public reprimand.

**In the Matter of the Complaint Against Seraphim**

97 Wis. 2d 485, 294 N.W.2d 485, *cert. denied*, 449 U.S. 994 (1980)

*Type of Case:* Acceptance of gift from litigant; failure to report gift on financial disclosure forms; gross personal misconduct (offensive sexual conduct); comments on pending cases; intemperate courtroom conduct; retaliatory use of bail.

*Results:* Three-year suspension without pay.

**In re Disciplinary Proceedings Against Guay**

101 Wis. 2d 171, 303 N.W.2d 669 (1981)

*Type of Case:* Violation of financial disclosure rule (other charges dismissed).
*Results:* Public reprimand and order to comply.

**In the Matter of the Complaint Against Raineri**

102 Wis. 2d 418, 306 N.W.2d 699 (1981)

*Type of Case:* Felony convictions (unnecessary to resolve other charges).
*Results:* Removal.

**In the Matter of the Complaint Against Grady**

118 Wis. 2d 762, 348 N.W.2d 559 (1984)

*Type of Case:* Delay in deciding cases (charge based on Wis. Stat. § 757.025, dismissed; statute held unconstitutional).
*Results:* Public reprimand.

## In the Matter of the Complaint Against Van Susteren

118 Wis. 2d 806, 348 N.W.2d 579 (1984)

*Type of Case:* Gross personal misconduct (misdemeanor convictions for failure to file timely state tax returns, failure to comply with court order, and perform duties as personal representative in estate); failure to issue show cause orders in dormant estates under Wis. Stat. § 863.35(1); delay in deciding cases (charge based on Wis. Stat. § 757.025, dismissed under *Grady*).

*Results:* Two-year suspension without pay.

## In the Matter of the Complaint Against Sterlinske

123 Wis. 2d 245, 365 N.W.2d 876 (1985)

*Type of Case:* Falsified and back-dated court record with intent to mislead; exerted influence on behalf of daughter; retaliatory use of bail and other judicial powers; intemperate courtroom conduct.

*Results:* Removal.

## In the Matter of the Complaint Against Pressentin

139 Wis. 2d 150, 406 N.W.2d 779 (1987)

*Type of Case:* Failure to resign judicial office before becoming candidate for non-judicial office.

*Results:* Six-month suspension without pay.

## In re Disciplinary Proceedings Against Costello

142 Wis. 2d 926, 419 N.W.2d 706 (1988)

*Type of Case:* Use of influence held not to be a violation of the Code of Judicial Ethics.

*Results:* Complaint dismissed.

## In re Disciplinary Proceedings Against Aulik

146 Wis. 2d 57, 429 N.W.2d 759 (1988)

*Type of Case:* Improper oral and written ex parte communications on merits of
*Results:* pending matter.
90-day suspension without pay.

## In re Disciplinary Proceedings Against Gorenstein

147 Wis. 2d 861, 434 N.W.2d 603 (1989)

*Type of Case:* Intemperate and demeaning courtroom conduct (including racist and sexist remarks); prejudgment.

*Results:* Two-year suspension without pay.

### In re Disciplinary Proceedings Against Staege

165 Wis. 2d 21, 476 N.W.2d 876 (1991)

*Type of Case:* Violation of court order resulting in contempt held to be gross personal misconduct in violation of SCR 60.13.
*Results:* Three-year suspension of eligibility for office of municipal judge.

### In re Disciplinary Proceedings Against Breitenbach

167 Wis. 2d 102, 482 N.W.2d 52 (1992)

*Type of Case:* Intemperate, impatient, and demeaning courtroom conduct during the course of 14 judicial proceedings; carrying a concealed and loaded firearm in court; leaving a loaded firearm in courtroom wastebasket.
*Results:* Two-year suspension of eligibility for office.

### In re Disciplinary Proceedings Against Dreyfus

182 Wis. 2d 121, 513 N.W.2d 604 (1994)

*Type of Case:* Delay; filing false pending case status certifications; misleading Commission investigator and court officials.
*Results:* 15-day suspension without pay.

### In re Disciplinary Proceedings Against Carver

192 Wis. 2d 136, 531 N.W.2d 62 (1995)

*Type of Case:* Inappropriate comments on pending case, improper ex parte communication, appearance of partiality.
*Results:* 15-day suspension without pay.

### In re Disciplinary Proceedings Against Crivello

211 Wis. 2d 435, 564 N.W.2d 785 (1997)

*Type of Case:* Gross personal misconduct; spousal abuse.
*Results:* Public reprimand (judge defeated in bid for re-election).

### In re Disciplinary Proceedings Against Tesmer

219 Wis. 2d 708, 580 N.W.2d 307 (1998)

*Type of Case:* Private interviews and communications designed to influence decisions.
*Results:* Public reprimand.

### In re Disciplinary Proceedings Against Stern

224 Wis. 2d 220, 589 N.W.2d 407 (1999)

*Type of Case:* Service in an office of public trust while also serving as a part-time municipal court judge.
*Results:* Public reprimand.

## In re Disciplinary Proceedings Against Michelson

225 Wis. 2d 221, 591 N.W.2d 843 (1999)

*Type of Case:* Inappropriate comment from the bench in a letter to a relative of a litigant and manifesting bias based upon socioeconomic status.

*Results:* Public reprimand.

## In re Disciplinary Proceedings Against Waddick

2000 WI 11, 232 Wis. 2d 733, 605 N.W.2d 861

*Type of Case:* Delay; filing false pending case status certifications; lying to Judicial Commission.

*Results:* Six-month suspension without pay.

## In re Disciplinary Proceedings Against Crawford

2001 WI 96, 245 Wis. 2d 373, 629 N.W.2d 1

*Type of Case:* Threatening chief judge to go public with false accusations about the chief judge, the daughter of the chief judge, the district attorney, and others, if the chief judge would not rescind a lawfully entered order.

*Results:* 75-day suspension without pay.

## In re Disciplinary Proceedings Against Laatsch

2007 WI 20, 299 Wis. 2d 144, 727 N.W.2d 488

*Type of Case:* Presiding over cases involving family members and a client from his private law practice. Misusing the prestige of judicial office to advance his own private financial interests by mentioning current part-time judicial office in advertisement for judge's private law firm.

*Results:* Public reprimand (judge defeated in bid for re-election).

## In re Disciplinary Proceedings Against Ziegler

2008 WI 47, 309 Wis. 2d 253, 750 N.W.2d 710

*Type of Case:* Presiding over cases in which a business was a party to the proceeding during the time the judge's spouse served on the board of directors of the business. Judge did not disclose her spouse's relationship with the business or obtain waivers of the conflict.

*Results:* Public reprimand.

## In re Disciplinary Proceedings Against Gableman

2010 WI 61, 325 Wis. 2d 579, 784 N.W.2d 605
2010 WI 62, 325 Wis. 2d 631, 784 N.W.2d 631

*Type of Case:* Alleged violation of SCR 60.06(3)(c), Wisconsin Code of Judicial Conduct, which, in relevant part, states that a candidate for judicial office shall not knowingly, or with reckless disregard for the statement's truth or falsity, misrepresent the identity, qualifications, present position, or other fact concerning the candidate or an opponent.

*Results:* The Supreme Court split 3-3 on the merits resulting in conflicting directives. The Judicial Commission filed a Statement of Discontinuance.

## In re Disciplinary Proceedings Against Zodrow

2010 WI 107, 329 Wis. 2d 53, 787 N.W.2d 815

*Type of Case:* Failure to dispose of judicial matters promptly, efficiently, and fairly. Willful and persistent failure to perform official duties.

*Results:* Public reprimand (judge defeated in bid for re-election).

## In re Disciplinary Proceedings Against Calvert

2018 WI 68, 382 Wis. 2d 354, 914 N.W.2d 765

*Type of Case:* Engaged in prohibited ex parte communications with a third party and engaged in an independent fact investigation regarding a matter before him. Made statements during an injunction hearing concerning that matter which violated SCR 60.02 and SCR 60.03(1).

*Results:* 15-day suspension without pay.

## In re Disciplinary Proceedings Against Piontek

2019 WI 51, 386 Wis. 2d 703, 927 N.W.2d 552

*Type of Case:* Engaged in prohibited ex parte communications with a prosecutor and engaged in an independent fact investigation regarding a matter before him.

*Results:* 5-day suspension without pay.

## In re Disciplinary Proceedings Against Kachinsky

2019 WI 82, 387 Wis. 2d 823, 930 N.W.2d 252

*Type of Case:* Engaged in behavior towards a clerk that violated SCR 60.02 and SCR 60.03(1), including obsessive, intimidating and retaliatory conduct.

*Results:* 3-year suspension of eligibility for appointment as a reserve municipal court judge; required to file petition with Supreme Court and demonstrate fitness to serve in future judicial office as a reserve municipal court judge in order to be considered for such an office after suspension ends.

## In re Disciplinary Proceedings Against Gorski

2020 WI 5, 390 Wis. 2d 22, 937 N.W.2d 609

*Type of Case:* Court commissioner presiding over cases in which he was a close personal friend of the attorney for parties to proceedings before him. In addition to having a close personal friendship, the court commissioner and attorney traveled frequently on vacation together. Court commissioner did not disclose his relationship with the attorney or obtain waivers of the conflict. Court commissioner made intemperate and undignified comments during a hearing before him.

*Results:* Public reprimand.

## In re Disciplinary Proceedings Against Woldt

2021 WI 73, 398 Wis. 2d 482, 961 N.W.2d 854

*Type of Case:* Crude, sarcastic, and undignified comments made by the judge in five hearings before him to attorneys, parties, and victims. Intemperate remarks concerning victims made in criminal cases. Use of a firearm as a "prop" in the courtroom on two occasions.

*Results:* 7-day suspension without pay.

## In re Disciplinary Proceedings Against Berz

2025 WI 17, 416 Wis. 2d 202, 21 N.W.3d 372

*Type of Case:* Sarcastic and undignified comments made to a litigant by the judge during a hearing. Engaged in behavior that was intemperate and exhibited bias in a separate matter, which included leaving the courthouse in her personal vehicle with a defense attorney to retrieve a defendant who failed to appear for trial.

*Results:* 7-day suspension without pay.

**Appendix B**

# BIOGRAPHIES

## Commission Members as of December 31, 2025

**DONALD A. DAUGHERTY, JR.** is Senior Litigation Counsel for the Defense of Freedom Institute for Policy Studies, an education reform organization based in Washington D.C. Don has over 30 years of experience in trial and appellate litigation and has been a partner at three of Wisconsin's largest law firms. He has been recognized as among the "Best Lawyers in America" and Wisconsin's "Super Lawyers." Don earned his J.D. from Northwestern University School of Law and holds a B.A. from the University of Virginia. Before entering private practice, he clerked for the Hon. Roger J. Miner on the United States Court of Appeals for the Second Circuit. He has served on the boards of numerous civic, professional, and charitable organizations, including as President of the Eastern District of Wisconsin Bar Association. Don is licensed to practice law in Wisconsin. He has been admitted to practice before federal district courts across the country, including the Eastern and Western Districts of Wisconsin, as well as the Second, Seventh, Ninth, and Federal Circuits, and the U.S. Supreme Court. Don has served on the Commission since August 2021.

**ANALIESE EICHER** has served on the Dane County Board of Supervisors for six years and has served for over seven years as a member of the Plan Commission for the City of Sun Prairie. She earned her bachelor's degree from UW-Madison and has led numerous efforts and initiatives to protect and expand voting rights, bolster government transparency, and increase access to higher education. Eicher began her service on the Commission in 2024.

**ROBERTA GASSMAN** has had a long career in public service and leadership at the federal, state, and local levels. She was the longest-serving secretary of the Wisconsin Department of Workforce Development and served as an appointed deputy assistant secretary of Employment and Training at the U.S. Department of Labor and as a top advisor to a governor, a mayor, and a county executive. Gassman earned her master's degree in social work from the Sandra Rosenbaum School of Social Work at UW-Madison, and she has served as faculty for the School and as an honorary fellow and emeritus member of its Board of Visitors. An active community leader, she has served on multiple non-profit boards and commissions, including chairing the Madison Community Foundation Board of Governors and serving on the boards of United Way of Dane County, Edgewood College, the Overture Center, the Rotary Club of Madison, and Madison's Equal Opportunities Commission. She has been recognized with the Wisconsin Women in Government's Legacy Award and the Rotary Club of Madison's Humanitarian Service Award, was named a YWCA Woman of Distinction, and UW-Madison created a distinguished lecture series and fund in her name. Gassman began her service on the Commission in 2024.

**JOHN HENDRICKS** is a retired educator who served in numerous educational, administrative, and community-based roles throughout his career. Hendricks worked for 15 years as a teacher in the School District of Onalaska. He then transitioned to the Sparta Area School District (SASD), where he served as an administrator and superintendent. Outside of the classroom, Hendricks has served as a longtime member of the Wisconsin Arts Board and has spent time coaching young adults with developmental disabilities. Hendricks was named to lead the Sparta Area Chamber of Commerce in 2017, and served on the SASD school board from 2021 to 2024. He began his service on the Commission in 2024.

**THOMAS HRUZ** has served as a judge on District III of the Wisconsin Court of Appeals since September 2014. Previously, he was a shareholder at Meissner Tierney Fisher & Nichols, S.C., where his practice focused on civil litigation, with an emphasis on appellate work. Judge Hruz received his undergraduate degree from UW-Milwaukee (summa cum laude), his master's degree from UW-Madison, and his law degree from Marquette University (magna cum laude). After graduation, he served as a law clerk for Judge John Coffey of U.S. Court of Appeals for the Seventh Circuit and for Justice David Prosser of Wisconsin Supreme Court. Judge Hruz is a past chair of the Appellate Practice Section of the State Bar of Wisconsin and has served on numerous organizations, include the Wisconsin Judicial Council, the WisTAF Board of Directors, and the Wisconsin Access to Justice Commission. He also continues his longstanding service as a Regional Coordinator for the State Bar of Wisconsin High School Mock Trial Tournament. Judge Hruz has served on the Commission since August 2023.

**MARY BETH KEPPEL** is a member of the Board of Directors and a past president of Safe Harbor Child Advocacy Center. She retired from the practice of law in 2012 and resigned her law license in 2013. Keppel was a Dane County Court Commissioner for 25 years, served as a Dane County prosecutor for 10 years, and acted as a staff attorney with Dane County Legal Services. Keppel is a past president of the Wisconsin Family Court Commissioners Association, the Dane County Bar Association, and the Dane County Attorneys Association. While president of the Dane County Bar, she initiated the establishment of a courthouse clinic for unrepresented family law litigants. From 2003 until 2008, Keppel served on the Wisconsin Supreme Court's Board of Bar Examiners, which evaluates the character and fitness of lawyers seeking admission to the bar and grades the bar exam. She served two terms on the Board of Directors for the State Bar's Family Law Section. In 2012, Keppel received the Margo Melli Award from the Legal Association of Women for her contributions to women in the law. She has served as a third grade tutor and an election official since her retirement. Keppel was appointed to the Commission in January 2022, and has served as the chair of the Commission since September 2024.

**RHONDA LANFORD** is a Dane County Circuit Court Judge, elected in 2013 to preside over Branch 16. She is currently on the civil rotation for the Dane County courts. She is the chair of the Civil Benchbook Committee, and the presiding judge in the civil division. Judge Lanford graduated from the University of Wisconsin Law School in 1996 where she held the esteemed position of Editor-in-Chief of the Wisconsin *Law Review*. She competed on the National Moot Court appellate advocacy team, and received numerous law school awards, including the award for best student article in the Wisconsin *Law Review*. As an attorney, Judge Lanford was a recognized legal leader in Dane County and Wisconsin. She has been rated AV (preeminent) by her peers in Martindale Hubbell, is a member of the Martindale Hubbell bar register of preeminent women lawyers, and her AVVO rating is "superb." Year after year, as an attorney, Judge Lanford was named a Super Lawyer by Wisconsin Law & Politics. Out of the thousands of lawyers in Wisconsin, Judge Lanford was recognized as a Wisconsin Top 50 Lawyer and a Wisconsin Top 25 Female Lawyer. Madison Magazine recognized Judge Lanford as a Madison Top 25 Lawyer and she was

also honored as a Leader in the Law by the *Wisconsin Law Journal*. Judge Lanford taught law for over thirteen years as an Adjunct Professor at the University of Wisconsin Law School. Topics include trial advocacy, evidence, ethics, civil procedure, negotiations, depositions, pretrial practice and lawyering skills. She co-founded U.W. Law School's nationally acclaimed Mock Trial Program and coached teams in competitions around the country. Judge Lanford also has extensive experience teaching professionals, including her peers at judicial education seminars in areas such as evidence, expert testimony and numerous other topics. She has taught in Wisconsin and nationally on topics such as evidence, ethics and case law developments. Judge Lanford has served on the Commission since August 2025.

**CHRISTOPHER MEULER** is a member of the Litigation practice group for DeWitt Law Firm, LLP. He has over 20 years of experience handling litigation matters, including insurance coverage, state and federal appeals, defamation, business torts and professional liability, fiduciary litigation, and election law. He earned a J.D. from the University of Wisconsin Law School and a B.A. from Marquette University. Chris is admitted to practice in Wisconsin and has been recognized as a Super Lawyer® since 2013. He is currently a member of the Milwaukee County Ethics Board and the City of Wauwatosa Board of Review. Meuler has served on the Commission since August 2025.

**BARBARA NOTESTEIN** is currently a member of the City of Milwaukee Ethics Board. She is a Wisconsin native and a Beloit College graduate with a Master's Degree from the University of Michigan. After her graduation, she worked as a social worker and served as the Executive Director of Hunger Task Force of Milwaukee. Notestein then served seven terms in the Wisconsin State Assembly (from 1985 to 1999) and was elected by her colleagues as the first woman Assistant Majority Leader. In 2000, she was appointed to serve as the Midwest Regional Administrator of the U.S. Small Business Administration (SBA). Following her service with the SBA, Notestein worked for over 10 years as the Executive Director of Safe & Sound, an organization dedicated to building safe and healthy neighborhoods, expanding community resources, and supporting young people, and, in 2011, was recognized as a White House Champion of Change for her work at Safe & Sound. She began her service on the Judicial Commission in 2024.

## **Commission Staff**

**JEREMIAH C. VAN HECKE** has served as the Wisconsin Judicial Commission's Executive Director since 2013. As the Commission's Executive Director, he acts as agency head and chief counsel to the Commission in the role it has investigating and prosecuting state and local judicial officials concerning alleged violations of the Code of Judicial Conduct. Van Hecke also frequently speaks to groups of judges and attorneys at seminars, conferences, and other events, including those sponsored by the Wisconsin Office of Judicial Education, the Center for Judicial Ethics for the National Center for State Courts, the Wisconsin Department of Justice, the University of Wisconsin, and other agencies and groups. Prior to serving as the Commission's Executive Director, Van Hecke was a criminal prosecutor in Miami, Florida and Milwaukee, Wisconsin. He also engaged in the private practice of law (primarily civil and employment litigation) in Milwaukee and Chicago. Van Hecke graduated from Northwestern University (B.A.) and earned his J.D. from Tulane Law School. He is admitted to practice law in the State of Wisconsin, in the U.S. District Courts for the Eastern and Western Districts of Wisconsin, and in the Seventh Circuit Court of Appeals. Van Hecke is a member of the Association of Judicial Disciplinary Counsel and the Center for Judicial Ethics for the National Center for State Courts.

**KAREN S. WOJTCZAK** has served as a staff member for the Wisconsin Judicial Commission since 2016. In her role as the Commission's paralegal, Wojtczak provides agency support, including office and financial management, acts as a liaison for the Commission in addressing inquiries of stakeholders, including judicial officials, attorneys, and members of the public, prepares and distributes materials for Commission consideration, conducts witness interviews in the course of Commission investigations or prosecutions, and reviews all materials received by the Commission for intake and case management purposes. Prior to working for the Commission, Wojtczak was an investigator for the Chicago Police Department's Office of Professional Standards, where she examined and considered allegations of police misconduct and excessive force. Thereafter, she began her service to the State of Wisconsin at the Department of Workforce Development, where she worked as an adjudicator for its Unemployment Insurance Division, investigating claim eligibility and fraud. Wojtczak graduated from the University of Illinois at Chicago with bachelor's degrees in criminal justice (high distinction) and communication (departmental distinction).

**Appendix C**

## Succession Chart of Commission Members
### (1978-2025)

**Court of Appeals Judge** (Appointed by Supreme Court)

| | | | |
|---|---|---|---|
| 1. | William R. Moser | Milwaukee | August 1978-July 1986 |
| | William Eich | Madison | August 1986-July 1992 |
| | Thomas Cane | Wausau | August 1992-July 1998 |
| | Charles P. Dykman (chair, 2003-2004) | Madison | August 1998-July 2004 |
| | Gregory A. Peterson (chair, 2005-2006) | Eau Claire | August 2004-December 2010 |
| | Paul F. Reilly (chair, 2014-2015) | Waukesha | December 2010-July 2016 |
| | Brian K. Hagedorn | Oconomowoc | August 2016-July 2019 |
| | William W. Brash, III | Fox Point | August 2019-July 2023 |
| | Tom Hruz | Appleton | August 2023-present |

**Circuit Court Judge** (Appointed by Supreme Court)

| | | | |
|---|---|---|---|
| 2. | Gordon Myse | Appleton | August 1978-September 1980 |
| | Earl D. Morton | Kenosha | September 1980-June 1983 |
| | John G. Buchen | Sheboygan | June 1983-May 1984 |
| | Mark J. Farnum | Janesville | June 1984-July 1988 |
| | Frank T. Crivello | Milwaukee | August 1988-July 1994 |
| | Patricia S. Curley | Milwaukee | August 1994-July 1996 |
| | Kathryn Foster | Waukesha | August 1996-July 2003 |
| | David A. Hansher (chair, 2008-2009) | Milwaukee | August 2003-December 2010 |
| | Emily S. Mueller (chair, 2012-2013) | Racine | December 2010-July 2016 |
| | Kendall M. Kelley (chair, 2019-2020) | Green Bay | August 2016-July 2022 |
| | Wynne P. Laufenberg | Racine | August 2022-July 2025 |
| | Rhonda L. Lanford | Madison | August 2025-present |

**Attorneys** (Appointed By Supreme Court)

| | | | |
|---|---|---|---|
| 3. | Gordon Sinykin | Madison | August 1978-July 1986 |
| | Adrian P. Schoone (chair, 1989-1991) | Racine | August 1986-July 1992 |
| | Daniel W. Hildebrand (chair, 1997-1998) | Madison | August 1992-July 1998 |
| | Philip R. Brehm (chair, 2000-2003) | Green Bay | August 1998-July 2004 |
| | Donald Leo Bach (chair, 2007-2008) | Madison | August 2004-December 2009 |
| | Michael J. Aprahamian | Milwaukee | February 2011-October 2014 |
| | Joseph L. Olson (chair, 2018-2019) | Milwaukee | December 2015-July 2022 |
| | Marci V. Kawski | Madison | August 2022-July 2025 |
| | Christopher M. Meuler | Brookfield | August 2025-present |
| 4. | Karen Mercer | Baraboo | October 1978-July 1982 |
| | Richard C. Ninneman (chair, 1984-1985) | Milwaukee | August 1982-July 1988 |
| | Gerald M. O'Brien | Stevens Point | August 1988-July 1994 |
| | Thomas S. Sleik (chair, 1998-2000) | La Crosse | August 1994-July 2000 |
| | Hannah Dugan (chair, 2004-2005) | Milwaukee | August 2000-July 2006 |
| | John R. Dawson (chair, 2011-2012) | Milwaukee | November 2006-September 2012 |
| | Frank J. Daily (chair, 2015-2016) | Milwaukee | September 2012-July 2021 |
| | Donald A. Daugherty, Jr. (chair, 2023-2024) | River Hills | August 2021-present |

## Succession Chart of Commission Members
### (1978-2024)

**Public Members** (Appointed by Governor with Senate Confirmation)

| | | | |
|---|---|---|---|
| 5. | Fred L. Crouther | Milwaukee | August 1978-December 1980 |
| | Shirley Crinion (chair, 1983-1984) | Eau Claire | April 1981-July 1984 |
| | Bernetta Kilpatrick | Menomonee Falls | August 1984-July 1988 |
| | Marilynn Chesbrough | Wautoma | August 1988-July 1997 |
| | Bianca Tyler | Amery | August 1997-October 2000 |
| | Roger T. Reinemann | Mequon | June 2001-December 2004 |
| | William Vander Loop | Kaukauna | January 2005-February 2011 |
| | Lynn M. Leazer (chair, 2013-2014) | Verona | January 2012-December 2016 |
| | Robert H. Papke | Sturgeon Bay | December 2016-June 2019 |
| | Yulonda Anderson (chair, 2021-2023) | Milwaukee | December 2019-March 2024 |
| | Analiese Eicher | Sun Prairie | March 2024-present |
| | | | |
| 6. | Bruce Hagen | Superior | August 1978-March 1979 |
| | Virginia Braun | Antigo | August 1981-July 1984 |
| | Beatrice A. Ptacek | Marshfield | August 1984-May 1988 |
| | Roger D. Biddick (chair, 1991-1993) | Livingston | May 1988-July 1993 |
| | Robert H. Papke (chair, 1995-1997) | Sturgeon Bay | August 1993-February 2001 |
| | Tee Heiser | Woodville | March 2001-December 2002 |
| | Michael R. Miller (chair, 2006-2007) | West Bend | December 2003-February 2012 |
| | Eileen Burnett (chair, 2017-2018) | De Pere | March 2012-February 2022 |
| | Mary Beth Keppel (chair, 2024-present) | Madison | February 2022-present |
| | | | |
| 7. | Frances W. Hurst (chair, 1978-1979) | Madison | August 1978-February 1982 |
| | Robert A. Onkka | Baldwin | February 1982-July 1984 |
| | Judith S. McCaslin | West Salem | August 1984-February 1988 |
| | Frank Meyer | Shawano | February 1988-July 1993 |
| | David R. Huebsch | Onalaska | August 1993-December 2000 |
| | Clifford LeCleir | LaCrosse | January 2001-March 2006 |
| | James M. Haney (chair, 2010-2011) | Stevens Point | April 2006-February 2012 |
| | Saied Assef | Green Bay | March 2012-April 2016 |
| | Steve C. Miller (chair, 2020-2021) | Okauchee | April 2016-December 2021 |
| | Jerry Hancock | Madison | December 2021-May 2022 |
| | Janet Jenkins | Fitchburg | June 2022-March 2024 |
| | Roberta Gassman | Madison | March 2024-present |
| | | | |
| 8. | Warren Carrier | Platteville | August 1978-February 1979 |
| | Bjarne R. Ullsvik (chair, 1981-1983) | Platteville | June 1980-July 1983 |
| | Elizabeth King (chair, 1987-1989) | Green Bay | July 1983-October 1989 |
| | John M. Jarvis (chair, 1994-1995) | Milwaukee | October 1989-August 1995 |
| | Spyro Condos | Lake Geneva | August 1996-March 2004 |
| | Dallas S. Neville | Eau Claire | March 2004-December 2005 |
| | Jennifer Morales | Milwaukee | March 2006-April 2008 |
| | Cynthia Herber | Glendale | February 2009-November 2011 |
| | William E. Cullinan (chair, 2021) | New Berlin | March 2012-December 2021 |
| | Judy K. Ziewacz | Monona | December 2021-March 2024 |
| | John Hendricks | Sparta | March 2024-present |
| | | | |
| 9. | Kay W. Levin (chair, 1979-1981) | Cleveland | October 1978-July 1982 |
| | Joel B. Grossman (chair, 1985-1987) | Madison | April 1983-March 1989 |
| | Rockne G. Flowers (chair, 1993-1994) | Madison | March 1989-July 1994 |
| | Lynda S. Culley | Superior | August 1994-August 1997 |
| | Ileen Sikowski | Crivitz | August 1997-February 2006 |
| | Ginger Alden (chair, 2009-2010) | Wausau | February 2006-February 2012 |
| | Mark Barrette (chair, 2016-2017) | Beaver Dam | March 2012-December 2021 |
| | Jane Foley | Milwaukee | December 2021-March 2024 |
| | Barbara Notestein | Milwaukee | March 2024-present |

**Appendix D**

WISCONSIN JUDICIAL COMMISSION
110 East Main Street, Suite 700            **REQUEST FOR INVESTIGATION**
Madison, WI 53703
(608) 266-7637

Name: _____

Address: _____

_____

Phone:       (      ) _____

I have information regarding possible misconduct or disability on the part of

_____, of the _____ Court in
(name of judicial official)

_____, _____, Wisconsin.
               (city)                           (county)

<u>STATEMENT OF FACTS</u>

1.     When and where did this happen?

      Date(s):_____Time:_____ Location:_____

2.     If your information arises from a court case, please answer these questions:

      a)     What is the name and number of the case?

          Case name: _____ Case no.: _____

      b)     What kind of case is it?

          ❑ criminal ❑ domestic relations ❑ small claims ❑ probate

          ❑ civil ❑ juvenile ❑ other (specify): _____

          _____

c) What is your relationship to the case?

❏ plaintiff/petitioner ❏ defendant/respondent

❏ attorney for _____

❏ witness for _____

❏ other (specify): _____

d) If you were represented by an attorney who witnessed the alleged judicial misconduct, please identify that attorney:

Name of attorney: _____ _____

Address: _____

_____

Phone: ( ) _____

e) Identify, if you are able, any other witnesses to the alleged judicial misconduct:

Name(s): _____ _____

Addresses: _____ _____

_____ _____

Phone: ( ) _____ ( ) _____

3. List documents that support your information that the judicial official engaged in misconduct or has a disability, noting which ones you have attached.

_____

_____

_____

_____

_____

_____

4. Specify below the details of what the judicial official did that you believe constitutes judicial misconduct or amounts to evidence of disability. (Please type or print legibly; attach additional paper, if necessary.)

_____

_____

_____

_____

_____

_____

_____

_____

**STATE LAW PROVIDES THAT THE JUDICIAL COMMISSION'S PROCEEDINGS CONCERNING THIS REQUEST FOR INVESTIGATION ARE CONFIDENTIAL, PURSUANT TO WIS. STAT. § 757.93, UNLESS THE COMMISSION FILES A PETITION OR FORMAL COMPLAINT IN THE WISCONSIN SUPREME COURT.**

**<u>PLEASE SELECT OPTION ONE OR OPTION TWO FOR SIGNATURE.</u>**

**(This form will be returned for completion if neither line has been signed)**

**OPTION ONE:** I REQUEST THAT THE COMMISSION NOT DISCLOSE MY IDENTITY TO THE JUDICIAL OFFICIAL(S) NAMED IN THIS REQUEST (OR OTHERS), IN THE EVENT THE JUDICIAL OFFICIAL(S) WAIVE(S) CONFIDENTIALITY PRIOR TO SUCH A COMMISSION FILING.

Signature: _____ Date: _____

**OPTION TWO:** I DO NOT OBJECT TO DISCLOSURE OF MY IDENTITY TO THE JUDICIAL OFFICIAL(S) NAMED IN THIS REQUEST (OR OTHERS), IN THE EVENT THE JUDICIAL OFFICIAL(S) WAIVE(S) CONFIDENTIALITY PRIOR TO SUCH A COMMISSION FILING.

Signature: _____ Date: _____

**Appendix E**

**SCR CHAPTER 60**
**CODE OF JUDICIAL CONDUCT**

**EFFECTIVE JANUARY 1, 2005**
**Amended Jan. 1, 2007; July 7, 2010; May 22, 2012;**
**July 1, 2014; and February 25, 2019**

**(Code of Judicial Conduct applicable from February 25, 2019 until**
**December 31, 2025)**

| | | | | |
|---|---|---|---|---|
| Preamble. | | | SCR 60.05 | A Judge Shall so Conduct the Judge's Extra-Judicial Activities as to Minimize the Risk of Conflict with Judicial Obligations. |
| SCR 60.01 | Definitions. | | | |
| SCR 60.02 | A Judge Shall Uphold the Integrity and Independence of the Judiciary. | | | |
| SCR 60.03 | A Judge Shall Avoid Impropriety and the Appearance of Impropriety in All of the Judge's Activities. | | SCR 60.06 | A Judge or Judicial Candidate Shall Refrain From Inappropriate Political Activity. |
| SCR 60.04 | A Judge Shall Perform the Duties of the Judicial Office Impartially and Diligently. | | SCR 60.07 | Applicability. |
| | | | SCR 60 | Code of Judicial Conduct Appendix. |

## PREAMBLE

Our legal system is based on the principle that an independent, fair and competent judiciary will interpret and apply the laws that govern us. The role of the judiciary is central to American concepts of justice and the rule of law. Intrinsic to all provisions of this Code are the precepts that judges, individually and collectively, must respect and honor the judicial office as a public trust and strive to enhance and maintain confidence in our legal system. The judge is an arbiter of facts and law for the resolution of disputes and a highly visible symbol of government under the rule of law.

The rules of the Code of Judicial Conduct are authoritative. The Commentary, has three varying functions: 1) to elaborate a standard in the rules; 2) to set forth policy bases for the rules; or 3) by explanation and example, to provide guidance with respect to the purpose and meaning of the rules. The Commentary is not intended as a statement of additional rules.

When the text of a rule uses "shall," "shall not" or "may not," it is intended to impose binding obligations the violation of which can result in disciplinary action. For a judge's conduct to constitute a violation of a rule, the judge must have known or reasonably should have known the facts giving rise to the violation.

The use of "should" or "should not" in the rules is intended to encourage or discourage specific conduct and as a statement of what is or is not appropriate conduct but not as a binding rule under which a judge may be disciplined. When "may" is used, it denotes permissible discretion or, depending on the context, it refers to action that is not covered by specific proscriptions.

The provisions of the Code of Judicial Conduct are rules of reason. They should be applied consistent with constitutional requirements, statutes, other court rules and decisional law and in the context of all relevant circumstances. The Code is to be construed so as not to impinge on the essential independence of judges in making judicial decisions.

The Code is designed to provide guidance to judges and candidates for judicial office and to provide a structure for regulating conduct through disciplinary agencies. It is not designed or intended as a basis for civil liability or criminal prosecution. Furthermore, the purpose of the Code would be subverted if the Code were invoked by lawyers or litigants for mere tactical advantage in a proceeding.

The provisions of the Code are intended to govern conduct of judges and to be binding upon them. It is not intended, however, that every transgression will result in disciplinary action. Whether disciplinary action is appropriate, and the degree of discipline to be imposed, should be determined through a reasonable and reasoned application of the text and should depend on such factors as the seriousness of the transgression, whether there is a pattern of improper activity and the effect of the improper activity on others or on the judicial system. See ABA Standards Relating to Judicial Discipline and Disability Retirement.

Because it is not possible to address every conceivable conduct of a judge that might erode public confidence in the integrity, independence and impartiality of the judiciary, some of the binding rules of the Code are cast in general terms setting forth the principles their specific provisions are intended to foster. See, for example, SCR 60.02, 60.03(1) and

60.05(1) and accompanying Comments. Those rules provide a touchstone against which judicial conduct, actual or contemplated, is to be measured. Care must be taken that the Code's necessarily general rules do not constitute a trap for the unwary judge or a weapon to be wielded unscrupulously against a judge.

The Code of Judicial Conduct is not intended as an exhaustive guide for the conduct of judges. They should also be governed in their judicial and personal conduct by general ethical standards. The Code is intended, however, to state basic standards which should govern the conduct of all judges and to provide guidance to assist judges in establishing and maintaining high standards of judicial and personal conduct.

**SCR 60.01 Definitions.** In this chapter:

**(1)** "Appropriate authority" means the chief judge of an offending judge's district, the director of state courts, the judicial commission, and the office of lawyer regulation.

**(2)** "Candidate" means a person seeking selection for or retention of a judicial office by means of election or appointment who makes a public announcement of candidacy, declares or files as a candidate with the election or appointment authority, or authorizes solicitation or acceptance of contributions or support.

**(3)** "Court personnel" means staff, court officials and others subject to the judge's direction and control, including judicial assistants, reporters, law clerks, and bailiffs. "Court personnel" does not include the lawyers in a judicial proceeding.

**(4)** "De minimis" means an insignificant interest that does not raise reasonable question as to a judge's impartiality or use of the prestige of the office.

**(5)** "Economic interest" means ownership of a more than de minimis legal or equitable interest, or a relationship as officer, director, advisor or other active participant in the affairs of a party, except that none of the following is an economic interest:

(a) Ownership of an interest in a mutual or common investment fund that holds securities, unless the judge participates in the management of the fund or unless a proceeding pending or impending before the judge could substantially affect the value of the interest.

(b) Service by a judge as an officer, director, advisor or other active participant in an educational, religious, charitable, fraternal or civic organization, or service by a judge's spouse or child as an officer, director, advisor or other active participant in any organization.

(c) A deposit in a financial institution, the proprietary interest of a policyholder in a mutual insurance company, of a depositor in a mutual savings association or of a member in a credit union, or a similar proprietary interest, unless a proceeding pending or impending before the judge could substantially affect the value of the interest.

(d) Ownership of government securities, unless a proceeding pending or impending before the judge could substantially affect the value of the securities.

**(6)** "Fiduciary" means a personal representative, trustee, attorney-in-fact, conservator or guardian.

**(7)** "Gift" means the payment or receipt of anything of value without valuable consideration.

**(7m)** "Impartiality" means the absence of bias or prejudice in favor of, or against, particular parties, or classes of parties, as well as maintaining an open mind in considering issues that may come before the judge.

**(8)** "Judge" means a justice of the supreme court, a judge of the court of appeals, a judge of the circuit court, a reserve judge, a municipal judge, a court commissioner, and anyone, whether or not a lawyer, who is an officer of the judicial system and who performs judicial functions.

**(8m)** "Judge-elect" means a person who has been elected or appointed to judicial office but has not yet taken office.

**(9)** "Knowingly" or "knowledge" means actual knowledge of the fact in question, which may be inferred from the circumstances.

**(10)** "Law" means court rules, statutes, constitutional provisions and legal conclusions in published court decisions.

**(11)** "Member of the judge's family" means the judge's spouse, child, grandchild, parent, grandparent and any other relative or person with whom the judge maintains a close familial relationship.

**(12)** "Member of the judge's family residing in the judge's household" means a relative of the judge by blood or marriage or a person treated by the judge as a member of the judge's family who resides in the judge's household.

**(13)** "Nonpublic information" means information that, by law, is not available to the public, including information that is sealed by statute or court order, impounded or communicated in camera, offered in grand jury proceedings or contained in presentencing reports, dependency case reports or psychiatric reports.

**(14)** "Part-time municipal judge" or "part-time court commissioner" means a judge or court commissioner who serves repeatedly on a part-time basis by election or under a continuing appointment.

**(15)** "Require" means the exercise of reasonable direction and control over the conduct of those persons subject to the directions and control.

**(16)** "Third degree of kinship" means a person who is related as a great-grandparent, grandparent, parent, uncle, aunt, brother, sister, child, grandchild, great-grandchild, nephew or niece.

**SCR 60.02 A judge shall uphold the integrity and independence of the judiciary.**

An independent and honorable judiciary is indispensable to justice in our society. A judge should participate in establishing, maintaining and enforcing

high standards of conduct and shall personally observe those standards so that the integrity and independence of the judiciary will be preserved. This chapter applies to every aspect of judicial behavior except purely legal decisions. Legal decisions made in the course of judicial duty on the record are subject solely to judicial review.

## COMMENT

*Deference to the judgments and rulings of courts depends upon public confidence in the integrity and independence of the judges. The integrity and independence of judges depend in turn upon their acting without fear or favor. Although judges should be independent, they must comply with the law, including the provisions of this chapter. Public confidence in the impartiality of the judiciary is maintained by the adherence of each judge to this responsibility. Conversely, violation of this chapter diminishes public confidence in the judiciary and thereby does injury to the system of government under law.*

*The role of the judicial conduct organization like the Wisconsin Judicial Commission is not that of an appellate court. Wis. Admin. Code Sec. JC 3.06 (May 1979) states as follows: "**Commission not to act as appellate court**. The commission may not function as an appellate court to review the decisions of a court or judge or to exercise superintending or administrative control over determinations of courts or judges." It is important to remember this concept as one interprets this chapter, particularly in light of the practice of some groups or individuals to encourage dissatisfied litigants to file simultaneous appeals and judicial conduct complaints.*

**SCR 60.03 A judge shall avoid impropriety and the appearance of impropriety in all of the judge's activities.**

**(1)** A judge shall respect and comply with the law and shall act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary.

## COMMENT

*Public confidence in the judiciary is eroded by irresponsible or improper conduct of judges. A judge must avoid all impropriety and appearance of impropriety. A judge must expect to be the subject of constant public scrutiny. A judge must therefore accept restrictions on the judge's conduct that might be viewed as burdensome by the ordinary citizen and should do so freely and willingly.*

*The prohibition against behaving with impropriety or the appearance of impropriety applies to both the professional and personal conduct of a judge. Because it is not practicable to list all prohibited acts, the proscription is necessarily cast in*

*general terms that extend to conduct by judges that is harmful although not specifically mentioned in the chapter. Actual improprieties under this standard include violations of law, court rules or other specific provisions of this chapter. The test for appearance of impropriety is whether the conduct would create in reasonable minds a perception that the judge's ability to carry out judicial responsibilities with integrity, impartiality and competence is impaired.*

*Restrictions on the personal conduct of judges cannot, however, be so onerous as to deprive them of fundamental freedoms enjoyed by other citizens. Care must be taken to achieve a balance between the need to maintain the integrity and dignity of the judiciary and the right of judges to conduct their personal lives in accordance with the dictates of their individual consciences.*

*In striking this balance the following factors should be considered:*

*(a) the degree to which the personal conduct is public or private;*

*(b) the degree to which the personal conduct is a protected individual right;*

*(c) the potential for the personal conduct to directly harm or offend others;*

*(d) the degree to which the personal conduct is indicative of bias or prejudice on the part of the judge;*

*(e) the degree to which the personal conduct is indicative of the judge's lack of respect for the public or the judicial/legal system.*

*See also Comment to sub. (3).*

**(2)** A judge may not allow family, social, political or other relationships to influence the judge's judicial conduct or judgment. A judge may not lend the prestige of judicial office to advance the private interests of the judge or of others or convey or permit others to convey the impression that they are in a special position to influence the judge. A judge may not testify voluntarily as a character witness.

## COMMENT

*Maintaining the prestige of judicial office is essential to a system of government in which the judiciary functions independently of the executive and legislative branches. Respect for the judicial office facilitates the orderly conduct of legitimate judicial functions. Judges should distinguish between proper and improper use of the prestige of office in all of their activities. For example, it would be improper for a judge to allude to his or her judgeship to gain a personal advantage such as deferential treatment when stopped by a police officer for a traffic offense. Similarly, judicial letterhead must not be used for conducting a judge's personal business.*

*A judge must avoid lending the prestige of judicial office for the advancement of the private interests of others. For example, a judge must not use*

the judge's judicial position to gain advantage in a civil suit involving a member of the judge's family. As to the acceptance of awards, see SCR 60.05(4)(e)1.

Although a judge should be sensitive to possible abuse of the prestige of office, a judge may, based on the judge's personal knowledge, serve as a reference or provide a letter of recommendation. Such a letter should not be written if the person who is the subject of the letter is or is likely to be a litigant engaged in a contested proceeding before the court. However, a judge must not initiate the communication of information to a sentencing judge or a probation or corrections officer but may provide to such persons information for the record in response to a formal request.

Judges may participate in the process of judicial selection by cooperating with appointing authorities and screening committees seeking names for consideration and by responding to official inquiries concerning a person being considered for a judgeship.

A judge must not testify voluntarily as a character witness because to do so may lend the prestige of the judicial office in support of the party for whom the judge testifies. Moreover, when a judge testifies as a witness, a lawyer who regularly appears before the judge may be placed in the awkward position of cross-examining the judge. A judge may, however, testify when properly summoned. Except in unusual circumstances where the demands of justice require, a judge should discourage a party from requiring the judge to testify as a character witness.

**(3)** A judge may not hold membership in any organization that practices invidious discrimination on the basis of race, gender, religion or national origin.

### COMMENT

Membership of a judge in an organization that practices invidious discrimination gives rise to perceptions that the judge's impartiality is impaired. Whether an organization practices invidious discrimination is often a complex question to which judges should be sensitive. The answer cannot be determined from a mere examination of an organization's current membership rolls but rather depends on how the organization selects members and other relevant factors, such as that the organization is dedicated to the preservation of religious, ethnic or cultural values of legitimate common interest to its members or that it is in fact and effect an intimate, purely private organization whose membership limitations could not be constitutionally prohibited.

Whether an organization, club or group is "private" depends on a review of the following factors: 1) size; 2) purpose; 3) policies; 4) selectivity in membership; 5) congeniality; and 6) whether others are excluded from critical aspects of the relationship. An organization that is not "private" is generally said

to discriminate invidiously if it arbitrarily excludes from membership on the basis of race, religion, sex or national origin persons who would otherwise be admitted to membership. See, _New York State Club Ass'n. Inc. v. City of New York_, 108 S. Ct. 2225, 101 L. Ed. 2d 1 (1988); _Board of Directors of Rotary International v. Rotary Club of Duarte_, 481 U.S. 537 (1987), 95 L. Ed. 2d 474; _Roberts v. United States Jaycees_, 468 U.S. 609 (1984). Organizations dedicated to the preservation of religious, fraternal, sororal, spiritual, charitable, civic or cultural values which do not stigmatize any excluded persons as inferior and therefore unworthy of membership are not considered to discriminate invidiously.

Public manifestation by a judge of the judge's knowing approval of invidious discrimination on any basis gives the appearance of impropriety and diminishes public confidence in the integrity and impartiality of the judiciary.

When a judge has reason to believe that an organization to which the judge belongs engages in invidious discrimination that would preclude membership under sub. (3) or under SCR 60.03, the judge may, in lieu of resigning, make immediate efforts to have the organization discontinue its invidiously discriminatory practices but must suspend participation in any other activities of the organization. If the organization fails to discontinue its invidiously discriminatory practices as promptly as possible, the judge must resign from the organization.

**SCR 60.04 A judge shall perform the duties of judicial office impartially and diligently.**
The judicial duties of a judge take precedence over all the judge's other activities. The judge's judicial duties include all the duties of the judge's office prescribed by law.

**(1)** In the performance of the duties under this section, the following apply to adjudicative responsibilities:

(a) A judge shall hear and decide matters assigned to the judge, except those in which recusal is required under sub. (4) or disqualification is required under section 757.19 of the statutes and except when judge substitution is requested and granted.

(b) A judge shall be faithful to the law and maintain professional competence in it. A judge may not be swayed by partisan interests, public clamor or fear of criticism.

(c) A judge shall require order and decorum in proceedings before the judge.

(d) A judge shall be patient, dignified and courteous to litigants, jurors, witnesses, lawyers and others with whom the judge deals in an official capacity and shall require similar conduct of lawyers, staff, court officials and others subject to the judge's direction and control. During trials and hearings, a judge shall act so that the judge's attitude, manner or tone toward counsel or witnesses does not prevent the proper presentation of the cause or the ascertainment of the truth. A judge

may properly intervene if the judge considers it necessary to clarify a point or expedite the proceedings.

## COMMENT

*The duty to hear all proceedings fairly and with patience is not inconsistent with the duty to dispose promptly of the business of the court. Judges can be efficient and businesslike while being patient and deliberate.*

*In respect to sub. (c), by order of June 4, 1996, the Supreme Court adopted Standards of Courtesy and Decorum for the Courts of Wisconsin, chapter 62 of the Supreme Court Rules.*

(e) A judge shall perform judicial duties without bias or prejudice. A judge may not, in the performance of judicial duties, by words or conduct, manifest bias or prejudice, including bias or prejudice based upon race, gender, religion, national origin, disability, age, sexual orientation or socioeconomic status, and may not knowingly permit staff, court officials and others subject to the judge's direction and control to do so.

## COMMENT

*A judge must refrain from speech, gestures or other conduct that could reasonably be perceived as sexual harassment and must require the same standard of conduct of others subject to the judge's direction and control.*

*A judge must perform judicial duties impartially and fairly. A judge who manifests bias on any basis in a proceeding impairs the fairness of the proceeding and brings the judiciary into disrepute. Facial expression and body language, in addition to oral communication, can give to parties or lawyers in the proceedings, jurors, the media and others an appearance of judicial bias. A judge must be alert to avoid behavior that may be perceived as prejudicial.*

(f) A judge shall require lawyers in proceedings before the judge to refrain from manifesting, by words or conduct, bias or prejudice based upon race, gender, religion, national origin, disability, age, sexual orientation or socioeconomic status against parties, witnesses, counsel or others. This subsection does not preclude legitimate advocacy when race, gender, religion, national origin, disability, age, sexual orientation or socioeconomic status or other similar factors are issues in the proceeding.

(g) A judge may not initiate, permit, engage in or consider ex parte communications concerning a pending or impending action or proceeding except that:

1. A judge may initiate, permit, engage in or consider ex parte communications for scheduling, administrative purposes or emergencies that do not deal with substantive matters or issues on the merits if all of the following conditions are met:

a. The judge reasonably believes that no party will gain a procedural or tactical advantage as a result of the ex parte communication.

b. When the ex parte communication may affect the substance of the action or proceeding, the judge promptly notifies all of the other parties of the substance of the ex parte communication and allows each party an opportunity to respond.

2. A judge may obtain the advice of a disinterested expert on the law applicable to a proceeding before the judge if the judge gives notice to the parties of the person consulted and the substance of the advice and affords the parties reasonable opportunity to respond.

3. A judge may consult with other judges or with court personnel whose function is to aid the judge in carrying out the judge's adjudicative responsibilities.

4. A judge may, with the consent of the parties, confer separately with the parties and their lawyers in an effort to settle matters pending before the judge.

5. A judge may initiate, permit, engage in or consider ex parte communications when expressly authorized by law.

6. A judge may initiate, permit, engage in or consider ex parte communications knowingly waived by a participant when the judge is assigned to a therapeutic, treatment or problem-solving docket in which the judge must assume a more interactive role with participants, treatment providers, probation officers, social workers, prosecutors, defense counsel, and others.

## COMMENT

*The proscription against communications concerning a proceeding includes communications from lawyers, law teachers, and other persons who are not participants in the proceeding, except to the limited extent permitted.*

*To the extent reasonably possible, all parties or their lawyers shall be included in communications with a judge.*

*Whenever presence of a party or notice to a party is required by SCR 60.04 (1) (g), it is the party's lawyer, or if the party is unrepresented, the party, who is to be present or to whom notice is to be given.*

*An appropriate and often desirable procedure for a court to obtain the advice of a disinterested expert on legal issues is to invite the expert to file a brief* amicus curiae.

*Certain ex parte communication is approved by SCR 60.04 (1) (g) to facilitate scheduling and other administrative purposes and to accommodate emergencies. In general, however, a judge must discourage ex parte communication and allow it only if all the criteria stated in SCR 60.04 (1) (g) are clearly met. A judge must disclose to all parties all ex parte communications described in SCR 60.04 (1) (g)*

*1 and 2 regarding a proceeding pending or impending before the judge.*

*A judge must not independently investigate facts in a case and must consider only the evidence presented.*

*A judge may request a party to submit proposed findings of fact and conclusions of law, so long as the other parties are apprised of the request and are given an opportunity to respond to the proposed findings and conclusions.*

*A judge should not accept trial briefs that are not exchanged with adversary parties unless all parties agree otherwise in advance of submission of the briefs.*

*A judge must make reasonable efforts, including the provision of appropriate supervision, to ensure that SCR 60.04 (1) (g) is not violated through law clerks or other personnel on the judge's staff.*

*If communication between the trial judge and the appellate court with respect to a proceeding is permitted, a copy of any written communication or the substance of any oral communication should be provided to all parties.*

*The prohibition of a lawyer's ex parte communication with a judge and others is set forth in SCR 20:3.5.*

(h) A judge shall dispose of all judicial matters promptly and efficiently.

**COMMENT**

*In disposing of matters promptly and efficiently, a judge must demonstrate due regard for the rights of the parties to be heard and to have issues resolved without unnecessary cost or delay. Containing costs while preserving fundamental rights of parties also protects the interests of witnesses and the general public. A judge should monitor and supervise cases so as to reduce or eliminate dilatory practices, avoidable delays and unnecessary costs. A judge should encourage and seek to facilitate settlement, but parties should not feel coerced into surrendering the right to have their controversy resolved by the courts.*

*Prompt disposition of the court's business requires a judge to devote adequate time to judicial duties, to be punctual in attending court and expeditious in determining matters under submission, and to insist that court officials, litigants and their lawyers cooperate with the judge to that end.*

(hm) A judge shall uphold and apply the law and shall perform all duties of judicial office fairly and impartially. A judge shall also afford to every person who has a legal interest in a proceeding, or to that person's lawyer, the right to be heard according to the law. A judge may make reasonable efforts, consistent with the law and court rules, to facilitate the ability of all litigants, including self-represented litigants, to be fairly heard.

**COMMENT**

*A judge may exercise discretion consistent with the law and court rules to help ensure that all litigants are fairly heard. A judge's responsibility to promote access to justice, combined with the growth in litigation involving self-represented litigants, may warrant more frequent exercise of such discretion using techniques that enhance the process of reaching a fair determination in the case. Although the appropriate scope of such discretion and how it is exercised will vary with the circumstances of each case, a judge's exercise of such discretion will not generally raise a reasonable question about the judge's impartiality. Reasonable steps that a judge may take in the exercise of such discretion include, but are not limited to, the following:*

*1. Construe pleadings to facilitate consideration of the issues raised.*

*2. Provide information or explanation about the proceedings.*

*3. Explain legal concepts in everyday language.*

*4. Ask neutral questions to elicit or clarify information.*

*5. Modify the traditional order of taking evidence.*

*6. Permit narrative testimony.*

*7. Allow litigants to adopt their pleadings as their sworn testimony.*

*8. Refer litigants to any resources available to assist in the preparation of the case or enforcement and compliance with any order.*

*9. Inform litigants what will be happening next in the case and what is expected of them.*

(j) A judge may not, while a proceeding is pending or impending in any court, make any public comment that may reasonably be expected to affect the outcome or impair the fairness of the proceeding. The judge shall require court personnel subject to the judge's direction and control to similarly abstain from comment. This subsection does not prohibit a judge from making public statements in the course of his or her official duties or from explaining for public information the procedures of the court. This paragraph does not apply to proceedings in which the judge is a litigant in a personal capacity.

**COMMENT**

*The requirement that judges abstain from public comment regarding a pending or impending proceeding continues during any appellate process and until final disposition. This paragraph does not prohibit a judge from commenting on proceedings in which the judge is a litigant in a personal capacity, but in cases such as a writ of <u>mandamus</u> where the judge*

*is a litigant in an official capacity, the judge must not comment publicly.*

(k) A judge may not commend or criticize jurors for their verdict other than in a court order or opinion in a proceeding but may express appreciation to jurors for their service to the judicial system and the community.

### COMMENT

*Commending or criticizing jurors for their verdict may imply a judicial expectation in future cases and may impair a juror's ability to be fair and impartial in a subsequent case.*

(m) A judge may not disclose or use, for any purpose unrelated to judicial duties, nonpublic information acquired in a judicial capacity.

(o) A judge shall cooperate with other judges as members of a common judicial system to promote the satisfactory administration of justice.

**(2)** In the performance of the duties under this section, the following apply to administrative responsibilities:

(a) A judge shall diligently discharge the judge's administrative responsibilities without bias or prejudice and maintain professional competence in judicial administration, and should cooperate with other judges and court officials in the administration of court business.

(b) A judge shall require staff, court officials and others subject to the judge's direction and control to observe the standards of fidelity and diligence that apply to the judge and to refrain from manifesting bias or prejudice in the performance of their official duties.

(c) A judge may not make unnecessary appointments. A judge shall exercise the power of appointment impartially and on the basis of merit. A judge shall avoid nepotism and favoritism. A judge may not approve compensation of appointees beyond the fair value of services rendered.

### COMMENT

*Appointees of a judge include assigned counsel, officials such as referees, commissioners, special masters, receivers and guardians, and personnel, such as clerks, judicial assistants and bailiffs. Consent by the parties to an appointment or an award of compensation does not relieve the judge of the obligation prescribed by SCR 60.04 (2)(c).*

**(3)** In the performance of the duties under this section the following apply to disciplinary responsibilities:

(a) A judge who receives information indicating a substantial likelihood that another judge has committed a violation of this chapter should take appropriate action. A judge having personal knowledge that another judge has committed a violation of this chapter that raises a substantial question as to the other judge's fitness for office shall inform the appropriate authority.

(b) A judge who receives information indicating a substantial likelihood that a lawyer has committed a violation of the rules of professional conduct for attorneys should take appropriate action. A judge having personal knowledge that a lawyer has committed a violation of the rules of professional conduct for attorneys that raises a substantial question as to the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects shall inform the appropriate authority. This paragraph does not require a judge to report conduct disclosed through a judge's participation in a group to assist ill or disabled judges or lawyers when such information is acquired in the course of assisting an ill or disabled judge or lawyer.

(c) Acts of a judge, in the discharge of disciplinary responsibilities, required or permitted under par. (a) or (b) are part of a judge's judicial duties and shall be absolutely privileged and no civil action predicated on those acts may be instituted against the judge.

### COMMENT

*Appropriate action may include direct communication with the judge or lawyer who has committed the violation, other direct action if available, and reporting the violation to an appropriate authority or other agency or body.*

**(4)** Except as provided in sub. (6) for waiver, a judge shall recuse himself or herself in a proceeding when the facts and circumstances the judge knows or reasonably should know establish one of the following or when reasonable, well-informed persons knowledgeable about judicial ethics standards and the justice system and aware of the facts and circumstances the judge knows or reasonably should know would reasonably question the judge's ability to be impartial:

### COMMENT

*Under this rule, a judge must recuse himself or herself whenever the facts and circumstances the judge knows or reasonably should know raise reasonable question of the judge's ability to act impartially, regardless of whether any of the specific rules in SCR 60.04 (4) applies. For example, if a judge were in the process of negotiating for employment with a law firm, the judge would be required to recuse himself or herself from any matters in which that law firm appeared, unless the recusal was waived by the parties after disclosure by the judge.*

*Section 757.19 of the statutes sets forth the circumstances under which a judge is required by law to disqualify himself or herself from any civil or*

*criminal action or proceeding and establishes the procedures for disqualification and waiver.*

*A judge should disclose on the record information that the judge believes the parties or their lawyers might consider relevant to the question of recusal, even if the judge believes there is no real basis for recusal.*

*By decisional law, the rule of necessity may override the rule of recusal. For example, a judge might be required to participate in judicial review of a judicial salary statute or might be the only judge available in a matter requiring immediate judicial action, such as a hearing on probable cause or temporary restraining order. In the latter case, the judge must disclose on the record the basis for possible recusal and use reasonable efforts to transfer the matter to another judge as soon as practicable.*

(a) The judge has a personal bias or prejudice concerning a party or a party's lawyer or personal knowledge of disputed evidentiary facts concerning the proceeding.

### COMMENT

*As a general matter, for recusal to be required under this provision, the personal bias or prejudice for or against a party or the personal knowledge of disputed facts must come from an extrajudicial source. A bias or prejudice requiring recusal most often arises from a prior personal relationship but may arise from strong personal feelings about the alleged conduct of a party. If a judge's personal bias or prejudice concerning a party's lawyer is of such a degree as to be likely to transfer to the party, the judge's recusal is required under this provision.*

(b) The judge of an appellate court previously handled the action or proceeding as judge of another court.

(c) The judge served as a lawyer in the matter in controversy, or a lawyer with whom the judge previously practiced law served during such association as a lawyer concerning the matter, or the judge has been a material witness concerning the matter.

### COMMENT

*A lawyer in a government agency does not ordinarily have an association with other lawyers employed by that agency within the meaning of SCR 60.04 (4) (c); a judge formerly employed by a government agency, however, should recuse himself or herself in a proceeding if the judge's impartiality reasonably may be questioned because of such association.*

(d) The judge knows that he or she, individually or as a fiduciary, or the judge's spouse or minor child wherever residing, or any other member of the judge's family residing in the judge's household has an economic interest in the subject matter in controversy or in a party to the proceeding or has any other more than <u>de minimis</u> interest that could be substantially affected by the proceeding.

### COMMENT

*A financial interest requiring recusal does not occur solely because the judge is a member of a political or taxing body that is a party or is a ratepayer to a party. The test then remains whether the judge's interest as a taxpayer or ratepayer could be substantially affected by the outcome.*

(e) The judge or the judge's spouse, or a person within the third degree of kinship to either of them, or the spouse of such a person meets one of the following criteria:

1. Is a party to the proceeding or an officer, director or trustee of a party.

2. Is acting as a lawyer in the proceeding.

3. Is known by the judge to have a more than <u>de minimis</u> interest that could be substantially affected by the proceeding.

4. Is to the judge's knowledge likely to be a material witness in the proceeding.

(f) The judge, while a judge or a candidate for judicial office, has made a public statement that commits, or appears to commit, the judge with respect to any of the following:

1. An issue in the proceeding.

2. The controversy in the proceeding.

### COMMENT

*The fact that a lawyer in a proceeding is affiliated with a law firm with which a relative of the judge is affiliated does not of itself require the judge's recusal. Under appropriate circumstances, the fact that the judge's impartiality may reasonably be questioned or that the relative is known by the judge to have an interest in the law firm that could be "substantially affected by the outcome of the proceeding" may require the judge's recusal.*

*Recusal is not required under this provision if the judge determines on the record that a subpoena purporting to make his or her relative a witness is false, sham or frivolous.*

**(5)** A judge shall keep informed of the judge's own personal and fiduciary economic interests and make a reasonable effort to keep informed of the personal economic interests of the judge's spouse and minor children residing in the judge's household, having due regard for the confidentiality of the spouse's business.

**(6)** A judge required to recuse himself or herself under sub. (4) may disclose on the record the basis of the judge's recusal and may ask the parties and

their lawyers to consider, out of the presence of the judge, whether to waive recusal. If, following disclosure of any basis for recusal other than personal bias or prejudice concerning a party, the parties and lawyers, without participation by the judge, all agree that the judge should not be required to recuse himself or herself and the judge is then willing to participate, the judge may participate in the proceeding. The agreement shall be incorporated in the record of the proceeding.

### COMMENT

*A waiver procedure provides the parties an opportunity to proceed without delay if they wish to waive the recusal. To assure that consideration of the question of waiver is made independently of the judge, a judge must not solicit, seek or hear comments on a possible waiver of the recusal unless the lawyers jointly propose a waiver after consultation as provided in the rule. A party may act through counsel if counsel represents on the record that the party has been consulted and consents. As a practical matter, a judge may wish to have all parties and their lawyers sign the waiver agreement.*

**(7) Effect of Campaign Contributions.** A judge shall not be required to recuse himself or herself in a proceeding based solely on any endorsement or the judge's campaign committee's receipt of a lawful campaign contribution, including a campaign contribution from an individual or entity involved in the proceeding.

### COMMENT

*Wisconsin vigorously debated an elective judiciary during the formation and adoption of the Wisconsin Constitution in 1848. An elective judiciary was selected and has been part of the Wisconsin democratic tradition for more than 160 years.*

*Campaign contributions to judicial candidates are a fundamental component of judicial elections. Since 1974 the size of contributions has been limited by state statute. The limit on individual contributions to candidates for the supreme court was reduced from $10,000 to $1,000 in 2009 Wisconsin Act 89 after the 2009 supreme court election. The legislation also reduced the limit on contributions to supreme court candidates from political action committees, from $8,625 to $1,000.*

*The purpose of this rule is to make clear that the receipt of a lawful campaign contribution by a judicial candidate's campaign committee does not, by itself, require the candidate to recuse himself or herself as a judge from a proceeding involving a contributor. An endorsement of the judge by a lawyer, other individual, or entity also does not, by itself, require a judge's recusal from a proceeding involving the endorser. Not every campaign contribution by a*

*litigant or attorney creates a probability of bias that requires a judge's recusal.*

*Campaign contributions must be publicly reported. Disqualifying a judge from participating in a proceeding solely because the judge's campaign committee received a lawful contribution would create the impression that receipt of a contribution automatically impairs the judge's integrity. It would have the effect of discouraging "the broadest possible participation in financing campaigns by all citizens of the state" through voluntary contributions, see Wis. Stat. § 11.001, because it would deprive citizens who lawfully contribute to judicial campaigns, whether individually or through an organization, of access to the judges they help elect.*

*Involuntary recusal of judges has greater policy implications in the supreme court than in the circuit court and court of appeals. Litigants have a broad right to substitution of a judge in circuit court. When a judge withdraws following the filing of a substitution request, a new judge will be assigned. When a judge on the court of appeals withdraws from a case, a new judge also is assigned. When a justice of the supreme court withdraws from a case, however, the justice is not replaced. Thus, the recusal of a supreme court justice alters the number of justices reviewing a case as well as the composition of the court. These recusals affect the interests of non-litigants as well as non-contributors, inasmuch as supreme court decisions almost invariably have repercussions beyond the parties.*

**(8) Effect of Independent Communications.** A judge shall not be required to recuse himself or herself in a proceeding where such recusal would be based solely on the sponsorship of an independent expenditure or issue advocacy communication (collectively, an "independent communication") by an individual or entity involved in the proceeding or a donation to an organization that sponsors an independent communication by an individual or entity involved in the proceeding.

### COMMENT

*Independent expenditures and issue advocacy communications are different from campaign contributions to a judge's campaign committee. Contributions are regulated by statute. They are often solicited by a judge's campaign committee, and they must be accepted by the judge's campaign committee. Contributions that are accepted may be returned. By contrast, neither a judge nor the judge's campaign committee has any control of an independent expenditure or issue advocacy communication because these expenditures or communications must be completely independent of the judge's campaign, as required by law, to retain their First Amendment protection.*

*A judge is not required to recuse himself or herself from a proceeding solely because an individual or entity involved in the proceeding has sponsored or donated to an independent communication. Any other result would permit the sponsor of an independent communication to dictate a judge's non-participation in a case, by sponsoring an independent communication. Automatically disqualifying a judge because of an independent communication would disrupt the judge's official duties and also have a chilling effect on protected speech.*

**SCR 60.05 A judge shall so conduct the judge's extra-judicial activities as to minimize the risk of conflict with judicial obligations.**

**(1) Extra-judicial Activities in General.** A judge shall conduct all of the judge's extra-judicial activities so that they do none of the following:

(a) Cast reasonable doubt on the judge's capacity to act impartially as a judge.

(b) Demean the judicial office.

(c) Interfere with the proper performance of judicial duties.

**COMMENT**

*Complete separation of a judge from extra-judicial activities is neither possible nor wise; a judge should not become isolated from the community in which the judge lives.*

*Expressions of bias or prejudice by a judge, even outside the judge's judicial activities, may cast reasonable doubt on the judge's capacity to act impartially as a judge. See SCR 60.03 (1) and (3).*

**(2) Avocational Activities**. A judge may speak, write, lecture, teach and participate in other extra-judicial activities concerning the law, the legal system, the administration of justice and nonlegal subjects, subject to the requirements of this chapter.

**COMMENT**

*As a judicial officer and person specially learned in the law, a judge is in a unique position to contribute to the improvement of the law, the legal system, and the administration of justice, including revision of substantive and procedural law and improvement of criminal and juvenile justice. To the extent that time permits, a judge is encouraged to do so, either independently or through a bar association, judicial conference or other organization dedicated to the improvement of the law. Judges may participate in efforts to promote the fair administration of justice, the independence of the judiciary and the integrity of the legal profession and may express opposition to the persecution of lawyers and judges in other countries because of their professional activities.*

*In this and other subsections of SCR 60.05, the phrase "subject to the requirements of this*

*chapter" is used, notably in connection with a judge's governmental, civic or charitable activities. This phrase is included to remind judges that the use of permissive language in various provisions of the chapter does not relieve a judge from the other requirements of the chapter that apply to the specific conduct.*

**(3) Governmental, Civic or Charitable Activities.**

(a) A judge may not appear at a public hearing before, or otherwise consult with, an executive or legislative body or official except on matters concerning the law, the legal system or the administration of justice or except when acting <u>pro</u> <u>se</u> in a matter involving the judge or the judge's interests.

**COMMENT**

*<u>See</u> SCR 60.03 (2) regarding the obligation to avoid improper influence.*

*As provided in SCR 60.07(2), sub. (3)(a) does not apply to a judge serving on a part-time basis.*

(b) A judge may not accept appointment to a governmental committee or commission or other governmental position that is concerned with issues of fact or policy on matters other than the improvement of the law, the legal system or the administration of justice. A judge may represent a country, state or locality on ceremonial occasions or in connection with historical, educational or cultural activities and may serve on a governmental or private committee, commission or board concerned with historical, educational or cultural activities. A judge may serve in any branch of military reserves and be called to duty in the active military.

**COMMENT**

*A judge is prohibited from accepting any governmental position except one relating to the law, legal system or administration of justice as authorized by par. (c). The appropriateness of accepting extra-judicial assignments must be assessed in light of the demands on judicial resources created by crowded dockets and the need to protect the courts from involvement in extra-judicial matters that may prove to be controversial. Judges should not accept governmental appointments that are likely to interfere with the effectiveness and independence of the judiciary.*

*This provision does not govern a judge's service in a non-governmental position. <u>See</u> par. (c) permitting service by a judge with organizations devoted to the improvement of the law, the legal system or the administration of justice and with educational, religious, charitable, fraternal or civic organizations not conducted for profit. For example, service on the board of a public educational*

institute, unless it were a law school, would be prohibited, but service on the board of a public law school or any private educational institution would generally be permitted under par. (c).

*As provided in SCR 60.07(2), sub. (3)(b) does not apply to a judge serving on a part-time basis.*

(c) A judge may serve as an officer, director, trustee or nonlegal advisor of an organization or governmental agency devoted to the improvement of the law, the legal system or the administration of justice or of a nonprofit educational, religious, charitable, fraternal, sororal or civic organization, subject to the following limitations and the other requirements of this chapter:

**COMMENT**

*This provision does not apply to a judge's service in a governmental position unconnected with the improvement of the law, the legal system or the administration of justice; see par. (b).*

*See Comment to SCR 60.05 (2) regarding use of the phrase "subject to the following limitations and the other requirements of this chapter." As an example of the meaning of the phrase, a judge permitted by this provision to serve on the board of a fraternal institution may be prohibited from such service by SCR 60.03 (1) or (3) or 60.05 (1) if the institution practices invidious discrimination or if service on the board otherwise casts reasonable doubt on the judge's capacity to act impartially as a judge.*

*Service by a judge on behalf of a civic or charitable organization may be governed by other provisions of SCR 60.05 in addition to sub. (3). For example, a judge is prohibited by sub. (7) from serving as a legal advisor to a civic or charitable organization*

1. A judge may not serve as an officer, director, trustee or nonlegal advisor if it is likely that the organization will do any of the following:

a. Engage in proceedings that would ordinarily come before the judge.

b. Engage frequently in adversary proceedings in the court of which the judge is a member or in any court subject to the appellate jurisdiction of the court of which the judge is a member.

**COMMENT**

*The changing nature of some organizations and of their relationship to the law makes it necessary for a judge to regularly re-examine the activities of each organization with which the judge is affiliated to determine if it is proper for the judge to continue the affiliation. For example, in many jurisdictions charitable hospitals are now more frequently in court than in the past. Similarly, the boards of some legal aid organizations now make policy decisions that may*

have political significance or imply commitment to causes that may come before the courts for adjudication.

*As provided in SCR 60.07(2), par. (c) 1.b. does not apply to a judge serving on a part-time basis.*

2. A judge, in any capacity:

a. May assist the organization in planning fund-raising activities and may participate in the management and investment of the organization's funds but may not personally participate in the solicitation of funds or other fund-raising activities, except that a judge may solicit funds from other judges over whom the judge does not exercise supervisory or appellate authority;

**COMMENT**

*As provided in SCR 60.07(2), par. (c) 2.a. does not apply to a judge serving on a part-time basis.*

b. May make recommendations to public and private fund-granting organizations on projects and programs concerning the law, the legal system or the administration of justice;

c. May not personally participate in membership solicitation if the solicitation reasonably may be perceived as coercive or, except as permitted in subd. 2.a, if the membership solicitation is essentially a fund-raising mechanism; and

**COMMENT**

*As provided in SCR 60.07(2), par. (c) 2.c. does not apply to a judge serving on a part-time basis.*

d. May not use or permit the use of the prestige of judicial office for fund raising or membership solicitation.

**COMMENT**

*A judge may solicit membership or endorse or encourage membership efforts for an organization devoted to the improvement of the law, the legal system or the administration of justice or a nonprofit educational, religious, charitable, fraternal or civic organization as long as the solicitation cannot reasonably be perceived as coercive and is not essentially a fund-raising mechanism. Solicitation of funds for an organization and solicitation of memberships similarly involve the danger that the person solicited will feel obligated to respond favorably to the solicitor if the solicitor is in a position of influence or control. A judge must not engage in direct, individual solicitation of funds or memberships in person, in writing or by telephone except in the following cases: 1) a judge may solicit for funds or memberships other judges over whom the judge does not exercise supervisory or appellate authority, 2) a*

*judge may solicit other persons for membership in the organizations described above if neither those persons nor persons with whom they are affiliated are likely ever to appear before the court on which the judge serves, and 3) a judge who is an officer of such an organization may send a general membership solicitation mailing over the judge's signature.*

*SCR 60.05 should not be read as proscribing participation in de minimis fund-raising activities so long as a judge is careful to avoid using the prestige of the office in the activity. Thus, e.g., a judge may pass the collection basket during services at church, may ask friends and neighbors to buy tickets to a pancake breakfast for a local neighborhood center and may cook the pancakes at the event but may not personally ask attorneys and others who are likely to appear before the judge to buy tickets to it. Similarly, SCR 60.05 should not be read to prohibit judges from soliciting memberships for religious purposes, but judges must nevertheless avoid using the prestige of the office for the purpose of such solicitation.*

*Use of an organization letterhead for fund raising or membership solicitation does not violate subd. 2 provided the letterhead lists only the judge's name and office or other position in the organization and, if comparable designations are listed for other persons, the judge's judicial designation. In addition, a judge must make reasonable efforts to ensure that the judge's staff, court officials and others subject to the judge's direction and control do not solicit funds on the judge's behalf for any purpose, charitable or otherwise.*

*A judge may be a speaker or guest of honor at an organization's fund-raising event provided there is no advertising of the judge as speaker or guest of honor in order to encourage people to attend and make contributions and provided that any contributions at the event are made prior to the judge's speech or presentation as guest of honor. A judge's attendance at such event is permissible if otherwise consistent with this chapter.*

### (4) Financial Activities.

(a) 1. A judge may not engage in financial or business dealings that could meet any of the following conditions:

a. Reasonably be perceived to exploit the judge's judicial position.

b. Involve the judge in frequent transactions or continuing business relationships with those lawyers or other persons likely to come before the court on which the judge serves.

### COMMENT

*As provided in SCR 60.07(2), sub. (4)(a)1.b. does not apply to a judge serving on a part-time basis.*

2. A judge shall comply with sub. (4)(a)1 as soon as reasonably possible and, in any event, within one year of the applicability of this chapter to the judge.

### COMMENT

*When a judge acquires in a judicial capacity information, such as material contained in filings with the court, that is not yet generally known, the judge must not use the information for private gain. See SCR 60.03 (2) and 60.04 (1) (m).*

*A judge must avoid financial and business dealings that involve the judge in frequent transactions or continuing business relationships with persons likely to come either before the judge personally or before other judges on the judge's court. In addition, a judge should discourage members of the judge's family from engaging in dealings that would reasonably appear to exploit the judge's judicial position. This rule is necessary to avoid creating an appearance of exploitation of office or favoritism and to minimize the potential for recusal or disqualification. With respect to affiliation of relatives of a judge with law firms appearing before the judge, see Comment to SCR 60.04 (4) relating to recusal.*

*Participation by a judge in financial and business dealings is subject to the general prohibitions in SCR 60.05 (1) against activities that tend to reflect adversely on impartiality, demean the judicial office, or interfere with the proper performance of judicial duties. Such participation is also subject to the general prohibition in SCR 60.03 against activities involving impropriety or the appearance of impropriety and the prohibition in SCR 60.03 (2) against the misuse of the prestige of judicial office. In addition, a judge must maintain high standards of conduct in all of the judge's activities, as set forth in SCR 60.02. See Comment to SCR 60.05 (2) regarding use of the phrase "subject to the requirements of this chapter."*

*If engaged in a financial or business activity at the time this chapter becomes applicable to the judge, a judge may continue to do so for a reasonable period not to exceed one year.*

(b) A judge may, subject to the requirements of this chapter, hold and manage investments of the judge and members of the judge's family, including real estate, and engage in other remunerative activity.

### COMMENT

*Subject to the requirements of this chapter, a judge may hold and manage investments owned solely by the judge, investments owned solely by a member or members of the judge's family, and investments owned jointly by the judge and members of the judge's family.*

*As provided in SCR 60.07(2), sub. (4)(b) does not apply to a judge serving on a part-time basis.*

(c) 1. Except as provided in par. 2, a judge may serve as an officer, director, manager, general partner, advisor or employee of a business entity if that service does not conflict with the judge's judicial duties, create the appearance of impropriety, or otherwise violate any provision of this chapter.

2. A judge may not serve as an officer, director, manager, general partner, advisor or employee of any business entity affected with a public interest, including a financial institution, insurance company, and public utility, and may not participate in or permit the judge's name to be used in connection with any business venture or commercial advertising that indicates the judge's title or affiliation with the judiciary or otherwise lends the power or prestige of office to promote a business or commercial venture.

**COMMENT**

*A judge may participate in a business not affected with a public interest if that participation does not conflict with the judge's judicial duties, create the appearance of impropriety, or violate any other provision of this Code. For example, a judge may be prohibited from participation if the business entity frequently appears before a court in the jurisdiction in which the judge serves or the participation requires significant time away from judicial duties. Similarly, a judge must avoid participation if the judge's participation would involve misuse of the prestige of office.*

*As provided in SCR 60.07(2), sub. (4)(c) does not apply to a judge serving on a part-time basis.*

(d) A judge shall manage the judge's investments and other financial interests so as to minimize the number of cases in which the judge's recusal or disqualification is required. As soon as the judge can do so without serious financial detriment, the judge shall divest himself or herself of investments and other financial interests that might require frequent disqualification.

**COMMENT**

*As provided in SCR 60.07(2), sub. (4)(d) does not apply to a judge serving on a part-time basis.*

(e) A judge may not accept, and shall urge members of the judge's family residing in the judge's household not to accept, a gift, favor or loan from anyone except for the following:

**COMMENT**

*Sub. (4) (e) does not apply to contributions to a judge's campaign for judicial office. Because a gift, favor or loan to a member of the judge's family residing in the judge's household might be viewed as intended to influence the judge, a judge must inform*

*those family members of the relevant ethical constraints upon the judge in this regard and discourage those family members from violating them. A judge cannot, however, reasonably be expected to know or control all of the financial or business activities of all family members residing in the judge's household.*

*As provided in SCR 60.07(2), sub. (4)(e) does not apply to a judge serving on a part-time basis.*

1. A gift incident to a public testimonial, books, tapes and other resource materials supplied by publishers on a complimentary basis for official use, or an invitation to the judge and the judge's spouse or guest to attend a bar-related function or an activity devoted to the improvement of the law, the legal system or the administration of justice.

**COMMENT**

*Acceptance of an invitation to a law-related function is governed by sub. (4) (e) 1; acceptance of an invitation paid for by an individual lawyer or group of lawyers is governed by sub. (4) (e) 10.*

*A judge may accept a public testimonial or a gift incident thereto only if the donor organization is not an organization whose members comprise or frequently represent the same side in litigation, and the testimonial and gift are otherwise in compliance with other provisions of this chapter. <u>See</u> SCR 60.05 (1) (a) and 60.03 (2).*

2. A gift, award or benefit incident to the business, profession or other separate activity of a spouse or other family member of a judge residing in the judge's household, including gifts, awards and benefits for the use of both the spouse or other family member and the judge, provided the gift, award or benefit could not reasonably be perceived as intended to influence the judge in the performance of judicial duties.

3. Ordinary social hospitality.

4. A gift from a relative.

5. A gift from a friend for a special occasion, such as a wedding, anniversary or birthday, if the gift is fairly commensurate with the occasion and the relationship.

**COMMENT**

*A gift to a judge, or to a member of the judge's family living in the judge's household, that is excessive in value raises questions about the judge's impartiality and the integrity of the judicial office and might require recusal or disqualification of the judge where recusal or disqualification would not otherwise be required. <u>See,</u> however, par. (e) 5.*

6. Anything of value if the activity or occasion for which it is given is unrelated to the judge's

use of the state's time, facilities, services or supplies not generally available to all citizens of this state and the judge can show by clear and convincing evidence that it was unrelated to and did not arise from the judge's holding or having held a public office.

7. A gift, favor or loan from a relative or close personal friend whose appearance or interest in a case would in any event require recusal under SCR 60.04(4).

8. A loan from a lending institution in its regular course of business on the same terms generally available to persons who are not judges.

9. A scholarship or fellowship awarded on the same terms and based on the same criteria applied to other applicants.

10. Any other gift, favor or loan, only if the donor is not a party or other person who has come or is likely to come or whose interests have come or are likely to come before the judge.

### COMMENT

*Unless authorized by other provisions of sub. (4)(e), sub. (4)(e) 10 prohibits judges from accepting gifts, favors or loans from lawyers or their firms if they have come or are likely to come before the judge; it also prohibits gifts, favors or loans from clients of lawyers or their firms when the clients' interests have come or are likely to come before the judge. See sec. 19.43 et seq., Stats.*

### (5) Fiduciary Activities.

(a) A judge may not serve as executor, administrator or other personal representative, trustee, guardian, attorney-in-fact or other fiduciary, except for the estate, trust or person of a member of the judge's family, and then only if such service will not interfere with the proper performance of his or her judicial duties.

(b) A judge may not serve as a fiduciary if it is likely that the judge as a fiduciary will be engaged in proceedings that would ordinarily come before the judge or if the estate, trust or ward becomes involved in adversary proceedings in the court on which the judge serves or one under its appellate jurisdiction.

(c) The same restrictions on financial activities that apply to a judge personally also apply to the judge while acting in a fiduciary capacity.

(d) A judge shall comply with pars. (a) and (b) as soon as reasonably possible and, in any event, within one year of the applicability of this chapter to the judge.

### COMMENT

*A judge who is a fiduciary at the time this chapter becomes effective for the estate or person of one who is not a member of the judge's family may continue to act as such if the demands on his or her time and the possibility of a conflict of interest are not*

*substantial and for the period of time necessary to avoid serious adverse consequences to the beneficiary of the fiduciary relationship but in no event longer than one year.*

*The restrictions imposed by SCR 60.05 may conflict with the judge's obligation as a fiduciary. For example, a judge should resign as trustee if detriment to the trust would result from divestiture of holdings the retention of which would place the judge in violation of sub. (4) (d).*

*As provided in SCR 60.07(2), sub. (5) does not apply to a judge serving on a part-time basis.*

**(6) Service as Arbitrator or Mediator.** A judge may not act as an arbitrator or mediator or otherwise perform judicial functions in a private capacity unless expressly authorized by law.

### COMMENT

*Paragraph (6) does not prohibit a judge from participating in arbitration, mediation or settlement conference performed as part of judicial duties.*

*As provided in SCR 60.07(2), sub. (6) does not apply to a judge serving on a part-time basis.*

**(7) Practice of Law.** A judge may not practice law. Notwithstanding this prohibition, a judge may act pro se and may, without compensation, give legal advice to and draft or review documents for a member of the judge's family and represent without compensation the estate of a person with whom the judge maintains a close familial relationship so long as the estate remains uncontested.

### COMMENT

*This prohibition refers to the practice of law in a representative capacity and not in a pro se capacity. A judge may act for himself or herself in all legal matters, including matters involving litigation and matters involving appearances before or other dealings with legislative and other governmental bodies. However, in so doing, a judge must not abuse the prestige of office to advance the interests of the judge or judge's family. See SCR 60.03 (2).*

*The chapter allows a judge to give legal advice to and draft legal documents for members of the judge's family, so long as the judge receives no compensation. A judge must not, however, act as an advocate for a member of the judge's family in a legal matter.*

*The restraint against a judge giving advice to parties in matters before the judge does not prohibit a judge from advising such parties to obtain lawyers or medical treatment and from advising such parties on similar matters unrelated to the merits of the matter before the judge.*

*As provided in SCR 60.07(2), sub. (7) does not apply to a judge serving on a part-time basis.*

**(8) Compensation, Reimbursement and Reporting.**

(a) Compensation and Reimbursement. A judge may receive compensation and reimbursement of expenses for the extra-judicial activities permitted by this chapter if the source of such payments does not give the appearance of influencing the judge's performance of judicial duties or otherwise give the appearance of impropriety.

1. Compensation may not exceed a reasonable amount nor may the compensation exceed what a person who is not a judge would receive for the same activity.

2. Expense reimbursement shall be limited to the actual cost of travel, food and lodging reasonably incurred by the judge and, where appropriate to the occasion, by the judge's spouse or guest. Any payment in excess of that amount is compensation.

(b) Financial reports. Except as provided in SCR 60.07, a judge shall file with the ethics commission a timely financial report as required by section 19.43 of the statutes.

**COMMENT**

*The chapter does not prohibit a judge from accepting honoraria or speaking fees provided that the compensation is reasonable and commensurate with the task performed. A judge should ensure, however, that no conflicts are created by the arrangement. A judge must not appear to trade on the judicial position for personal advantage. Nor should a judge spend significant time away from court duties to meet speaking or writing commitments for compensation. In addition, the source of the payment must not raise any question of undue influence or the judge's ability or willingness to be impartial.*

*See SCR 60.05 (4) (e) and sec. 19.56, Stats., regarding reporting of gifts and loans.*

*As provided in SCR 60.07(2), sub. (8) does not apply to a judge serving on a part-time basis. Sub. (8) does not apply to a supplemental court commissioner authorized under SCR 75.02(3) who has performed fewer than 40 hours of circuit court commissioner duties in the preceding calendar year.*

**SCR 60.06 A judge or judicial candidate shall refrain from inappropriate political activity.**

(1g) Terminology. In this section, "judge" has the meaning given in SCR 60.01(8), except that in subs. (1m), (2), and (4), "judge" does not include a court commissioner or a municipal judge who did not devote 40 or more hours to the performance of his or her official duties in the preceding calendar year.

(1m) Candidate for office. A judge shall not become a candidate for a federal, state or local nonjudicial elective office without first resigning his or

her judgeship. A judge's eligibility to serve may be governed by other rules or constitutional provisions.

**COMMENT**

*Article VII, section 10 (1) of the Wisconsin Constitution provides, "No justice of the supreme court or judge of any court of record shall hold any other office of public trust, except a judicial office, during the term for which elected." See Wagner v. Milwaukee County Election Comm'n, 2003 WI 103, 263 Wis. 2d 709, 666 N.W.2d 816.*

**(2) Party membership and activities.**

(a) Individuals who seek election or appointment to the judiciary may have aligned themselves with a particular political party and may have engaged in partisan political activities. Wisconsin adheres to the concept of a nonpartisan judiciary. A candidate for judicial office shall not appeal to partisanship and shall avoid partisan activity in the spirit of a nonpartisan judiciary.

(b) No judge or candidate for judicial office or judge-elect may do any of the following:

1. Be a member of any political party.

2. Participate in the affairs, caucuses, promotions, platforms, endorsements, conventions, or activities of a political party or of a candidate for partisan office.

3. Make or solicit financial or other contributions in support of a political party's causes or candidates.

4. Publicly endorse or speak on behalf of its candidates or platforms.

(c) A partisan political office holder who is seeking election or appointment to judicial office or who is a judge-elect may continue to engage in partisan political activities required by his or her present position.

(d) 1. Paragraph (b) does not prohibit a judge, candidate for judicial office or judge-elect from attending, as a member of the public, a public event sponsored by a political party or candidate for partisan office, or by the campaign committee for such a candidate.

2. If attendance at an event described in subd. 1. requires the purchase of a ticket or otherwise requires the payment of money, the amount paid by the judge, candidate for judicial office, or judge-elect shall not exceed an amount necessary to defray the sponsor's cost of the event reasonably allocable to the judge's, candidate's, or judge-elect's attendance.

(e) Nothing in this subsection shall be deemed to prohibit a judge, judge-elect, or candidate for judicial office, whether standing for election or seeking an appointment, from appearing at partisan political gatherings to promote his or her own candidacy.

## COMMENT

*The rule prohibits political party membership and activities by judges, nonincumbent candidates for judicial office, and judges-elect. When one becomes a candidate for judicial office is determined by the terms of SCR 60.01 (2) which defines "candidate" as "a person seeking selection for or retention of a judicial office by means of election or appointment who makes a public announcement of candidacy, declares or files as a candidate with the election or appointment authority, or authorizes solicitation or acceptance of contributions." The rule prohibits judicial candidates and judges-elect as well as judges from making or soliciting contributions to the party or its candidates and from publicly endorsing or speaking on behalf of partisan candidates or platforms. Although the rule contemplates the continuance of nonpartisanship on the part of Wisconsin judges and those seeking judicial office, judges are not expected to lead lives of seclusion. As members of the public and as public officeholders, judges may attend public events, even those sponsored by political parties or candidates, so long as the attendance does not constitute the kind of partisan activity prohibited by this rule. The judge, judicial candidate or judge-elect is responsible for so conducting herself or himself that her or his presence at the sponsored event is not made to appear as an endorsement or other prohibited political activity. The judge, judicial candidate, or judge-elect should also exercise care that the price of his or her ticket to any such event does not include a prohibited political contribution.*

**(3) Campaign Conduct and Rhetoric.**

(a) In General. While holding the office of judge or while a candidate for judicial office or a judge-elect, every judge, candidate for judicial office, or judge-elect should maintain, in campaign conduct, the dignity appropriate to judicial office and the integrity and independence of the judiciary. A judge, candidate for judicial office, or judge-elect should not manifest bias or prejudice inappropriate to the judicial office. Every judge, candidate for judicial office, or judge-elect should always bear in mind the need for scrupulous adherence to the rules of fair play while engaged in a campaign for judicial office.

## COMMENT

*This subsection is new. It states a rule generally applicable to judges, candidates for judicial office, and judges-elect.*

(b) Promises and commitments. A judge, judge-elect, or candidate for judicial office shall not make or permit or authorize others to make on his or her behalf, with respect to cases, controversies, or issues that are likely to come before the court, pledges, promises, or commitments that are inconsistent with the impartial performance of the adjudicative duties of the office.

## COMMENT

*This section prohibits a candidate for judicial office from making statements that commit the candidate regarding cases, controversies or issues likely to come before the court. A judge or candidate for judicial office may not, while a proceeding is pending or impending in the court to which selection is sought, make any public comment that may reasonably be viewed as committing the judge, judge-elect or candidate to a particular case outcome. As a corollary, a candidate should emphasize in any public statement the candidate's duty to uphold the law regardless of his or her personal views. This section does not prohibit a candidate from making pledges or promises respecting improvements in court administration. Nor does this section prohibit an incumbent judge from making private statements to other judges or court personnel in the performance of judicial duties. This section applies to any statement made in the process of securing judicial office, such as statements to commissions charged with judicial selection.*

(c) Misrepresentations. A candidate for a judicial office shall not knowingly or with reckless disregard for the statement's truth or falsity misrepresent the identity, qualifications, present position, or other fact concerning the candidate or an opponent. A candidate for judicial office should not knowingly make representations that, although true, are misleading, or knowingly make statements that are likely to confuse the public with respect to the proper role of judges and lawyers in the American adversary system.

## COMMENT

*This subsection is new. The first sentence is based on the August 2003 amendments to the ABA model code of conduct.*

*The second sentence is aspirational. Thus, "should" is used rather than "shall." The remaining standards are mandatory and prohibit candidates from knowingly or with reckless disregard for the truth making various specific types of misrepresentations. Candidates are not responsible for misrepresentations or misleading statements made by third parties not subject to the control of the candidate, e.g., through independent expenditures by interest groups.*

**(4) Solicitation and Acceptance of Campaign Contributions**. A judge, candidate for judicial office, or judge-elect shall not personally solicit

or accept campaign contributions. A candidate may, however, establish a committee to solicit and accept lawful campaign contributions. The committee is not prohibited from soliciting and accepting lawful campaign contributions from lawyers, other individuals, or entities even though the contributor may be involved in a proceeding in which the judge, candidate for judicial office, or judge-elect is likely to participate. A judge, candidate for judicial office, or judge-elect may serve on the committee but should avoid direct involvement with the committee's fundraising efforts. A judge, candidate for judicial office, or judge-elect may appear at his or her own fundraising events. When the committee solicits or accepts a contribution, a judge, candidate for judicial office, or judge-elect should be mindful of the requirements of SCR 60.03 and 60.04(4); provided, however, that the receipt of a lawful campaign contribution shall not, by itself, warrant judicial recusal.

### COMMENT

*Under longstanding Wisconsin law, a judicial candidate may not personally solicit or accept campaign contributions. However, a judicial candidate may form and rely upon a campaign committee to solicit and accept contributions for the judicial campaign. Lawyers, other individuals, and entities are not excluded from this process merely because committee members or contributors may be involved in proceedings in which the judge is likely to participate.*

*The solicitation of contributions from participants in judicial proceedings is always a matter requiring close, careful attention. Campaign committees should be sensitive to the existence of pending litigation, the proximity of judicial elections, and the wording of campaign solicitations to avoid the appearance of promise or pressure.*

*A judge should avoid having his or her name listed on another's fundraising solicitation even when the listing is accompanied with a disclaimer that the name is not listed for fundraising purposes.*

*Acknowledgement by a judge or candidate for judicial office of a contribution in a courtesy thank you letter is not prohibited.*

**(5) Solicitation and Acceptance of Endorsements.** A judge or candidate for judicial office may solicit or accept endorsements supporting his or her election or appointment personally or through his or her committee. A judge, candidate for judicial office, or his or her committee is not prohibited from soliciting and accepting endorsements from lawyers and others. A judge or candidate for judicial office shall not knowingly personally solicit or accept endorsements from parties who have a case pending before the court to which election or appointment is sought.

Nevertheless, a judge or judicial candidate may personally solicit or accept endorsements from the types of organizations that ordinarily make recommendations for selection to the office. In soliciting or accepting an endorsement, a judge or candidate for judicial office should be mindful of the requirements of SCR 60.03 and 60.04 (4).

### COMMENT

*This subsection is new. In light of the restrictions on campaign rhetoric under SCR 60.06 (3), the receiving of endorsements is an important method of informing the electorate of broad-based and presumably informed support for a particular candidacy. Knowing solicitation and acceptance of endorsements from current litigants are prohibited. Candidates for judicial office may solicit and accept endorsements from entities that regularly endorse candidates, such as newspapers and trade organizations. Neither culling nor cross- checking of names on mailing lists or dockets is required.*

### SCR 60.07 Applicability.

**(1) General.** Subject to sub. (2), all judges shall comply with this chapter. Candidates for judicial office and judges-elect shall comply with SCR 60.06.

**(2) Part-time Judicial Service**. A judge who serves on a part-time basis, including a reserve judge, a part-time municipal judge, or a part-time court commissioner, is not required to comply with the following: SCR 60.05 (3) (a), (b) and (c) 1b., 2.a, and c., (4) (a) 1.b., (b) (c), (d) and (e), (5), (6), (7) and (8). All circuit court commissioners appointed under SCR 75.02 (1) and those supplemental court commissioners authorized under SCR 75.02 (3) who have performed 40 hours or more of circuit court commissioner duties during the preceding calendar year shall comply with SCR 60.05 (8).

### COMMENT

*Candidates for judicial office and judges-elect are subject to the requirements of SCR 60.06.*

# CODE OF JUDICIAL CONDUCT-APPENDIX

**A. Rules of the Judicial Conduct Advisory Committee**

**(1) Membership**. A judicial conduct advisory committee consisting of nine members appointed by the supreme court is created. Six members of the committee shall be selected from the judiciary of this state, one member shall be selected from the court commissioners serving the circuit court, one member shall be selected from attorneys licensed to practice law in this state, and one member shall be selected from the public. One judge member shall be a chief judge of a judicial administrative district, one judge member shall be a judge of the court of appeals, one judge member shall be a circuit judge or a reserve judge who serves regularly on an urban area court, one judge member shall be a circuit judge or a reserve judge who serves regularly on a rural area court, one judge member shall be a municipal judge, and one judge member shall be a reserve judge. Members shall serve for a term of three years and shall continue to serve until a successor is appointed, except that, to achieve staggered terms, three of the members first appointed, shall serve for one year, three members for two years, and three members for three years. A member may serve not more than two successive three-year terms. Appointments to fill a vacancy shall be for the balance of the term vacated. Members of the committee shall serve without compensation but shall be reimbursed for expenses actually and necessarily incurred in the performance of their duties.

**(2) Duties.** The committee shall do the following:

(a) Render formal advisory opinions and give informal advice concerning the compliance of contemplated or proposed future conduct with the code of judicial conduct, provided that an opinion or advice shall not be rendered on a matter known to be the subject of a past or pending litigation, disciplinary proceeding, or investigation.

(b) Make recommendations to the supreme court for amendment to the code of judicial conduct or the rules governing the committee.

(c) Each year submit to the supreme court a report of its activities.

**(3) Administration**. The committee shall be administered under the direction of a chair appointed by the supreme court. The chair shall serve for a term of one year and may serve not more than two successive terms. Staff of the director of state courts office shall be available to answer inquiries concerning committee procedures, to receive and process request for a formal advisory opinion, to maintain committee records, and to provide other staff assistance as appropriate.

**(4) Requests for opinion or advice.** Formal advisory opinions and informal advice may be requested by a judge or a candidate for judicial office about his or her own contemplated or proposed future conduct. A request for a formal advisory opinion shall be submitted in writing and include a detailed statement of all relevant facts and circumstances, a discussion of the issues presented in the request, and references to the relevant provisions of the code of judicial conduct, advisory opinions, case law, and other authority the requestor has consulted in the matter. A request for informal advice may be made orally or in writing to any member of the committee. The identity, organizational affiliation, and geographic location of a person requesting a formal advisory opinion or informal advice shall be confidential.

**(5) Consideration of requests.** The committee shall determine whether a request for a formal advisory opinion should be resolved with a written, published opinion or by letter or other communication. A formal advisory opinion shall be decided by a majority vote of the committee. The committee may confer in person, by correspondence or by telephone or other electronic means as needed to conduct committee business and consider requests for formal advisory opinions. The committee shall maintain records of its determinations and formal advisory opinions.

**(6) Formal advisory opinion**. Formal advisory opinions shall be edited to omit the names of persons, courts, places and any other information that may tend to identify the requestor or any other person. Before issuing a formal advisory opinion, the committee shall provide a copy of the opinion to the requestor, and the requestor may ask the committee to omit from its specified information that may tend to identify the requestor or any other person. In the event necessary editing produces an opinion that the committee determines is not meaningful, the committee may determine that a formal advisory opinion not be published and distribute it only to the requestor.

**(7) Opinion distribution**. Except as provided in sub. (6), a formal advisory opinion shall be distributed to the requestor, the justices and clerk of the supreme court, the chief judge of the court of appeals, the chief judges of the judicial administrative districts in this state, the director of state courts, the state law library, and the state bar of Wisconsin. Formal advisory opinions shall be accumulated and distributed to all judges at least annually by the office of the director of state courts.

**(8) Reconsideration.** Within 30 days after the distribution of a formal advisory opinion to all judges, a person authorized to request an opinion may ask the committee to reconsider the formal advisory opinion by submitting a written request for reconsideration explaining the basis for the request. The committee shall respond to the request by reaffirming or revising the formal advisory opinion or by denying the request. The committee may, on its

own motion, reconsider a formal advisory opinion at any time. A revised formal advisory opinion shall be distributed as provided in sub. (7).

(9) **Effect of opinion or advice.** (a) A formal advisory opinion shall not be binding upon the Wisconsin judicial commission or the supreme court in the exercise of their judicial discipline responsibilities. The fact that a judge or candidate for judicial office has requested and relied upon a formal advisory opinion should be taken into account by the Wisconsin judicial commission in its disposition of complaints and in determining whether to file a formal complaint with the supreme court. If a judge or candidate for judicial office has requested and received a formal advisory opinion, compliance of the judge or the candidate for judicial office with that opinion shall constitute evidence of a good faith effort to comply with the code of judicial conduct in a judicial disciplinary proceeding based, in whole or in part, on the conduct for which the opinion was requested.

(b) Reliance of a judge or candidate for judicial office on informal advice given by the committee or by any of its members may not constitute evidence of a good faith effort to comply with the code of judicial conduct.

(10) **Confidentiality**. With the exception of published formal advisory opinions, all opinions, inquiries, replies, circulated drafts, records, documents, files, communications with staff, and proceedings of the committee shall be confidential. Confidentiality does not apply if the person requesting the formal advisory opinion or informal advice expressly waives confidentiality in writing or relies on the opinion or advice in a judicial disciplinary proceeding. Notwithstanding any waiver, committee deliberations shall be confidential.

(11) **Immunity.** Members of the committee shall be immune from liability for any conduct relating directly or indirectly to their duties for the committee. When acting in their advisory capacity, the judge members of the committee shall be exempt from the provisions regarding disciplinary responsibilities in the code of judicial conduct and the attorney members of the committee shall be exempt from the provisions regarding reporting misconduct in the rules of professional conduct for attorneys.

**B. Procedures of the Judicial Conduct Advisory Committee**

(1) **Request for formal advisory opinions**. A request for a formal advisory opinion shall be in writing and shall be addressed to the chair of the committee. The requestor shall also send a copy of the request to the director of state courts. The request shall include a detailed statement of all relevant facts and circumstances, a discussion of the issues presented in the request, and references to the relevant provisions of the code of judicial conduct, advisory opinions, case law, and other authority the requestor has consulted in

the matter. The identity, organizational affiliation, and geographic location of a person requesting a formal advisory opinion shall be confidential.

(2) **Consideration of Request**. (a) The chair of the committee shall assign requests for formal advisory opinions in rotation to committee members for research and preparation of preliminary recommendations and draft opinions. If the information provided in the request is insufficient in detail to enable the committee to render a formal advisory opinion, the committee shall request supplemental information from the requestor to enable it to render a formal advisory opinion. If the requested supplemental information is insufficient or is not provided within 10 days of the request, the committee shall so state in a letter to the requestor and shall not render a formal advisory opinion.

(b) Within 30 days after receipt of the assignment of the request or receipt of sufficient supplemental information, if requested, the member to whom the request is assigned shall circulate to all committee members a preliminary recommendation and draft opinion. Prior to circulation of a preliminary recommendation and draft opinion, the member to whom the request is assigned may consult with other committee members.

(c) Within 15 days after receipt of the preliminary recommendation and draft opinion, committee members shall circulate to all other committee members any comments on the recommendation and opinion. Within the same 15-day period any committee member may also request that a discussion of the preliminary recommendation and draft opinion be held. If a majority of the committee determines that a discussion is needed, the committee shall have a discussion of the matter within 30 days after the committee determined a discussion was needed.

(d) The committee may consider requests for formal advisory opinions and opinion drafts in person, by telephone, by facsimile transmission, by mail, or by any other electronic means.

(e) 1. Within 20 days of whichever of the following dates is applicable, the committee member to whom the request has been assigned shall circulate a final draft opinion to the committee members:

a. If no request for discussion is made or if a request is not agreed to by the committee, the last day for comment on the preliminary recommendation and draft opinion under par. (c).

b. If a request for discussion is agreed to by the committee, the date of discussion on the matter under par. (c).

2. Formal advisory opinions shall be decided by a majority vote of the committee within 10 days after circulation of the final draft opinion.

(f) Where appropriate, the committee may respond to a request for a formal advisory opinion by referring the requestor to a prior formal advisory

opinion and by so doing need not issue a new formal advisory opinion.

**(3) Form of Opinion**. Prior to issuance, a formal advisory opinion shall be edited to omit the names of persons, courts, places and any other information that may tend to identify the requestor or any other person. The committee shall provide a copy of the proposed opinion to the requestor, and within 10 days of receipt, the requestor may ask that specified information be omitted from it that may tend to identify the requestor or any other person. A formal advisory opinion shall include a statement that it does not purport to address the provisions of the Code of Ethics for Public Officials and Employees, subchapter III of ch. 19 of the statutes.

**(4) Issuance and Distribution of Formal Advisory Opinion**. Upon approval of a majority of the committee, a formal advisory opinion shall issue in written form sent to the director of state courts office. The director of state courts office shall send a copy of the formal advisory opinion to the requestor, the justices and the clerk of the supreme court, the chief judge of the court of appeals, the chief judges of the judicial administrative districts, the state law library and the State Bar of Wisconsin. The director of state courts office shall retain a copy of each formal advisory opinion and accumulate and distribute at least annually to all judges a copy of each formal advisory opinion issued by the committee. The director of state courts office shall maintain the records of the committee's determinations and formal advisory opinions.

**(5) Reconsideration.** (a) Within 15 days after receipt of a formal advisory opinion, the requestor may request in writing to the committee that it reconsider the opinion, explaining the basis for that request. Within 10 days after receipt of a request for reconsideration from the requestor, the committee shall respond by granting the request and approving or revising the opinion or by denying the request. Upon granting a request for reconsideration, the committee shall consider the matter as set forth in sec. (2).

(b) Within 30 days after distribution of a formal advisory opinion to all judges, a person authorized to request an opinion may request in writing to the committee that it reconsider the opinion, explaining the basis for that request. The committee shall respond as set forth in sub. (a).

(c) The committee may, on its own motion, reconsider a formal advisory opinion at any time.

(d) A revised formal advisory opinion shall be issued and distributed as provided in sec. (4).

**(6) Requests for Informal Advice**. Requests for informal advice on the interpretation and application of the code of judicial conduct to specific factual situations may be submitted in writing to the chair of the committee or communicated in person or by telephone to any member of the committee. Any member of the committee may respond to the request for informal advice. Reliance on informal advice may not constitute evidence of a good faith effort to comply with the code of judicial conduct.

**Appendix F**

**WISCONSIN CONSTITUTION**
Article VII
Judiciary
. . .

**Disciplinary proceedings**. SECTION 11. [*As created April 1977*] Each justice or judge shall be subject to reprimand, censure, suspension, removal for cause or for disability, by the supreme court pursuant to procedures established by the legislature by law. No justice or judge removed for cause shall be eligible for reappointment or temporary service. This section is alternative to, and cumulative with, the methods of removal provided in sections 1 [impeachment] and 13 [address] of this article and section 12 of article XIII [recall]. [*1975 J.R. 13, 1977 J.R. 7, vote April 1977*]

# Appendix G

**757.001 Definitions**. In this chapter:

**(1)** "Circuit court commissioner" means a person appointed under SCR 75.02 (1) and a supplemental court commissioner authorized under SCR 75.02 (3) to the limited extent of that authorization.

**(2)** "Supplemental court commissioner" means a person appointed under s. 757.675 (1).

**History:** 2001 a. 61.

**757.81 Definitions.** In ss. 757.81 to 757.99:

**(1)** "Commission" means the judicial commission created by s. 757.83.

**(3)** "Judge" means a judge of any court established by or pursuant to article VII, section 2 or 14, of the constitution, or a supreme court justice.

**(4)** "Misconduct" includes any of the following:

(a) Willful violation of a rule of the code of judicial ethics.

(b) Willful or persistent failure to perform official duties.

(c) Habitual intemperance, due to consumption of intoxicating beverages or use of dangerous drugs, which interferes with the proper performance of judicial duties.

(d) Conviction of a felony.

**(5)** "Panel" means a judicial conduct and disability panel constituted under s. 757.87.

**(6)** "Permanent disability" means a physical or mental incapacity which impairs the ability of a judge or circuit or supplemental court commissioner to substantially perform the duties of his or her judicial office and which is or is likely to be of a permanent or continuing nature.

**History**: 1977 c. 449; 1983 a. 378; 1991 a. 269; 1995 a. 77; 2001 a. 61.

The provisions for judicial disciplinary proceedings under ss. 757.81 to 757.99 are constitutional. In Matter of Complaint Against Seraphim, 97 Wis. 2d 485, 294 N.W.2d 485 (1980).

**757.83 Judicial commission. (1)** Membership; appointment; terms. (a) There is created a judicial commission of 9 members: 5 nonlawyers nominated by the governor and appointed with the advice and consent of the senate; one trial judge of a court of record and one court of appeals judge appointed by the supreme court; and 2 members of the State Bar of Wisconsin, who are not judges or court commissioners, appointed by the supreme court. The commission shall elect one of its members as chairperson.

(b) The term of a member is 3 years, but a member shall not serve more than 2 consecutive full terms. A vacancy is filled by the appointing authority for the unexpired term. Members of the commission shall receive compensation of $25 per day for each day on which they were actually and necessarily engaged in the performance of their duties and shall be reimbursed for expenses necessarily incurred as members of the commission.

**(2)** Quorum; voting. A majority of the commission constitutes a quorum. The commission may issue a formal complaint or a petition only upon a finding of probable cause by a majority of the total membership not disqualified from voting. A member must be present to vote on the question of probable cause. A member shall not participate in any matter if a judge similarly situated would be disqualified in a court proceeding.

**(3)** Rules. The commission shall promulgate rules under ch. 227 for its proceedings.

**(4)** Staff. The judicial commission shall hire an executive director, and may hire one staff member, in the unclassified service. The executive director shall be a member of the State Bar of Wisconsin and shall provide staff services to the judicial commission.

**History:** 1977 c. 449; 1979 c. 34, 154; 1983 a. 27, 378; 1987 a. 27; 1991 a. 269; 1995 a. 27; 2001 a. 103; 2007 a. 20.

**757.85 Investigation; prosecution. (1)** (a) The commission shall investigate any possible misconduct or permanent disability of a judge or circuit or supplemental court commissioner. Misconduct constitutes cause under article VII, section 11, of the constitution. Except as provided in par. (b), judges, circuit or supplemental court commissioners, clerks, court reporters, court employees and attorneys shall comply with requests by the commission for information, documents and other materials relating to an investigation under this section.

(b) The judge or circuit or supplemental court commissioner who is under investigation is not subject to the request procedure under par. (a) but is subject to the subpoena procedure under sub. (2).

**(2)** The commission may issue subpoenas to compel the attendance and testimony of witnesses and to command the production of books,

papers, documents or tangible things designated in the subpoena in connection with an investigation under this section.

(3) The commission may notify a judge or circuit or supplemental court commissioner that the commission is investigating possible misconduct by or permanent disability of the judge or circuit or supplemental court commissioner. Before finding probable cause, the commission shall notify the judge or circuit or supplemental court commissioner of the substance of the complaint or petition and afford the judge or circuit or supplemental court commissioner a reasonable opportunity to respond. If the judge or circuit or supplemental court commissioner responds, the commission shall consider the response before it finds probable cause.

(4) The commission may require a judge or circuit or supplemental court commissioner who is under investigation for permanent disability to submit to a medical examination arranged by the commission.

(5) The commission shall, upon a finding of probable cause that a judge or circuit or supplemental court commissioner has engaged or is engaging in misconduct, file a formal complaint with the supreme court. Upon a finding of probable cause that a judge or circuit or supplemental court commissioner has a permanent disability, the commission shall file a petition with the supreme court. If the commission requests a jury under s. 757.87 (1), the request shall be attached to the formal complaint or the petition.

(6) The commission shall prosecute any case of misconduct or permanent disability in which it files a formal complaint or a petition.

(7) Insofar as practicable, the procedures applicable to civil actions apply to proceedings under ss. 757.81 to 757.99 after the filing of a complaint or petition.

History: 1977 c. 449; 1983 a. 192; 1983 a. 378 s. 11m; 1985 a. 332; 1987 a. 72; 1991 a. 269; 2001 a. 61.

**757.87 Request for jury; panel. (1)** After the commission has found probable cause that a judge or circuit or supplemental court commissioner has engaged in misconduct or has a permanent disability, and before the commission files a formal complaint or a petition under s. 757.85 (5), the commission may, by a majority of its total membership not disqualified from voting, request a jury hearing. If a jury is not requested, the matter shall be heard by a panel constituted under sub. (3). The vote of each member on the question of a jury request shall be recorded and shall be available for public inspection

under s. 19.35 after the formal complaint or the petition is filed.

(2) If a jury is requested under sub. (1), the hearing under s. 757.89 shall be before a jury selected under s. 805.08. A jury shall consist of 6 persons, unless the commission specifies a greater number, not to exceed 12. Five-sixths of the jurors must agree on all questions which must be answered to arrive at a verdict. A court of appeals judge shall be selected by the chief judge of the court of appeals to preside at the hearing, on the basis of experience as a trial judge and length of service on the court of appeals.

(3) A judicial conduct and permanent disability panel shall consist of either 3 court of appeals judges or 2 court of appeals judges and one reserve judge. Each judge may be selected from any court of appeals district including the potential selection of all judges from the same district. The chief judge of the court of appeals shall select the judges and designate which shall be presiding judge.

History: 1977 c. 449; 1981 c. 335 s. 26; 1983 a. 378 ss. 8g, 11m; 1991 a. 269; 2001 a. 61.

**757.89 Hearing.** A record shall be kept of any hearing on a formal complaint or a petition. The allegations of the complaint or petition must be proven to a reasonable certainty by evidence that is clear, satisfactory and convincing. The hearing shall be held in the county where the judge or circuit or supplemental court commissioner resides unless the presiding judge changes venue for cause shown or unless the parties otherwise agree. If the hearing is by a panel, the panel shall make findings of fact, conclusions of law and recommendations regarding appropriate discipline for misconduct or appropriate action for permanent disability and file the findings, conclusions and recommendations with the supreme court. If a jury hearing is requested under s. 757.87 (1), the presiding judge shall instruct the jury regarding the law applicable to judicial misconduct or permanent disability, as appropriate. The presiding judge shall file the jury verdict and his or her recommendations regarding appropriate discipline for misconduct or appropriate action for permanent disability with the supreme court.

History: 1977 c. 449; 1983 a. 378 s. 11m; 1991 a. 269 2001 a. 61.

**757.91 Supreme Court; disposition.** The supreme court shall review the findings of fact, conclusions of law and recommendations under s. 757.89 and determine appropriate discipline in cases of misconduct and appropriate action in cases of

permanent disability. The rules of the supreme court applicable to civil cases in the supreme court govern the review proceedings under this section.

**History:** 1977 c. 449; 1983 a. 378 s. 11m.

**757.93 Confidentiality of proceedings. (1)** (a) All proceedings under ss. 757.81 to 757.99 relating to misconduct or permanent disability prior to the filing of a petition or formal complaint by the commission are confidential unless a judge or circuit or supplemental court commissioner waives the right to confidentiality in writing to the commission. Any such waiver does not affect the confidentiality of the identity of a person providing information under par. (b).

(b) Any person who provides information to the commission concerning possible misconduct or permanent disability may request that the commission not disclose his or her identity to the judge or circuit or supplemental court commissioner prior to the filing of a petition or a formal complaint by the commission.

**(2)** If prior to the filing of a formal complaint or a petition an investigation of possible misconduct or permanent disability becomes known to the public, the commission may issue statements in order to confirm the pendency of the investigation, to clarify the procedural aspects of the disciplinary proceedings, to explain the right of the judge or circuit or supplemental court commissioner to a fair hearing without prejudgment, to state that the judge or circuit or supplemental court commissioner denies the allegations, to state that an investigation has been completed and no probable cause was found or to correct public misinformation.

**(3)** The petition or formal complaint filed under s. 757.85 by the commission and all subsequent hearings thereon are public.

**(4)** This section does not preclude the commission, in its sole discretion, from:

(a) Referring to the director of state courts information relating to an alleged delay or an alleged temporary disability of a judge or circuit or supplemental court commissioner.

(b) Referring to an appropriate law enforcement authority information relating to possible criminal conduct or otherwise cooperating with a law enforcement authority in matters of mutual interest.

(c) Referring to an attorney disciplinary agency information relating to the possible misconduct or incapacity of an attorney or otherwise cooperating with an attorney disciplinary agency in matters of mutual interest.

(d) Disclosing to the chief justice or

director of state courts information relating to matters affecting the administration of the courts.

(e) Issuing an annual report under s. 757.97.

**History:** 1977 c. 449; 1983 a. 378 ss. 8r, 11m; 1987 a. 72; 1991 a. 269; 2001 a. 61.

**757.94 Privilege; immunity. (1)** A complaint or communication alleging judicial misconduct or permanent disability with the commission, executive director, commission staff or panel and testimony in an investigation under this section is privileged.

**(2)** A presiding judge, executive director or a member of the commission, commission staff or panel is immune from civil liability for any conduct in the course of the person's official duties under ss. 757.81 to 757.99.

**History:** 1977 c. 449; 1983 a. 27, 378.

**757.95 Temporary suspension by supreme court.** The supreme court may, following the filing of a formal complaint or a petition by the commission, prohibit a judge or circuit or supplemental court commissioner from exercising the powers of a judge or circuit or supplemental court commissioner pending final determination of the proceedings.

**History:** 1977 c. 449; 1991 a. 269; 2001 a. 61.

**757.97 Annual report.** The commission shall issue an annual report on or before April 1 of each year which provides information on the number and nature of complaints received and their disposition, and the nature of actions it has taken privately concerning the conduct of judges or court commissioners. Information contained in the annual report shall be presented in a manner consistent with the confidentiality requirements under s. 757.93. The report shall be filed with the chief justice of the supreme court, the governor and the presiding officers of the senate and the assembly.

**History:** 1983 a. 378; 1987 a. 72; 1991 a. 269.

**757.99 Attorney fees.** A judge or circuit or supplemental court commissioner against whom a petition alleging permanent disability is filed by the commission shall be reimbursed for reasonable attorney fees if the judge or circuit or supplemental court commissioner is found not to have a permanent disability. A judge or circuit or supplemental court commissioner against whom a formal complaint alleging misconduct is filed by the commission and who is found not to have engaged in misconduct may be reimbursed for reasonable attorney fees. Any

judge or circuit or supplemental court commissioner seeking recovery of attorney fees authorized or required under this section shall file a claim with the claims board under s. 16.53.

**History:** 1977 c. 449; 1981 c. 20; 1983 a. 378 s. 11m; 1991 a. 269; 2001 a. 61.

**Appendix H**

# WISCONSIN ADMINISTRATIVE CODE

**JC 1 Authorization & Definitions**
JC 1.01 Authorization.
JC 1.02 Definitions.

**JC 2 Commission Organization**
JC 2.01 Officers.
JC 2.02 Meetings.
JC 2.03 Screening committee.
JC 2.04 Other committees.

**JC 3 General Provisions**
JC 3.01 Confidentiality.
JC 3.02 Independent investigators.
JC 3.03 Revised allegation.
JC 3.04 Disqualification.
JC 3.05 Internal proceedings.
JC 3.06 Commission not to act as appellate court.
JC 3.07 Jurisdiction.
JC 3.08 Access to files by commissioners.

**JC 4 Misconduct**
JC 4.01 Allegation.
JC 4.02 Preliminary evaluation.
JC 4.03 Investigation.
JC 4.04 Report to commission.
JC 4.05 Commission consideration.
JC 4.06 Informal appearance; disposition.
JC 4.07 Cause to proceed further; formal appearance.
JC 4.08 Commission finding.
JC 4.09 Dismissed allegations.

**JC 5 Disability**
JC 5.01 Allegation.
JC 5.02 Medical examination and reports.

**JC 6 Prosecution**
JC 6.01 Prosecution.

**JC 1.01 Authorization.** The rules in chs. JC 1 to 6 are adopted by the commission pursuant to s. 757.83 (3), Stats., and relate to ss. 757.81 to 757.99, Stats.

**History:** Cr. Register, May, 1979, No. 281, eff. 6-1-79.

**JC 1.02 Definitions.** The definitions in s. 757.81, Stats., apply in chs. JC 1 to 6. In addition, in chs. JC 1 to 6:

**(1)** "Allegation" means a charge of misconduct or disability directed to the commission.

**(2)** "Complaint" means a written document filed by the commission with the supreme court after a finding of probable cause, alleging misconduct.

**(3)** "Concern" means a non-disciplinary disposition of an allegation in which the commission communicates its views and suggestions to the judge or court commissioner regarding a matter that arose out of proceedings on an allegation.

**(4)** "Executive director" means the executive director of the commission.

**(5)** "Person" means any natural person, any partnership, corporation, group, association or organization or any political body. "Person" includes the executive director, the commission or any commissioner.

**(6)** "Petition" means a written document filed by the commission with the supreme court after a finding of probable cause, alleging that a judge or court commissioner has a permanent disability.

**(7)** "Probable cause" means that it is more probable than not that the allegation is true.

**(8)** "Warning" means a non-disciplinary disposition of an allegation in which the commission cautions the judge or court commissioner not to engage in specified proscribed behavior, and may advise the judge or court commissioner to follow a specified corrective course of action.

**History:** Cr. Register, May, 1979, No. 281, eff. 6-1-79, am. (2) and (6), Register, February, 1982, No. 314, eff. 3-1-82; renum. (4) to be (4m) under s. 13.93 (2m) (b) 1., Stats, renum. (3) to be (4), am. (6), cr. (7) and (8), Register, August, 1991, No. 428, eff. 9-1-91; am. (3), (6) and (8), r. (4m), Register, June, 1993, No. 450, eff. 7-1-93.

**JC 2.01 Officers.** The officers of the commission are a chairperson and vice chairperson. If the chairperson is absent, unavailable, or otherwise unable to act, or refuses to act, the vice chairperson shall perform the duties of the chairperson. If the chairperson resigns or dies, the vice chairperson succeeds to the office of chairperson until the next regularly scheduled election of officers. The term for each office is one year. An officer may serve no more

than 2 consecutive terms in a particular office, but is eligible to serve in an office other than the one previously held. Officers shall be elected at the first meeting after August 1 of each year.

**History:** Cr. Register, May, 1979, No. 281, eff. 6-1-79; am. Register, August, 1991, No. 428, eff. 9-1-91.

**JC 2.02 Meetings. (1)** Regular meetings shall be held at least 6 times a year upon the call of and at a time and place fixed by the chairperson. Sufficient notice shall be given to enable the commissioners so notified to attend the meetings. Public notice of all meetings shall comply with s. 19.84, Stats.

**(2)** Special meetings shall be held at the request of the chairperson or at the request of any 3 commissioners. Commissioners shall be notified of the meeting not less than 72 hours in advance of the meeting, unless a majority of the commission agrees to meet on less than 72 hours' notice. A special meeting to consider the question of probable cause shall require at least 72 hours' notice to all commissioners not disqualified in the matter.

**(3)** Regular or special meetings may take place by telephone conference with the consent of a majority of the commission. Telephone conference meetings shall be accessible to the public.

**(4)** Any notice to commissioners required under this section may be given in person, in writing or by telephone, whichever is most practicable.

**(5)** All voting at commission meetings shall be by show of hands or roll call.

**(6)** The minutes of a commission meeting shall include all motions made and seconded, all voting, including abstentions, and all absences and disqualifications.

**History:** Cr. Register, May, 1979, No. 281, eff. 6-1-79; am. (1), (2) and (4), r. and recr. (3), cr. (5) and (6), Register, August, 1991, No. 428, eff. 9-1-91.

**JC 2.03 Screening committee.** The chairperson shall appoint a screening committee consisting of at least 3 commissioners to review annually a sample of decisions to close initial inquiries made by staff without commission action, for appropriateness and consistency of those decisions, to do preliminary evaluations of allegations when requested by the chairperson and otherwise to serve at the pleasure of the chairperson.

**History:** Cr. Register, May, 1979, No. 281, eff. 6-1-79; am. Register, August, 1991, No. 428, eff. 9-1-91.

**JC 2.04 Other committees.** The chairperson shall appoint a personnel and a nominations committee and any additional committee that the commission establishes for a specified purpose, to serve at the pleasure of the chairperson or the commission.

**History:** Cr. Register, August, 1991, No. 428, eff. 9-1-91.

**JC 3.01 Confidentiality.** The proceedings of the judicial commission prior to the filing of a formal complaint concerning misconduct or a petition concerning permanent disability are confidential, unless a written waiver of confidentiality has been made by the judge or court commissioner. If a person who makes an allegation under s. JC 4.01 or 5.01, breaches the confidentiality of the investigation, the commission may dismiss the allegation, admonish the person or take other appropriate action. Clarifying and other statements may be made by the commission regarding an investigation as provided in s. 757.93 (2), Stats.

**History:** Cr. Register, May, 1979, No. 281, eff. 6-1-79; am. Register, February, 1982, No. 314, eff. 3-1-82; am. Register, August, 1991, No. 428, eff. 9-1-91; am. Register, June, 1993, No. 450, eff. 7-1-93.

**JC 3.02 Independent investigators.** The commission may authorize the executive director to appoint independent persons to investigate allegations of misconduct or permanent disability, with authority and duties specified by the executive director or commission.

**History:** Cr. Register, May, 1979, No. 281, eff. 6-1-79; am. Register, February, 1982, No. 314, eff. 3-1-82; am. Register, August, 1991, No. 428, eff. 9-1-91.

**JC 3.03 Revised allegation.** The commission may decide after an investigation has started that a particular allegation of misconduct is properly an allegation of disability or that a particular allegation of disability is properly an allegation of misconduct. If an allegation is revised in this manner, a new allegation shall be made and proceedings shall continue under ch. JC 4 or 5, whichever is applicable.

**History:** Cr. Register, May, 1979, No. 281, eff. 6-1-79; am. Register, February, 1982, No. 314, eff. 3-1-82; am. Register, August, 1991, No. 428, eff. 9-1-91.

**JC 3.04 Disqualification. (1)** A member shall not participate in any matter if a judge similarly situated would be disqualified in a court proceeding. In cases other than mandatory disqualification if the propriety of participation is challenged, the question shall be decided by a majority of the other commissioners present and voting.

**(2)** A member who while serving on the commission makes any financial or other public contribution supporting or opposing a candidate for election or appointment to judicial office shall not participate in any matter involving a judge or court commissioner who at the time of the contribution was a candidate for that office. Public contributions include signing or circulating nomination papers, soliciting campaign contributions, and openly endorsing or opposing the election or appointment of

a particular candidate.

**History:** Cr. Register, May, 1979, No. 281, eff. 6-1-79; am. Register, February, 1982, No. 314, eff. 3-1-82; renum. to be (1) and am., cr. (2), Register, August, 1991, No. 428, eff. 9-1-91; am. (2), Register, June, 1993, No. 450, eff. 7-1-93.

**JC 3.05 Internal proceedings.** The commission shall prescribe procedures for its internal proceedings as the commission deems appropriate.

**History:** Cr. Register, May, 1979, No. 281, eff. 6-1-79; am. Register, February, 1982, No. 314, eff. 3-1-82.

**JC 3.06 Commission not to act as appellate court.** The commission shall not function as an appellate court to review the decisions of a court, judge, or court commissioner or to exercise superintending or administrative control over determinations of courts, judges or court commissioners.

**History:** Cr. Register, May, 1979, No. 281, eff. 6-1-79; renum. from JC 3.07, Register, February, 1982, No. 314, eff. 3-1-82; am. Register, June, 1993, No. 450, eff. 7-1-93.

**JC 3.07 Jurisdiction.** Allegations may be considered only if they relate to actions or conduct occurring while the judge or court commissioner holds judicial office or is eligible to serve as a reserve judge under s. 753.075, Stats., and applicable supreme court rules. Actions or conduct of a person prior to assuming judicial office or subsequent to leaving judicial office, unless the person is eligible to serve as a reserve judge under s. 753.075, Stats., and applicable supreme court rules, are not within the jurisdiction of the commission.

**Note:** "Applicable supreme court rules" include SCR 32.08, which requires a judge to earn annually 5 continuing education credits in order to be eligible for appointment as a reserve judge.

**History:** Cr. Register, May, 1979, No. 281, eff. 6-1-79; renum. from JC 3.08 and am., Register, February, 1982, No. 314, eff. 3-1-82; am. Register, June, 1993, No. 450, eff. 7-1-93.

**JC 3.08 Access to files by commissioners.** A commissioner shall have access to all commission records, whether open to the public or confidential, except for those confidential records on a matter in which the commissioner is, was, or would have been disqualified.

**History:** Cr. Register, August, 1991, No. 428, eff. 9-1-91.

**JC 4.01 Allegation.** The commission shall consider any allegation of misconduct or permanent disability on the part of a judge or court commissioner from any source which reasonably indicates the existence of a cause justifying inquiry. Any person who submits a statement to the commission alleging misconduct or permanent

disability by a judge or court commissioner may request that his or her identity be kept confidential, which request shall be complied with prior to the filing of a formal complaint or petition with the supreme court under s. 757.85 (5), Stats. The executive director may seek additional facts relative to the allegation. The executive director shall make an initial determination of whether the allegation indicates the existence of a cause justifying review by the commission. If there is cause for review, the allegation shall be reduced to writing and filed as a request for investigation.

**History:** Cr. Register, May, 1979, No. 281, eff. 6-1-79; am. Register, February, 1982, No. 314, eff. 3-1-82; am. Register, August, 1991, No. 428, eff. 9-1-91; am. Register, June, 1993, No. 450, eff. 7-1-93.

**JC 4.02 Preliminary evaluation. (1)** The executive director, or at the chairperson's request, the screening committee, shall undertake an initial review of a request for investigation for preliminary analysis and clarification of the matters alleged.

**(2)** If the screening committee does the preliminary evaluation, the committee either shall recommend that the allegation be dismissed or shall authorize an investigation and refer the matter to the executive director for investigation under s. JC 4.03.

If the committee decides to recommend dismissal, the matter shall be referred to the commission. The commission may vote either to dismiss the allegation or to authorize an investigation under s. JC 4.03.

**(3)** If the executive director does the preliminary evaluation, he or she may engage in limited and discreet fact-finding intended to aid the commission in determining whether to authorize an investigation. The director shall report the preliminary evaluation to the commission, which may vote to dismiss the allegation or to authorize an investigation under s. JC 4.03.

**History:** Cr. Register, May, 1979, No. 281, eff. 6-1-79; am. Register, February, 1982, No. 314, eff. 3-1-82; am. (1) and (2), cr. (3), Register, August, 1991, No. 428, eff. 9-1-91.

**JC 4.03 Investigation. (1)** If the commission or the screening committee determines that an investigation is warranted, the matter shall be referred to the executive director for investigation. The executive director shall notify the person who made the allegation of the investigation. The executive director shall also notify the judge or court commissioner of the investigation unless the commission determines otherwise for good cause. The executive director shall conduct a full, fair and prompt investigation. The investigation shall be conducted so as to avoid unnecessary embarrassment to and publicity for the judge or court commissioner. Persons contacted for information shall be requested not to disclose that an investigation is being

conducted or the nature of any inquiries. Any person providing information may request that his or her identity be kept confidential. The request shall be complied with prior to the filing of a formal complaint or petition with the supreme court under s. 757.85 (5), Stats. A judge or court commissioner, if notified under this subsection, may present such evidence to the executive director as the judge or court commissioner deems appropriate. The judge or court commissioner may be represented by counsel during all stages of the commission's proceedings.

**(2)** The commission, by its chairperson or executive director, may issue subpoenas to compel the attendance and testimony of witnesses, including the judge or court commissioner, and to command the production of books, papers, documents or tangible things designated in the subpoena in connection with an investigation.

History: Cr. Register, May, 1979, No. 281, eff. 6-1-79; am. Register, February, 1982, No. 314, eff. 3-1-82; am. Register, August, 1991, No. 428, eff. 9-1-91; am. Register, June, 1993, No. 450, eff. 7-1-93.

**JC 4.04 Report to commission. (1)** The executive director shall report to the commission on the status of all pending requests for investigation at each regular meeting.

**(2)** The executive director shall prepare a report of each investigation made, which shall be given or mailed to each commission member participating in the matter.

History: Cr. Register, May, 1979, No. 281, eff. 6-1-79; am. Register, February, 1982, No. 314, eff. 3-1-82; am. Register, August, 1991, No. 428, eff. 9-1-91.

**JC 4.05 Commission consideration.** After considering the report of the investigation under s. JC 4.03, and the facts furnished to it, the commission shall either dismiss the allegation, hold the matter open for further investigation during which the commission may request the judge or court commissioner to make an informal appearance before the commission, or find that there is cause to proceed further.

History: Cr. Register, May, 1979, No. 281, eff. 6-1-79; am. Register, February, 1982, No. 314, eff. 3-1-82; am. Register, August, 1991, No. 428, eff. 9-1-91; am. Register, June, 1993, No. 450, eff. 7-1-93.

**JC 4.06 Informal appearance; disposition. (1)** If the judge or court commissioner is requested to make an informal appearance before the commission under s. JC 4.05 the request shall include notice of the nature of the allegation and the matters to be discussed at the appearance.

**(2)** Following the conclusion of an informal appearance, or if the judge or court commissioner fails to appear after reasonable notice of the request, the commission shall either dismiss

the matter, hold the matter open for further investigation, find that there is cause to proceed further, or take any of the actions under s. JC 4.08 (3), (4), (5) or (7).

History: Cr. Register, May, 1979, No. 281, eff. 6-1-79; am. Register, February, 1982, No. 314, eff. 3-1-82; r. and recr. Register, August, 1991, No. 428, eff. 9-1-91; am. Register, June, 1993, No. 450, eff. 7-1-93.

**JC 4.07 Cause to proceed further; formal appearance.** If after investigation the commission determines that there is cause to proceed further, the judge or court commissioner shall be notified and be requested to respond. Notice shall include the substance of the allegation and its factual basis in writing. The judge or court commissioner may be given such further information concerning the allegation as the commission deems proper under the circumstances. The judge or court commissioner shall be requested to file a written response to the commission within 20 days of receipt of the notice unless the commission or its chairperson shortens or enlarges the time to respond for good cause. The judge or court commissioner shall also be requested to make a formal appearance in person before the commission. The formal appearance shall be recorded verbatim and a transcript shall be provided to the judge or court commissioner at commission expense.

History: Cr. Register, August, 1991, No. 428, eff. 9-1-91; am. Register, June, 1993, No. 450, eff. 7-1-93.

**JC 4.08 Commission finding.** Following the conclusion of proceedings under s. JC 4.07, the commission shall do any of the following:

**(1)** Refer the matter back to the executive director for further investigation under s. JC 4.03. The judge or court commissioner may respond under s. JC 4.07 if the commission decides there is cause to proceed further on an additional allegation.

**(2)** Find that probable cause of misconduct or permanent disability does not exist, and dismiss the allegation.

**(3)** Find that by reason of the lapse of time or other circumstances the conduct described in the allegation is no longer relevant to his or her continued conduct as a judge or court commissioner, and dismiss the allegation.

**(4)** Dismiss the matter with such expression of concern or warning as the commission deems appropriate upon finding that there is credible evidence that any of the following exists:

(a) A violation of one or more standards of the code of judicial ethics that is not aggravated or persistent.

(b) A violation of a rule of the code of judicial ethics that is not willful.

(c)     A failure to perform official duties that is not willful or persistent.

(d)     The allegation does not warrant prosecution because of its minor nature or other circumstances.

**(5)**     Find that any misconduct or disability specified in the allegation is caused by a mental or physical condition for which treatment is appropriate and, with the agreement of the judge or court commissioner, hold open the allegation until the judge or court commissioner completes an appropriate treatment program. Upon successful completion of the program and demonstration that the conduct is unlikely to be repeated, the allegation shall be dismissed. Otherwise, a finding shall be made under sub. (6) or (7).

**(6)**     Find that probable cause exists that a judge or court commissioner has engaged or is engaging in misconduct, and file a formal complaint, or that the judge or court commissioner has a permanent disability and file a formal petition, with the supreme court under s. 757.85 (5), Stats.

**(7)**     Make such other disposition of the matter as is appropriate under the circumstances.

**History:** Cr. Register, May, 1979, No. 281, eff. 6-1-79; am, (1) (d), r. (1) (f), renum. (1) (g) to be (1) (f) and am., cr. (1) (d) 1. to 4. and (1) (g), Register, February, 1982, No. 314, eff. 3-1-82; renum. from JC 4.07 and am., r. (2), Register, August, 1991, No. 428, eff. 9-1-91; am. (1), (3), (5) and (6), Register, June, 1993, No. 450, eff. 7-1-93.

**JC 4.09 Dismissed allegations. (1)** If the allegation is dismissed, the commission shall notify the person who made the allegation and the judge or court commissioner, whether or not the judge or court commissioner has previously been notified of the matter, unless the commission determines for good cause that the judge or court commissioner not be notified.

**(2)**     The dismissal of an allegation by the commission does not preclude later consideration of any matter involved in it to the extent that it may evidence a pattern or practice or is otherwise relevant to the consideration of any other matter properly before the commission. A dismissed allegation may be reconsidered if new information is received upon the basis of which the commission determines that reconsideration is necessary to fulfill the purposes of the judicial conduct and disability system.

**History:**     Cr. Register, August, 1991, No. 428, eff. 9-1-91; am. (1), Register, June, 1993, No. 450, eff. 7-1-93.

**JC 5.01 Allegation.** The provisions of ch. JC 4 apply to allegations of permanent disability except as provided in this chapter.

**History:**     Cr. Register, May, 1979, No. 281, eff. 6-1-79; am. Register, February, 1982, No. 314, eff. 3-1-82.

**JC 5.02 Medical examination and reports. (1)** The commission may require a judge or court commissioner who is under investigation for a permanent disability to submit to a medical examination arranged and paid for by the commission. The report of the medical examiner shall be provided to the commission and to the judge or the court commissioner or the judge's or court commissioner's attorney. For purposes of this provision, an investigation of a permanent disability continues through any period in which an allegation is held open for treatment under s. JC 4.08 (5).

**(2)**     Medical records or reports obtained by the commission during an investigation of an allegation of permanent disability or as a result of the judge's or court commissioner's participation in a treatment program under s. JC 4.08 (5) may be considered by the commission at any stage of its proceedings.

**History:** Cr. Register, May, 1979, No. 281, eff. 6-1-79; am. Register, February, 1982, No. 314, eff. 3-1-82; r. and recr. Register, August, 1991, No. 428, eff. 9-1-91; am. Register, June, 1993, No. 450, eff. 7-1-93.

**JC 6.01 Prosecution.** The commission may authorize the executive director, or may engage special counsel, to prosecute a case on behalf of the commission.

**History:** Cr. Register, May, 1979, No. 281, eff. 6-1-79; am. Register, February, 1982, No. 314, eff. 3-1-82; am. Register, August, 1991, No. 428, eff. 9-1-91.