UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

INSTITUTE FOR REFORMING GOVERNMENT INC.,

Plaintiff,

Case No. 2025-CV-1384

v.

MARY BETH KEPPEL, et al.,

Defendants.

**BRIEF OF *AMICUS CURIAE* LAW FORWARD, INC.
IN SUPPORT OF NEITHER PARTY**

## TABLE OF CONTENTS

INTEREST OF LAW FORWARD, INC., AS *AMICUS CURIAE* .............................. 6

INTRODUCTION .............................................................................................. 8

ARGUMENT ..................................................................................................... 9

I. The claim in this lawsuit triggers strict scrutiny. ......................................... 9

II. The State of Wisconsin has compelling interests in preserving the quality of its judiciary, maintaining public confidence in judges, and ensuring that ethics procedures are not abused. ......................................... 11

- A. Wisconsin has had an elected judiciary since statehood. .................... 12
- B. Wisconsin has a compelling interest in ensuring and preserving the quality of its judiciary with the ethical standards. ....................... 16
- C. Wisconsin has a compelling interest in maintaining public confidence in the judiciary. ............................................................ 18
- D. Wisconsin has a compelling interest in keeping its judicial misconduct process from being exploited, misused, or abused. ........... 18

III. When the competing interests at issue are weighed, it is clear that the challenged statute is not sufficiently narrowly tailored to achieve the state's interests. ........................................................................... 20

- A. The grievance process's initial confidentially is narrowly tailored to fit the state's compelling interest in protecting members of the judiciary during misconduct proceedings. ......................................... 20
- B. Continuing to muzzle grievants even after the Judicial Commission has determined there is no probable cause to file a complaint is inconsistent with the First Amendment. ............... 21

CONCLUSION ................................................................................................ 22

## TABLE OF AUTHORITIES

**Cases**

*Bauer v. Shepard*,
620 F.3d 704 (7th Cir. 2010) .... 18

*Baugh v. Jud. Inquiry & Rev. Comm'n*,
907 F.2d 440 (4th Cir. 1990) .... 11

*Bradbury v. Idaho Jud. Council*,
28 P.3d 1006 (Idaho 2001) .... 10

*Curtis Publishing Co. v. Butts*,
388 U.S 130 (1967) .... 21

*First Amend. Coal. v. Jud. Inquiry & Rev. Bd.*,
784 F.2d 467 (3d Cir. 1986) .... 20

*Gabler v. Crime Victims Rts. Bd.*,
2017 WI 67, 376 Wis. 2d 147, 897 N.W.2d 384 .... 16

*In re Code of Jud. Ethics*,
36 Wis. 2d 252, 153 N.W.2d 873 (1967) .... 16, 17

*In re Disciplinary Proceedings Against Kessler*,
2010 WI 120, 329 Wis. 2d 559, 789 N.W.2d 744 .... 19

*Kamasinski v. Jud. Rev. Council*,
44 F.3d 106 (2d Cir. 1994) .... 11, 22

*Landmark Commc'ns, Inc. v. Virginia*,
435 U.S. 829 (1978) .... *passim*

*Lewis v. Coursolle Broad. of Wisconsin, Inc.*,
127 Wis. 2d 105, 377 N.W.2d 166 (1985) .... 21

*Reed v. Town of Gilbert, Ariz.*,
576 U.S. 155 (2015) .... 11, 20

*Siefert v. Alexander*,
608 F.3d 974 (7th Cir. 2010) .... 18

*Wagner v. Milwaukee Cnty. Election Comm'n*,
2003 WI 103, 263 Wis. 2d 709, 666 N.W.2d 816 (2003) .... 15

*Williams-Yulee v. Fla. Bar*,
575 U.S. 433 (2015) .......... 18

*Wolfson v. Concannon*,
811 F.3d 1176 (9th Cir. 2016) .......... 18

**Statutes and Constitutional Provisions**

1877 Wis. J. Res. 1 .......... 13

1977 Wis. Act 449 .......... 14, 17, 19

U.S. Const. amend I .......... 8, 10, 21, 22

Wis. Const. art. III, § 1 .......... 14

Wis. Const. art. VII, § 2 .......... 14

Wis. Const. art. VII, § 3 .......... 16

Wis. Const. art. VII, § 4 .......... 13, 14

Wis. Const. art. VII, § 5 .......... 14

Wis. Const. art. VII, § 7 .......... 13, 14

Wis. Const. art. VII, § 9 .......... 14

Wis. Const. of 1846, art. VII, § 7 .......... 12

Wis. Stat. § 752.03–04 .......... 14

Wis. Stat. § 757.02 .......... 12, 17

Wis. Stat. § 757.85 .......... 17

Wis. Stat. § 757.93 .......... 17, 19

## Other Authorities

Jessica Bulman-Pozen & Miriam Seifter, *Countering the New Election Subversion: The Democracy Principle and the Role of State Courts*, 2022 WIS. L. REV. 1337 (2022) .......... 15

Journal and Debates of Constitutional Convention (1848) *in* THE ATTAINMENT OF STATEHOOD (Milo M. Quaife ed., Wis. Historical Society 1928) .......... 13, 14

Khushboo Rathor, *DataWatch: Record spending. Record Turnout. We Crunched some Numbers from the Supreme Court Contest*, Wis. Watch (Apr. 7, 2025) .......... 15

MICHAEL KEANE, WIS. STATE L. LIBRAR., JUDICIAL ELECTIONS ROOTED IN WISCONSIN HISTORY (Dec. 3, 2019) .......... 15

*Turnout in Wisconsin Supreme Court Race Breaks Record*, Assoc. Press (Apr. 4, 2023, 10:46 pm CDT) .......... 15

Wis. Admin. Code § JC 3.01 (1979) .......... 19

WIS. CT. SYS., *History of the Courts* .......... 13

Wis. SCR 60 Preamble .......... 18

## INTEREST OF LAW FORWARD, INC., AS *AMICUS CURIAE*

Law Forward, Inc., is a nonprofit, nonstock Wisconsin corporation, and nonpartisan organization focused on protecting and strengthening democracy in Wisconsin. The mission of the organization is to preserve fundamental democratic principles, revive Wisconsin's traditional commitment to clean and open government, and promote a progressive vision through impact litigation, administrative process, and public education. Law Forward is committed to fair, transparent, and representative government where Wisconsinites can participate in free, fair elections where their vote counts.

This case centers on Wisconsin's state judicial branch, in which the judges are (primarily) elected officials accountable to the people of Wisconsin. Addressing the mechanisms for accountability between elections falls squarely within Law Forward's focus on ensuring that Wisconsin has a fair, transparent, and representative government.

Moreover, Law Forward itself has been involved in several actions to hold accountable those who abuse power or take actions that endanger Wisconsin democracy. *See, e.g.*, *Sickel v. Hitt*, No. EL 21-13 (Wis. Elections Comm'n) (administrative complaint against Wisconsin's fraudulent electors); *Sickel v. WEC*, No. 22CV884 (Wis. Cir. Ct. Dane Cnty.) (due process lawsuit against WEC for allowing Commissioner to participate in adjudicating administrative complaint when he was a named respondent in the complaint); *Sickel v. WEC*, No. 22CV887 (Wis. Cir. Ct. Dane Cnty.) (open records lawsuit against WEC for failure to preserve and produce individual Commissioners' records related to administrative complaint);

*Pennebaker v. Hitt*, No. 22CV1178 (Wis. Cir. Ct. Dane Cnty.) (civil action against Wisconsin's fraudulent electors and the lawyers who facilitated their conduct, which has led to three ongoing criminal prosecutions in *State v. Chesebro*, No. 24CF1293 (Wis. Cir. Ct. Dane Cnty.); *State v. Roman*, No. 2024CF1294 (Wis. Cir. Ct. Dane Cnty.); and *State v. Troupis*, No. 24CF2495 (Wis. Cir. Ct. Dane Cnty.)); *Office of Lawyer Regulation v. Gableman*, No. 24AP2356 (Wis.) (ongoing disciplinary proceeding against former Supreme Court Justice, initiated in response to ethics grievance filed by Law Forward attorneys); *Wis. Democracy Campaign v. Musk*, No. 25CV2022 (Wis. Cir. Ct. Brown Cnty.) (pending civil action against world's richest man and two associated political organizations for conspiracy to commit election bribery during 2025 Wisconsin Supreme Court election); *Theno v. Wis. State Assemb*ly, No. 26CV604 (Wis. Cir. Ct. Dane Cnty.) (pending civil action to stop Wisconsin Legislature's improper expenditures of public funds on private lawyers).[1]

In its role as a repeat ethics grievant and an active accountability watchdog for Wisconsin democracy, Law Forward has a vested interest in the subject of this dispute. It also sees the matter differently from both parties.[2]

---

[1] In addition to these matters, Law Forward has filed several grievances with the Office of Lawyer Regulation that remain open and (presumably) under investigation.

[2] Undersigned counsel authored this brief in full, and no person outside of Law Forward contributed money intended to fund the preparation of submission of the brief.

## INTRODUCTION

This case implicates distinct and sometimes competing First Amendment interests of Wisconsinites. On the one hand, Plaintiff asserts that it is acting to advance the First Amendment interests of grievants who file allegations of misconduct against Wisconsin state-court judges or justices with the Wisconsin Judicial Commission. Wisconsin voters have a First Amendment right to learn information about their elected officials, including members of the Wisconsin judiciary and candidates seeking election to judicial office, that may be material to casting their vote. On the other hand, Wisconsin voters, judicial candidates, and everyone who relies on our justice system has a right, which also implicates First Amendment protections, to fair elections free from interference by those who would manipulate the grievance process to unfairly tarnish the reputation of a judge.

The portions of Wisconsin's statutory regime and regulatory rules addressing judicial misconduct proceedings provide that grievances filed with the Judicial Commission are to remain confidential until and unless either: (a) the judge or justice against whom the grievance was filed chooses to publicly reveal the existence of the grievance; or (b) the Judicial Commission finds probable cause to file a complaint against the judge or justice, at which point the complaint and its adjudication become matters of public record. If the judge or justice chooses never to reveal that a grievance was filed and the Judicial Commission determines that there is not probable cause to pursue a complaint, the grievance remains confidential in perpetuity, hidden from Wisconsin voters.

Plaintiff challenges the confidentiality rules surrounding Wisconsin's judicial misconduct proceedings. Defendants defend those rules in full. Law Forward submits to this Court that each party is partly correct and partly incorrect. To maintain the integrity of the judicial misconduct process and to avoid distorting judicial elections in this state, the process should be confidential during the Judicial Commission's investigatory phase. This protects not only the respondent and the investigatory process, but also Wisconsin's judicial elections. Once the Judicial Commission has determined whether to proceed with a complaint, however, the grievant should be free to speak publicly about their grievance, regardless of the Judicial Commission's decision to proceed with a complaint or to dismiss the grievance. After the investigation concludes, Wisconsin voters and the public at large are entitled to learn information about the grievances filed.

## ARGUMENT

### I. The claim in this lawsuit triggers strict scrutiny.

At core, this lawsuit addresses Wisconsin's ability to limit speech related to judicial misconduct proceedings. The U.S. Supreme Court's decision nearly fifty years ago, *Landmark Communications, Inc. v. Virginia*, 435 U.S. 829 (1978), speaks to this issue and guides the analysis here. There, the Court considered whether a state "may subject persons, including newspapers, to criminal sanctions for divulging information regarding proceedings before a state judicial review commission which is authorized to hear complaints as to judges' disability or misconduct, when such proceedings are declared confidential by the State Constitution and statutes." *Id.* at 830. A newspaper owned by Landmark Communications published an article about

a pending inquiry into allegations of misconduct by a Virginia state-court judge before Virginia's judicial commission filed a formal complaint against the judge. *Id.* at 831–32. The State of Virginia criminally charged Landmark for this disclosure, and a jury found the company guilty of unlawfully divulging information about confidential proceedings. *Id.* at 832. Ultimately, the U.S. Supreme Court held that Virginia's imposition of criminal sanctions against nonparticipants in the judicial misconduct proceedings unconstitutionally encroached on those nonparticipants' free-speech rights. *Id.* at 841–42.

*Landmark* addresses First Amendment rights only in the context of nonparticipants in judicial misconduct proceedings; it does not address, much less invalidate, all confidentiality rules around judicial misconduct proceedings. Other courts have affirmed the limited scope of *Landmark*'s holding. For example, in applying that holding, the Idaho Supreme Court identified several "legitimate" state interests "in preserving the confidentiality of judicial review proceedings." *Bradbury v. Idaho Jud. Council*, 28 P.3d 1006, 1014 (Idaho 2001). While the Idaho court found that those interests "were insufficient to 'justify the encroachment on First Amendment [free speech] guarantees by imposing criminal sanctions,'" it further found that "the language in *Landmark* supports the idea that judicial disciplinary proceedings may be confidential." *Id.* at 1014–15 (quoting *Landmark*, 435 U.S. at 835–36). At the time of the *Landmark* decision, 47 states and the District of Columbia kept judicial misconduct proceedings confidential by law, and the Supreme Court noted that the ubiquity of such confidentiality rules suggested that confidentiality

plays an important role in the efficacy of judicial misconduct proceedings. *See Landmark*, 435 U.S. at 834–35.

In the wake of *Landmark*, courts have recognized confidentiality requirements around judicial misconduct proceedings as content-based restrictions on free speech that are protected by the First Amendment and subject to strict scrutiny. *See, e.g.*, *Kamasinski v. Jud. Rev. Council*, 44 F.3d 106, 109 (2d Cir. 1994); *see also Baugh v. Jud. Inquiry & Rev. Comm'n*, 907 F.2d 440, 444–45 (4th Cir. 1990). Content-based restrictions include laws "that target speech based on its communicative content." *Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 163 (2015). Content-based restrictions are presumptively unconstitutional; this presumption can be overcome only if the law survives strict scrutiny. *Id.* Thus, for a confidentiality requirement to pass constitutional muster, it must 1) further a compelling state interest and 2) be narrowly tailored to achieve the legitimate state interest. *See id.*

## II. The State of Wisconsin has compelling interests in preserving the quality of its judiciary, maintaining public confidence in judges, and ensuring that ethics procedures are not abused.

*Landmark* identifies a non-exclusive list of plausibly legitimate state interests that might justify a confidentiality requirement: (1) confidentiality avoids a chilling effect by potentially preventing retaliation or recrimination; (2) confidentiality allows for meritorious and frivolous claims to be distinguished while protecting judges from injury from unexamined and unwarranted complaints; (3) confidentiality protects the public confidence in the judiciary as an institution by avoiding the premature announcements of frivolous claims; and (4) confidentiality facilitates informal resolution of disciplinary complaints by providing an opportunity for notifying judges

of grievances and allowing them to leave their positions or retire without publicity. 435 U.S. at 835–36.

Any of these compelling interests (and potentially others) could apply in Wisconsin. Every state judge or justice takes an oath to "administer justice without respect to persons and will faithfully and impartially discharge the duties of said office." Wis. Stat. § 757.02(1). To ensure that judges and justices have the ability to carry out their oath, the state must offer a level of protection or safeguard against threats to the quality of the judiciary. As Justice Stewart recognized, "There could hardly be a higher governmental interest than a State's interest in the quality of its judiciary." *Landmark*, 435 U.S. at 848 (Stewart, J., concurring).

In the context of this action, the state's interests implicate three separate considerations: enforcing the ethical standards to which the members of its judiciary must adhere to preserve the quality of the judiciary; maintaining public confidence in the judiciary; and ensuring that proceedings to enforce ethical standards are not abused for nefarious purposes. To fully appreciate those interests, the history and importance of an elected judiciary in Wisconsin must be underscored.

### A. Wisconsin has had an elected judiciary since statehood.

Wisconsin's elected judiciary reflects a longstanding commitment to democratic accountability, at the municipal, county, district, and state levels. Wisconsin's commitment to an elected judiciary predates statehood. The Constitutional Convention of 1846 drafted a state constitution that included an elected judiciary. Wis. Const. of 1846, art. VII, § 7 (rejected by popular vote, April 1847). After this draft was rejected by voters, delegates gathered for a second

constitutional convention and discussed how an elected judiciary would function in practice. *See e.g.,* Journal and Debates of Constitutional Convention 645–77 (1848), *in* THE ATTAINMENT OF STATEHOOD (Milo M. Quaife ed., Wis. Historical Society 1928). While debating the length of judicial terms in office, one delegate to the convention keenly observed, "it [is] not desirable that the judiciary be subject to all the ebbs and flows of public opinion." *Id.* at 636 (Delegate Dunn). The theory was that attracting the best lawyers to become judges required certain protections and assurances, including a reasonable salary and term length. *Id.* at 635–36. Again, the delegates to the constitutional convention enshrined an elected judiciary within the Constitution, which was then ratified by the people of Wisconsin. Wis. Const. art. VII, § 7 (amended 1897, 1924, and 1978).

By 1853, the legislature determined that the state needed a separate Supreme Court, comprising three justices who would be elected in statewide elections. WIS. CT. SYS., *History of the Courts*.[3] Before this change, the chief judges of Wisconsin's five circuit courts met once a year in Madison to hear appeals. *Id.* The delegates to the constitutional convention had predicted that a separate Supreme Court would be required to serve the people, and they included in the constitution a provision empowering the Legislature to make this change. Wis. Const. art. VII, § 4 (amended 1877, 1889, 1903, 1978, and 2015). In 1877, the people of Wisconsin passed a constitutional amendment expanding the Supreme Court to a total of five justices, all elected by the people of the state. 1877 Wis. J. Res. 1; Wis. Const. art. VII, § 4

[3] Available at https://www.wicourts.gov/courts/history/index.htm (last visited Sep. 9, 2026).

(amended 1877, 1889, 1903, 1978, and 2015). In 1903, the people expanded the Supreme Court again, increasing its membership to seven elected Justices, while maintaining the length of the justices' terms at ten years. Wis. Const. art. VII, § 4 (amended 1877, 1889, 1903, 1978, and 2015).

In 1977, the people of Wisconsin again affirmed their belief in the elected judiciary when they adopted a constitutional amendment that provided for the Wisconsin Court of Appeals. Wis. Const. art. VII, § 2 (amended 1966 and 1978), § 5; *see also* 1977 Wis. Act 449. The judges for this new court, currently numbering sixteen, are all elected by the people of their respective districts. Wis. Const. art. VII, § 5; Wis. Stat. §§ 752.03–.04.

Throughout these changes, one constant throughline of the Wisconsin judiciary has been the election of judges, which is a core part of the state's bedrock commitment to democratic principles. Even though the delegates to the constitutional conventions were wary of an elected judiciary, they enshrined such elections into the state constitution because the people of Wisconsin wanted a direct say, and an accountability mechanism, over who would determine what the law means and how it applies to the people of Wisconsin. *See, e.g.*, Journal and Debates, 637. This fundamental design decision rooted the judicial branch in democratic legitimacy, distinct from the federal system of lifetime judicial appointments. These principles continue to underpin the Wisconsin judiciary today. The election of judges is a core democratic feature of Wisconsin's state government. Wis. Const. art. III, § 1; *id.* art. VII, §§ 2, 4, 5, 7, 9. *See also* Jessica Bulman-Pozen & Miriam Seifter, *Countering the*

*New Election Subversion: The Democracy Principle and the Role of State Courts*, 2022 WIS. L. REV. 1337, 1357.

Historically and presently, Wisconsin judicial elections can be highly competitive and contentious. *See* MICHAEL KEANE, WIS. STATE L. LIBR., JUDICIAL ELECTIONS ROOTED IN WISCONSIN HISTORY, 4–5 (Dec. 3, 2019).[4] Wisconsin adopted primary elections for Supreme Court races in 1949, after 12 candidates ran for an open seat. *Id.* at 4. Other Supreme Court elections have had as many as seven candidates on the ballot. *Id.* at 5. Recently, Wisconsin has made headlines for the nationwide interest and campaign contributions in judicial elections. *See, e.g.*, *Turnout in Wisconsin Supreme Court Race Breaks Record*, ASSOC. PRESS (Apr. 4, 2023, 10:46 pm CDT);[5] Khushboo Rathor, *DataWatch: Record spending. Record Turnout. We Crunched some Numbers from the Supreme Court Contest*, WIS. WATCH (Apr. 7, 2025).[6]

Because of the role the judiciary plays in Wisconsin's democracy, in addition to the ethical obligations and responsibilities that apply to those within the branch, the judiciary must be given unique consideration. The state has an interest in maintaining a level of quality and independence in the judiciary that is unique in comparison to other branches of government. *See Wagner v. Milwaukee Cnty. Election Comm'n*, 2003 WI 103, ¶¶25–29, 263 Wis. 2d 709, 666 N.W.2d 816 (2003)

---

[4] Available at https://wilawlibrary.gov/learn/judicial-elections.pdf.

[5] Available at https://apnews.com/article/wisconsin-supreme-court-election-turnout-record-bac438d1d79e32f0bacdc7d5966adf75.

[6] Available at https://wisconsinwatch.org/2025/04/wisconsin-supreme-court-election-record-spending-turnout-democrat-republican/ (last visited Aug. 23, 2026).

(emphasizing the importance of an independent judiciary throughout both constitutional conventions); *id.*, ¶75 ("The independence of the judiciary is a bulwark of the democratic system…"); *Gabler v. Crime Victims Rts. Bd.*, 2017 WI 67, ¶54–57, 376 Wis. 2d 147, 897 N.W.2d 384 ("[W]e caution those who impugn the integrity of judicial decision-making that while the courts remain fervent guardians of speech, … the right to speak, when exercised irresponsibly, is not without cost to the stability of our republican form of government."). This neither excuses deviations from ethical obligations nor precludes consequences for misconduct. Instead, it compels the state to play a role in ensuring compliance preventing the process of adjudicating misconduct allegations from become a tool for political ambush.

### B. Wisconsin has a compelling interest in ensuring and preserving the quality of its judiciary with the ethical standards.

Wisconsin's first code of judicial ethics was adopted by the Wisconsin Supreme Court in 1967. *See In re Code of Jud. Ethics*, 36 Wis. 2d 252, 153 N.W.2d 873 (1967). Implementation of this code was an exercise of the Supreme Court's "superintending" power over lower courts. *Id.* at 253–54; Wis. Const. art. VII, § 3. This ethical code was created to "prescribe[] guidelines for [judges'] conduct insofar as it affects the performance of their duties in the fair and impartial administration of justice." *In re Code of Jud. Ethics*, 36 Wis. 2d at 255. The code went into effect on January 1, 1968 (with an exception for one rule that required judges not to hold office or directorship in a variety of institutions, which had a two-year grace period). *Id.* Finally, the Supreme Court decreed that a committee would be appointed to "study and

recommend the enforcement organization and procedures, including possible constitutional and statutory changes and necessary implementing court rules." *Id.*

A decade later, Wisconsin created a new entity—the Judicial Commission—and granted it the power to "investigate any possible misconduct or disability of a judge or justice." 1977 Wis. Act 449, § 356 (codified at Wis. Stat. § 757.85(1)). The Commission is authorized to investigate a judge's permanent disability as well as any allegations of judicial misconduct. Wis. Stat. § 757.85(2). To that end, the Commission is empowered to solicit or compel testimony, documents, or other materials during the course of its investigation. *Id.* If the Commission finds "probable cause that a judge has engaged or is engaging with misconduct," it files a complaint in the Supreme Court, which then adjudicates the matter. *Id.* § 757.85(5).[7] In those cases where the Commission files formal complaints, it also serves as prosecutor. *Id.* § 757.85(6). When the Commission commences an action by filing a formal complaint, the procedures applicable to civil actions in Wisconsin apply. *Id.* § 757.85(7). This means that the cloak of confidentiality over the grievance process is lifted. *See id.* § 757.93. This procedure was established to hold judges accountable for their actions, and to provide the people of Wisconsin a method to pursue recourse if they feel as if judges are disregarding the oaths that they take when they take the bench. It is not hard to conceive of how bad-faith actors may attempt to manipulate this grievance system for their own political gain or to target a specific judge.

[7] Alternatively, if the Commission finds probable cause that a judge has a disability that precludes the performance of their judicial duties, the Commission files a petition with the Supreme Court. *Id.* The remainder of the paragraph above applies with equal force to cases initiated by a petition as to those initiated by a complaint.

### C. Wisconsin has a compelling interest in maintaining public confidence in the judiciary.

The Wisconsin Code of Judicial Conduct states that Wisconsin's "legal system is based on the principle that an independent, fair and competent judiciary will interpret and apply the laws that govern us." Wis. SCR 60 Preamble. The Preamble explains that the judiciary must "honor the judicial office as a public trust and strive to enhance and maintain confidence in our legal system." *Id.* These foundational principles cannot be taken lightly, by the judiciary or the state.

The Supreme Court of the United States has explicitly held that "[s]tates have a compelling interest in preserving public confidence in their judiciaries." *Williams-Yulee v. Fla. Bar*, 575 U.S. 433, 457 (2015); *see also Wolfson v. Concannon*, 811 F.3d 1176, 1186 (9th Cir. 2016) (holding that Arizona had a "compelling interest in holding public confidence in the judiciary"). For the judicial system to function properly, judges and justices must "operat[e] a judicial system that must not only be fair and impartial, but must also appear to the public to be fair and impartial." *Siefert v. Alexander*, 608 F.3d 974, 985 (7th Cir. 2010). The public's perception of the judicial system is of paramount import for the state. "The judicial system depends on its reputation for impartiality; it is public acceptance, rather than the sword or the purse, that leads decisions to be obeyed and averts vigilantism and civil strife." *Bauer v. Shepard,* 620 F.3d 704, 712 (7th Cir. 2010).

### D. Wisconsin has a compelling interest in keeping its judicial misconduct process from being exploited, misused, or abused.

The legislation establishing the Judicial Commission and setting out a process for investigating grievances against judges and justices anticipated the sensitive

nature of such proceedings. Act 449 included a confidentiality provision: "All proceedings under ss. 757.81 to 757.99 relating to misconduct or disability prior to the filing of a petition or formal complaint by the commission are confidential unless a judge waives the right to confidentiality in writing to the commission." *Id.* § 757.93(1). Once the Judicial Commission files a complaint in the Supreme Court, all proceedings from that point forward are public. *Id.* § 757.93(3). Administrative rules further address confidentiality: "[I]f a person who makes an allegation [of judicial misconduct or disability] breaches the confidentiality of the investigation, the commission may dismiss the allegation, admonish the person or take other appropriate action." Wis. Admin. Code § JC 3.01. These confidentiality provisions in statute and in administrative code remain unchanged and in place today.

Justice Stewart's admonition in his concurrence in *Landmark* applies with special force in states that, like Wisconsin, have an elected judiciary. The risk that political opponents or their allies will file questionable judicial misconduct grievances for political gain has precedent in Wisconsin. The case of *In re Disciplinary Proceedings Against Kessler* addressed a similar scenario, in which allies of a judicial candidate conspired to and filed a grievance with the express purpose of harming the reputation of the incumbent the candidate was challenging. 2010 WI 120, ¶¶7–12, 329 Wis. 2d 559, 789 N.W.2d 744 (per curiam). In that case, while Attorney Kessler may have believed it necessary to report the incumbent's misconduct to the Judicial Commission, the Wisconsin Supreme Court noted that his grievance also provided potential political gain for his wife, who was challenging the incumbent in the

imminent election. *Id.* It is not a far leap to assume that, were Plaintiff to succeed in abolishing all confidentiality rules around judicial misconduct proceedings, the Judicial Commission would see an increase in questionable, and even frivolous, grievances filed primarily for political gain.

## III. When the competing interests at issue are weighed, it is clear that the challenged statute is not sufficiently narrowly tailored to achieve the state's interests.

As argued above, the state has a compelling interest in ensuring the integrity of the judiciary. The confidentiality of the initial judicial ethics grievance process is narrowly tailored to the state's compelling interest. This compelling interest must be weighed against the right to free speech and the ability of people to discuss and criticize the actions of elected officials. The state's path between these competing interests must be narrowly tailored for the law to pass constitutional muster. *See Reed*, 576 U.S. at 163.

### A. The grievance process's initial confidentially is narrowly tailored to fit the state's compelling interest in protecting members of the judiciary during misconduct proceedings.

To allow for the initial grievance process to proceed through the Judicial Commission, the confidentiality requirements that bind the grievant are narrowly tailored for the duration of the investigation. This temporary confidentiality is appropriate to effectuate the legitimate state interests recognized in *Landmark*. *Supra* Part II. "The possibility that judges would be harassed and the judicial system disrupted in the event of open hearings before a judicial inquiry board has not been an illusory concern." *First Amend. Coal. v. Jud. Inquiry & Rev. Bd.*, 784 F.2d 467, 476 (3d Cir. 1986). As discussed above, maintaining the integrity of and confidence

in the judiciary may involve shielding judges from frivolous attacks. This has a number of potential benefits, and, during investigative proceedings, confidentiality may allow for the Judicial Commission to complete its work without extraneous noise and potential influence from public opinion, which precludes unnecessary questions about integrity and confidence in the judiciary at a stage where facts and evidence are still being gathered, sifted, and interpreted. Keeping the Judicial Commission's initial investigative process confidential is a policy narrowly tailored to advance legitimate state interests in preserving the quality of the judiciary, ensuring public confidence in the judiciary, and preventing abuse of the judicial ethical grievance process.

### B. Continuing to muzzle grievants even after the Judicial Commission has determined there is no probable cause to file a complaint is inconsistent with the First Amendment.

Though the confidentiality provision is important to the Judicial Commission's initial proceedings, permanent restrictions on First Amendment rights violate the constitution. "The operations of the courts and the judicial conduct of judges are matters of utmost public concern." *Landmark*, 435 U.S. at 839; *see also Lewis v. Coursolle Broad. of Wis., Inc.*, 127 Wis. 2d 105, 113–14, 377 N.W.2d 166 (1985) (quoting *Curtis Publ'g Co. v. Butts*, 388 U.S 130, 164 (1967) (Warren J., concurring)) (explaining that the public has "legitimate and substantial interest in the conduct of" public officials).

This does not allow for unchecked filing of frivolous grievances. As the Second Circuit concluded, "the ban on disclosure is constitutional only so long as the [judicial commission] acts in its investigatory capacity. Once the [commission] has determined

whether or not there is probable cause that judicial misconduct has occurred, even Connecticut's most compelling interests cannot justify a ban on the public disclosure of allegations of judicial misconduct." *Kamasinski*, 44 F.3d at 111–12. This middle ground achieves a balance between First Amendment rights and the compelling state interest in preserving the quality of the judiciary, ensuring public confidence in the judiciary, and preventing the judicial grievance process from being abused.

## CONCLUSION

For the foregoing reasons, the Court should find that the confidentiality of the investigative period of judicial grievances is a narrowly tailored solution to a compelling state interest and should pass constitutional muster. Beyond the investigative period, or when this period ends, the person who filed the grievance should not have their First Amendment rights restricted and be able to speak freely about their grievance.

Dated this 17th day of September, 2026.

Respectfully submitted:

/s/ Taylor A. Norback
Douglas M. Poland (SBN 1055189)
Taylor A. Norback (SBN 1126688)
LAW FORWARD, INC.
222 W. Washington St., Suite 680
Madison, WI 53703
(608) 283-9822
dpoland@lawforward.org
tnorback@lawforward.org