UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

INSTITUTE FOR REFORMING GOVERNMENT INC.

Plaintiff,

v.

Case No. 2025-CV-1384

MARY BETH KEPPEL, DONALD A. DAUGHERTY, JR., ANALISE EICHER, ROBERTA GASSMAN, JOHN T. HENDRICKS, THOMAS HRUZ, RHONDA LANFORD, BARBARA NOTESTEIN in their Official Capacities as Members of the Wisconsin Judicial Commission,

Defendants.

---

# PLAINTIFF'S REPLY MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

---

WISCONSIN INSTITUTE FOR LAW & LIBERTY

Lucas T. Vebber (#1067543)
Daniel P. Lennington (#1088694)

1241 N. Franklin Place
Milwaukee, WI 53202
Phone: (414) 727-9455

Lucas@will-law.org
Dan@will-law.org

*Attorneys for Plaintiff*

## TABLE OF CONTENTS


INTRODUCTION ........ 1

ARGUMENT ........ 2

I. Defendants have no compelling interest justifying suppression of all speech about an investigation that never occurred. ........ 2

A. Defendants' claimed interests are not compelling. ........ 2

B. Defendants cannot get around *Landmark*. ........ 7

C. The perpetual confidentiality provisions are not narrowly tailored to any legitimate Commission interest. ........ 12

II. The Confidentiality Provisions are unconstitutionally vague and overbroad. ........ 16

III. Severability does not save the provisions. ........ 18

IV. Plaintiff Continues to Suffer Injury and a Permanent Injunction is Proper. ........ 19

CONCLUSION ........ 19

## INTRODUCTION

Defendants concede that the challenged confidentiality provisions are content-based restrictions on speech subject to strict scrutiny. Dkt. 36:9. Such restrictions "are presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests." *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015). "As a practical matter, strict scrutiny is 'fatal in fact absent truly extraordinary circumstances.'" *Planned Parenthood Great Nw., Hawai'i, Alaska, Indiana, Kentucky, Inc. v. Comm'r of the Indiana State Dep't of Health*, 187 F.4th 939, 960 (7th Cir. 2026) (quoting *Free Speech Coalition, Inc. v. Paxton*, 606 U.S. 461, 485 (2025)). Defendants have not met this heavy burden, and Plaintiff's motion for summary judgment should be granted.

Public confidence is *eroded* where, as here, speech about an unexplained dismissal is prohibited. The Confidentiality Provisions prohibit Plaintiff from discussing its filing of a request for investigation, the Defendants' handling of that request, or the Defendants' unexplained dismissal of it. Defendants themselves confirm that the Commission dismissed Plaintiff's request without finding probable cause and then told Plaintiff that the matter "remain[s] strictly confidential." Dkt. 36:9. Defendants cannot meet their burden under strict scrutiny, especially here where they declined to open an investigation and dismissed Plaintiff's request without explanation.

Defendants' principal response is that the provisions are narrowly tailored to a compelling interest because the underlying facts of the alleged misconduct may still

be discussed, there are no criminal penalties or fines, third parties are not covered, and confidentiality ends upon a finding of probable cause. Dkt. 36:23–26. But each of those responses is either incomplete or legally irrelevant where, as here, a matter is closed without investigation or explanation.

The challenged confidentiality provisions permanently silence a complainant, like Plaintiff here, about the fact that it filed a request for investigation, and the Commission's unexplained dismissal of it. Defendants' interests are not compelling. But even if they were, they still fail narrow tailoring, especially because they are applying this confidentiality requirement even long after a request was dismissed and because there are other tools available that could satisfy those interests in a much less restrictive manner. Further, the Confidentiality Provisions are also unconstitutionally vague and overbroad. They cannot stand.

Plaintiff's motion for summary judgment should be granted, and Defendants' cross-motion should be denied.

## ARGUMENT

### I. Defendants have no compelling interest justifying suppression of all speech about an investigation that never occurred.

#### A. Defendants' claimed interests are not compelling.

Defendants identify several interests they claim to be compelling for strict scrutiny purposes: protecting individual judges from reputational injury that may arise from complaints, maintaining public confidence in the judiciary, attracting qualified judges in an elected system, and encouraging the filing of complaints and the cooperation of witnesses. Dkt. 36:10–16. Each of those interests, of course,

presupposes an open investigation or the risk of unexamined public accusations. But none of those interests are compelling for *this* case: once the Commission has examined the request, found no probable cause, and then closed the matter, there is no compelling interest in maintaining strict confidentiality.

Defendants attempt to keep their interests alive even after dismissal without an investigation by citing the volume of initial inquiries they get, and by asserting that the post-dismissal disclosure would still deter witnesses. Dkt. 36:12, 15. But Defendants' arguments prove the opposite. The overwhelming majority of requests are meritless or do not warrant investigation, yet the statute and rule impose a permanent, content-based ban on speech regarding every single one of them. A restriction that permanently silences speech about the Defendants' own negative determinations is not narrowly tailored to any residual interest in "unexamined" complaints. And the witness retaliation claims are pure speculation once no investigation has occurred and no witnesses have been interviewed.

Defendants' interest in shielding judges "from the injury which might result from publication of unexamined and unwarranted complaints" (Dkt. 36:11) was rejected by the Supreme Court in *Landmark Communications, Inc. v. Virginia*, 435 U.S. 829, 841–42 (1978). The Supreme Court explained that injury to the reputation of judges or the institutional reputation of the courts is not sufficient to justify "repressing speech that would otherwise be free." *Id.* at 841–42 (quoting *New York Times v. Sullivan*, 376 US 254, 272–73 (1964). The Southern District of Florida reached the same conclusion in *Doe v. Gonzales* on analogous facts, rejecting the

reputational interest as a justification for silencing a complainant in the context of an ethics commission. 723 F. Supp. 690, 694 (S.D. Fl. 1988). Especially here, where the Defendants reviewed the request, and declined to proceed, there is no compelling interest to justify a *permanent* gag on speech.

Public confidence is also not enhanced by concealing both the fact that a request was filed and any discussion of the Defendants' inaction. In fact, the opposite is true. The Supreme Court has emphasized that "[t]he operations of the court and the judicial conduct of judges are matters of utmost public concern" and that "the law gives '[j]udges as persons, or courts as institutions . . . no greater immunity from criticism than other persons or institutions." *Landmark*, 435 U.S. at 839, quoting *Bridges v. California*, 314 U.S. 252, 289 (1941) (Frankfurter, J., dissenting). Defendants' reliance on *Whitehead v. Nevada Commission on Judicial Discipline*, 893 P.2d 866 (Nev. 1995) and *Kamasinski v. Judicial Review Council*, 44 F. 3d 106 (2d Cir. 1994) is misplaced. Both *Whitehead* and *Kamasinski* dealt with pre-probable cause stages and are not helpful here where a perpetual ban is placed on a request for investigation that was never opened. Again, public confidence is *eroded* where speech about an unexplained dismissal is prohibited.

Defendants further claim that confidentiality after dismissal is necessary in order to prevent complainants from "leverage[ing] the disciplinary body's apparent imprimatur." Dkt. 36:11. But that interest fails on its own terms once the Commission has already rejected the request. A truthful statement from a complainant that they filed a request and it was dismissed without explanation or probable-cause finding

does not create an imprimatur of wrongdoing, it creates an imprimatur of the Defendants' own inaction. The First Amendment does not permit the State to suppress speech that merely reports what the government itself decided.

Defendant's recruitment concern (Dkt. 36:13) is speculative and also does not survive strict scrutiny. Wisconsin already subjects all judges to electoral criticism of their records. Defendants offer zero evidence that disclosing the existence of a request for investigation, or public discussion regarding the Defendants' refusal to take any action, creates any incremental harm beyond ordinary campaign speech regarding a judicial candidate.

The interest in encouraging complaints and protecting witnesses from retaliation (Dkt. 36:14–15) also evaporates once an investigation ends. *See Doe*, 723 F. Supp. at 694–95. And the fact that an individual who *files* a complaint is subject to strict confidentiality requirements, whereas an individual who *never filed* a complaint is not would seem to discourage the filing of complaints, as individuals don't want to be forced to be silent. Defendants simply cannot justify a perpetual ban on speech to evade any public scrutiny of their decisions not to investigate.

Defendants also assert that confidentiality encourages voluntary resignation or retirement. Dkt. 36:15–16. That interest is wholly irrelevant here where no investigation was opened, no complaint was even contemplated, and the Defendants closed the matter without explanation. A permanent ban on any speech about the Defendants' actions here does nothing to encourage or induce resignation.

Defendants want to be able to stifle the free speech of Wisconsinites and then escape *all* discussion, or be forced to take responsibility for their actions. This Court should not allow it. Defendants have an important job to do, to be clear. They are tasked with investigating and prosecuting allegations of judicial misconduct or disability involving Wisconsin judges and court commissioners. But where the Defendants decide no action should be taken and dismiss a request, they impose strict confidentiality requirements that insulate them as public officials themselves from any oversight or public transparency on the decisions they make. In a functioning democracy, transparency and accountability are paramount, not perpetual silence.

Plaintiff here filed a request for an investigation. That request was denied and no investigation ever happened. Plaintiff is now prohibited from disclosing the contents of that request, and consequently, from taking any other actions to hold Defendants accountable for their decision not to pursue it further. But the First Amendment does not allow the actions Defendants are taking, and the statute and regulation purporting to command confidentiality here necessarily fail.

The near universal existence of some confidentiality regime during the investigatory phase is not a substitute for, or exception to, strict-scrutiny analysis. Many of the regimes that Defendants cite are narrower or contain explicit exceptions that Wisconsin's *perpetual* ban lacks. Consensus cannot supply the compelling interest that strict scrutiny requires. Defendants have failed to identify any compelling interest that justifies silencing Plaintiff about the filing of its own request for investigation following the Defendants' unexplained refusal to act.

### B. Defendants cannot get around *Landmark*.

As Plaintiff explained in its opening brief, this case is controlled by *Landmark*. Dkt. 29-1:10–11. In response, Defendants attempt to distinguish these facts from *Landmark* by arguing that that case only barred criminal sanctions on nonparticipants in a judicial commission's proceeding, and say that the court did not have a "constitutional challenge to a [s]tate's power to keep the Commission's proceedings confidential or to punish participants." Dkt. 36:16, 20. But that distinction is unavailing. The First Amendment does not require criminal sanctions before its protections apply to speech. The consequences of violating the Confidentiality Provisions challenged in this action are still state-imposed burdens that chill protected speech. *Landmark* held that a state's confidentiality designation cannot immunize judges or judicial-discipline proceedings from public discussion. 435 U.S. at 838–39. That principle applies with even greater force where, as here, the speaker is the complainant and wants to discuss its own request that was closed without investigation or explanation. Plaintiff's speech here "lies near the core of the First Amendment." *Id.* at 838.

Defendants' response over-reads *Landmark's* "narrow and limited" language. *Landmark*, 435 U.S. at 837. The Court held that interests in protecting judges' reputations and the effectiveness of the disciplinary process were insufficient to suppress speech about those proceedings. *Id.* at 841–42. The fact that the particular sanction before the Court in that case was criminal and the particular speaker was a nonparticipant does not transform those same interests into compelling justifications

for a permanent content-based ban on a complainant's own speech about a closed matter.

*Landmark* controls here and Defendants' efforts to distinguish it all fail. In that case, the Supreme Court held the state's interest in protecting judges' reputations and institutional integrity were insufficient to justify punishing speech about judicial misconduct proceedings. *Landmark*, 435 U.S. at 841–42. In doing so, the Court emphasized that "[t]he operations of the courts and the judicial conduct of judges are matters of the utmost public concern" and that judges and courts "[have] no greater immunity from criticism." *Id.* at 839.

Again, Defendants try to distinguish *Landmark* by arguing that the holding in that case was limited only to situations where nonparticipants could face criminal sanctions, but that is wrong. The Court in *Landmark* framed the question narrowly because that is what was presented, concluding that the interests offered there were not sufficient to suppress someone's First Amendment rights. Of course, that factual statement about that particular case is not a holding that the same interests would become constitutionally sufficient when the speaker is a participant or the penalty was non-criminal. The critical holding in the case, that reputational and institutional interests do not justify suppressing core speech about government affairs, does not depend on those distinctions, and it certainly does not depend on whether the government will punish someone administratively or criminally.

Whether a complainant who files a request for investigation or a journalist working for a newspaper, the speech at issue is materially identical: discussion of

alleged judicial misconduct and the actions and involvement (or lack thereof) of the Commission. The First Amendment protects "the free discussion of government affairs" which includes "the operations of the courts and judicial conduct of judges." *Id.* at 838—39 (internal citations omitted). The First Amendment's protection of speech on those topics does not turn on whether the speaker obtained the information as a complainant or a reporter, and *Landmark* does not hold otherwise.

Defendants' further claim that the complainants "voluntarily avail themselves" of the process and therefore must accept a limitation on speech. Dkt. 36:26. But that too is unpersuasive. Filing a request for investigation is the only statutory mechanism the State allows for a citizen to report possible judicial misconduct. Conditioning the exercise of that upon a permanent waiver of any First Amendment rights cannot stand.

And as Plaintiff explained in its complaint, the consequences for breaching confidentiality here are very real. *See* Dkt. 1: ¶ 32. A majority of the Wisconsin Supreme Court wrote a letter to the Commission identifying what they believed to be a "direct violation" of the Confidentiality Provisions. Given that several Defendants who are members of the Commission were appointed by the Supreme Court (*see* Wis. Stat. § 757.83(1)(a)), transparency is especially important to ensure no conflicts of interest may arise.

Defendants also argue that the only consequences available are dismissal, admonishment or "other appropriate action" and claim these are not really penalties at all and that any admonishment is merely the government's *own* protected speech.

Dkt. 36:24–25. But that argument misses the point, because the chilling effect arises from the State's threat to use its official processes and its power to refer licensed attorneys to the Office of Lawyer Regulation. *See File v. Martin*, 33 F.4th 385, 388 (7th Cir. 2022) ("The Office of Lawyer Regulation—the court agency that investigates and prosecutes ethics violations—may initiate proceedings to impose additional sanctions, including full license suspension.") A content-based restriction on speech does not become constitutional merely because the State chooses an administrative rather than a criminal tool to enforce it. *See New York Times Co*, 376 U.S. at 277.

Defendants argue that complainants remain free to discuss the underlying allegations but are prohibited from discussing the Commission's proceedings (including the fact that a complaint was filed). Dkt. 36:4, 23. But that concession does not remove the speech from the core of the First Amendment, nor does it do anything to advance transparency or hold government accountable. Public statements about whether a disciplinary body in the state is properly doing its job and reviewing alleged misconduct is precisely the kind of information the Supreme Court protected in *Landmark*. This Court should do the same here. If an individual could discuss the allegations, but not the fact that a complaint was filed, it would simply hurt that individual's credibility, and the obvious response to any discussion of allegations would be: "have you filed a complaint?" And of course, that question could not be answered under the strict confidentiality scheme challenged here.

As Plaintiff explained in its opening brief, lower courts have applied *Landmark*'s reasoning to participants in proceedings. *See* Dkt. 29-1:12–13.

(discussing *Doe v. Gonzalez*, 723 F. Supp. 690 (S.D. Fla. 1988) *aff'd*, 886 F.2d 1323 (11th Cir. 1989)). Even *Kamasinski v. Judicial Review Council*, 44 F.3d 106 (2d Cir. 1994), which Defendants rely upon, recognized that a complainant cannot be barred from disclosing the substance of his own complaint or testimony. *Id.* at 110. That case upheld only a temporary confidentiality requirement *until* a probable cause determination was made. *Id.* at 112 ("Once the [Commission] has determined whether or not there is probable cause that judicial misconduct has occurred, even [the state's] most compelling interests cannot justify a ban on the public disclosure of allegations of judicial misconduct."). But Wisconsin's confidentiality scheme goes much further and requires confidentiality indefinitely *after* dismissal of the request. That perpetual bar on speech cannot stand.

Defendants also rely on *First Amendment Coalition v. Judicial Inquiry & Review Board*, 784 F.2d 467 (3d Cir. 1986), *Adams v. Commission on Judicial Conduct & Disability*, 165 F. Supp. 3d 911 (N.D. Cal. 2016) and *Garner v. Cherberg*, 765 P.2d 1284 (Wash. 1988). Dkt. 36 at 10–11. But none of these cases hold that a judicial-conduct body may impose a perpetual, content-based prior restraint on a complainant's own speech about their own allegations against a public official once the investigative process has ended (or, like here, where the investigative process was never even begun). Those cases are not helpful here.[1]

---

[1] The third circuit confirmed this in *First Amendment Coalition*, explicitly striking down a restriction "banning witnesses from disclosing their own testimony." *First Amend. Coal. v. Jud. Inquiry & Rev. Bd.*, 784 F.2d 467, 468 (3d Cir. 1986).

Defendants also argue that this challenge is distinguishable from *Landmark* because Wisconsin does not provide for criminal penalties. But the constitutional defect in *Landmark* was the insufficiency of the interests offered by the Government, not the particular form of *sanction* to be applied at the back end. The First Amendment does not have a non-criminal penalty carve out that allows the Government to restrict speech so long as the silenced speaker does not face jail time for disobeying. *See, e.g., New York Times Co.*, 376 U.S. at 277 ("What a State may not constitutionally bring about by means of a criminal statute is likewise beyond the reach of its civil law of libel.").

A government-imposed penalty (administrative or otherwise) designed to silence speech will chill protected expression. Individuals here have the "right to make a truthful statement of information he acquired on [their] own." *Butterworth v. Smith*, 494 U.S. 624, 636 (1990).

At bottom, *Landmark* controls this case, and Defendants' attempt to escape its holdings in this case fails. Plaintiff's motion for summary judgment should be granted.

### C. The perpetual confidentiality provisions are not narrowly tailored to any legitimate Commission interest.

Plaintiff's opening brief explained how Defendants' claimed interests were not compelling. Even if this Court were to assume there to be compelling interests here for § 757.93(1)(a) and JC § 3.01, those provisions would certainly not be narrowly tailored to any such interest.

As explained earlier when talking about whether the interests were compelling, Defendants claim several related interests in the confidentiality provisions, including that they protect judges "from the injury which might result from publication of unexamined and unwarranted complaints," that they maintain "confidence in the judiciary" and that they "attract[ ] qualified judges." Dkt. 36:11–13.

Yet the challenged confidentiality provisions *permanently* bar a complainant from stating the mere fact that a complaint was even filed, even after dismissal, while still allowing unrestricted *public* speech by non-complainants regarding those same underlying allegations. Each of those interests could be served by a narrower restriction limited to active investigations only, not the permanent ban imposed by the challenged regulations in this case. *See Kamasinski v. Judicial Review Council*, 44 F.3d 106, 112 (2d Cir. 1994).

They next claim the provisions "encourage[ ] the filing of complaints and the willing participation of relevant witnesses by providing protection against possible retaliation," shield the Commission from political pressure, and make judges "more likely to resign voluntarily or retire" to avoid any publicity. Dkt. 36:14–16. But again, the restrictions fail because they are not narrowly tailored to those interests, because there are alternatives that could serve those interests short of a perpetual ban on any speech regarding the mere existence of a complaint. Especially where any member of the public (who did not file a complaint) could make the same accusations and raise the same issues in public.

For example, confidentiality could be limited to internal votes or drafts, and the Commission already has the ability to correct the public record. *Landmark* already held that reputational and institutional interests were insufficient to justify suppressing discussion of disciplinary proceedings. *Landmark*, 435 U.S. at 841–42. And *Butterworth* likewise rejected a permanent gag on a participant's own speech. *Butterworth*, 494 U.S. at 636.

In short, the confidentiality provisions (including the permanent ban on disclosing even the mere fact that a complaint was filed) are substantially broader than necessary to serve every interest the Defendants advance here.

To meet the requirement of narrow tailoring, the burden is on Defendants who "must demonstrate that alternative measures that burden substantially less speech would fail to achieve the government's interests, not simply that the chosen route is easier." *McCullen v. Coakley*, 573 U.S. 464, 467 (2014). Defendants here have not done that, nor could they.

Furthermore, as Plaintiff explained in its opening brief, Wisconsin's own statute confirms that narrower alternatives exist: Wis. Stat. § 757.93(2) permits the Commission to issue public statements confirming the pendency of an investigation, stating that no probable cause was found, or correcting public misinformation—precisely the kind of speech that the Confidentiality Provisions prohibit complainants from engaging in. *See also,* Dkt. 29-1:16.

In response, Defendants acknowledge that Wis. Stat. § 757.93(2) authorizes them to speak publicly on those issues, but they claim "by then the harm has already

been done." Dkt. 36:29. They offered zero evidence that the existence of this less-restrictive alternative was ineffective. But under strict scrutiny review here, the availability of the Commission's corrective speech means the State cannot justify a permanent categorical ban on any complainant's speech. The Commission could immediately counter any statement that a complaint is pending, or that it has been dismissed without probable cause, precisely the imprimatur harm that Defendants emphasize. Dkt. 36:11.

And Defendants' arguments are *especially* weak as applied to IRG here, again where a request for investigation has been filed and dismissed without explanation. Any residual reputational concern can be addressed by the Commission directly rather than by silencing the complainant. As the Supreme Court explained in *Landmark*, "injury to official reputation is an insufficient reason 'for repressing speech that would otherwise be free.'" *Landmark*, 435 U.S. at 841–42 (quoting *New York Times Co.*, 376 U.S. at 272–273 (1964). Again, Defendants identify no concrete harm that survives their own ability to correct the record, nor do they even attempt to explain why that more narrow remedy would be inadequate. Defendants' mere assertion that "the harm has already been done" is not a showing that the less-restrictive alternative fails to serve the asserted interests.

It is Defendants who "must demonstrate that alternative measures that burden substantially less speech would fail to achieve the government's interests, not simply that the chosen route is easier." *McCullen v. Coakley*, 573 U.S. 464, 467 (2014). Defendants here have not done so.

Defendants also argue that the provisions impose "no criminal or monetary penalties," "no penalties for third parties," and that "confidentiality ends upon a finding of probable cause." Dkt. 36:24–26. But none of those points establish narrow tailoring to the asserted interests either. The absence of criminal penalties does not render a content-based restriction constitutional. Third-party immunity is irrelevant in this case that involves statutes that directly target complainants, not third parties. And while confidentiality may end if the Defendants make a finding of probable cause, that does not justify a permanent bar of *all* speech regarding requests and the Defendants' action after dismissal.

There is no other way to hold the Commission itself accountable for its actions, or for its failure to act than to publicly disclose that complaints were filed and not acted upon. The provisions are not narrowly tailored to any compelling interest, and they are therefore unconstitutional. Plaintiff's motion for summary judgment should be granted.

## II. The Confidentiality Provisions are unconstitutionally vague and overbroad.

In response to Plaintiff's arguments that the Confidentiality Provisions are unconstitutionally vague and overbroad, Defendants argue the provisions have an "ascertainable core of meaning," and that greater tolerance should apply here because there are no criminal penalties. Dkt. 36:32.

But the provisions fail to give fair notice of what "proceedings" it is referring to. Is it the request itself? Is it a subsequent investigation? Is it just the internal

discussions of the Commission? The provisions themselves also impose no temporal limit once a matter is closed—they apply *indefinitely*.

"Other appropriate action" is a standardless delegation of power that invites arbitrary enforcement. Defendants' attempt to cabin the phrase through *noscitur a sociis* (citing *Benson v. City of Madison*, 2017 WI 65) does not cure the problem, the residual clause still leaves the Defendants free to invent new consequences without any legislative standards at all. That enforcement, combined with the Defendants' refusal to provide any advance clarification, means that the rule fails to give ordinary people fair notice such that it is unconstitutional. A law that "fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement," is unconstitutionally vague. *United States v. Williams*, 553 U.S. 285, 304 (2008).

The provisions are also overbroad and reach substantially more speech than any legitimate interest would allow. As explained by Plaintiff repeatedly, the restrictions apply *permanently* to *any* discussion of the request itself, or the Defendants' decision to take no action on it.

The Confidentiality Provisions themselves are both unconstitutionally vague and overbroad regulations on speech and are unconstitutional for these independent grounds as well. "Whether the argument is styled as overbreadth or vagueness, the central question…is whether the provisions at issue potentially reach a 'substantial' amount of protected speech." *Center for Individual Freedom v. Madigan*, 697 F.3d 464, 479–80 (7th Cir. 2012). As explained in Plaintiff's opening brief and again herein,

the restrictions themselves are both vague and overbroad, and they absolutely reach a substantial amount of protected speech.

## III. Severability does not save the provisions.

Defendants argue that any unconstitutional applications can and must be severed. Dkt. 36:30–31. The text of the Confidentiality Provisions, however, does not distinguish between open and closed proceedings. They declare "all proceedings" are confidential. Defendants ask this Court to completely rewrite the statute and essentially create whole-cloth a post-dismissal exception that the Legislature omitted from the statute. As the Supreme Court has explained, Court's "will not rewrite a … law to conform it to constitutional requirements, for doing so would constitute a serious invasion of the legislative domain and sharply diminish Congress's incentive to draft a narrowly tailored law in the first place." *United States v. Stevens*, 559 U.S. 460, 481 (2010) (internal citations omitted).

Defendants' other cited cases (*Ayotte v. Planned Parenthood of Northern New England*, 546 U.S. 320 (2006), *United States v. Hansen*, 599 U.S. 762 (2023) and *United States v. Betts*, 99 F.4th 1048 (7th Cir. 2024)) do not change the analysis here. The statute here clearly provides that "all proceedings . . . are confidential" (Wis. Stat. § 757.93(1)(a)), it contains no temporal limit, nor any severable subject-matter limitation. Creating any kind of post-dismissal exception would require the Court to insert words the Legislature never enacted.

## IV. Plaintiff Continues to Suffer Injury and a Permanent Injunction is Proper.

Finally, as Plaintiff explained in its opening brief, a permanent injunction is warranted here. Defendants' response did not even appear to address Plaintiff's request for permanent injunctive relief in this case. Dkt. 29-1:21–23.

Wisconsin's confidentiality scheme applies to everyone who files a Request for Investigation with the Commission, and "chills" exactly the kind of speech—public discussion of alleged misconduct or any discussion of whether or not the commission properly refused to take action—that lies at the heart of the First Amendment. Broad declaratory and injunctive relief is therefore appropriate to remedy the violation as to Plaintiff and to prevent Defendants from continuing to enforce an unconstitutional scheme against other speakers going forward. *See Citizens United v. FEC*, 558 U.S. 310, 333 (2010) (recognizing the propriety of facial review given a statute's "nationwide chilling effect").

Accordingly, this Court should declare Wis. Stat. § 757.93(1)(a) and Wis. Admin. Code JC § 3.01 unconstitutional, both facially and as applied to Plaintiff, and permanently enjoin Defendants from enforcing them.

## CONCLUSION

Plaintiff therefore respectfully ask this Court to grant its Motion for Summary Judgment and enter the requested relief.

[Signature on following page]

Dated: November 2, 2026

Respectfully Submitted,

WISCONSIN INSTITUTE
FOR LAW & LIBERTY

*s/ Lucas T. Vebber*

Lucas T. Vebber (#1067543)
Daniel P. Lennington (#1088694)

1241 N. Franklin Place
Milwaukee, WI 53202
Phone: (414) 727-9455

Lucas@will-law.org
Dan@will-law.org

*Attorneys for Plaintiff*