IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

INSTITUTE FOR REFORMING GOVERNMENT INC.,

Plaintiff,

v. Case No. 25-CV-1384

MARY BETH KEPPEL, DONALD A. DAUGHERTY, JR., ANALISE EICHER, ROBERTA GASSMAN, JOHN T. HENDRICKS, THOMAS HRUZ, RHONDA LANFORD, BARBARA NOTESTEIN in their official capacities as members of the Wisconsin Judicial Commission,

Defendants.

---

# DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR SUMMARY JUDGMENT MOTION AND IN OPPOSITION TO PLAINTIFF'S SUMMARY JUDGMENT MOTION

---

JOSHUA L. KAUL
Attorney General of Wisconsin

COLIN T. ROTH
Assistant Attorney General
State Bar #1103985

FAYE B. HIPSMAN
Assistant Attorney General
State Bar #1123933

Attorneys for Defendants

Wisconsin Department of Justice
Post Office Box 7857
Madison, Wisconsin 53707-7857
(608) 266-7636 (CTR)
(608) 264-9487 (FBH)
(608) 294-2907 (Fax)
colin.roth@wisdoj.gov
faye.hipsman@wisdoj.gov

**TABLE OF CONTENTS**

INTRODUCTION .......... 3

ARGUMENT .......... 3

I. The Confidentiality Provisions are constitutional. .......... 3

A. The Confidentiality Provisions have many valid applications. .......... 3

B. The Confidentiality Provisions are also valid post-dismissal. .......... 4

1. Preserving confidentiality after dismissal is essential. .......... 5

a. Several compelling state interests outlast dismissal. .......... 5

b. *Landmark* supports these interests. .......... 8

2. The Confidentiality Provisions are narrowly tailored. .......... 10

3. Commission counter-speech wouldn't be an adequate replacement for confidentiality. .......... 14

C. Severance would be proper for any invalid applications. .......... 16

II. The Confidentiality Provisions aren't unconstitutionally vague. .......... 17

III. A permanent injunction wouldn't be proper. .......... 18

## INTRODUCTION

This case has narrowed greatly since it began. At first, IRG seemed to say that the First Amendment *always* forbids confidentiality in the proceedings of judicial disciplinary commissions. But confronted with the widely recognized state interests in confidentiality—protecting the judiciary and the disciplinary process itself—IRG backs off. It now accepts that confidentiality validly protects the Commission's investigative phase. And it now accepts that confidentiality validly protects the Commission's deliberative process. Wisconsin's confidentiality provisions thus shouldn't be invalidated entirely. The remaining dispute centers on confidentiality *after* the Commission dismisses a complaint, but confidentiality (unaccompanied by criminal or civil penalties for breaches) serves compelling state interests then, too.

## ARGUMENT

### I. The Confidentiality Provisions are constitutional.

#### A. The Confidentiality Provisions have many valid applications.

Two key concessions confirm that IRG's quarrel with the Confidentiality Provisions is a narrow one, limited to a subset of the Provisions' applications.

First, IRG seems to accept that confidentiality can validly protect the Commission's investigative phase—that is, the period while the Commission evaluates whether to file a public complaint with the Wisconsin Supreme Court. *See* Wis. Stat. § 757.85(1)–(5). In proposing narrower alternatives to the Confidentiality Provisions, IRG recognizes that "[e]ach of [the state's] interests could be served" by imposing confidentiality on "active investigations." (Dkt. 40:15; *see also* Dkt. 40:4–5 (arguing that state interests "presuppose[ ] an open investigation"), 8 (acknowledging

"near universal existence of some confidentiality regime during the investigatory phase").) That's a big concession, since every complaint filed with the Commission travels through this evaluation phase before it's resolved.

Second, IRG also seems to grant that confidentiality can validly protect the Commission's deliberative process. As part of its narrower alternatives argument, IRG suggests that "confidentiality could be limited to internal votes or drafts." (Dkt. 40:16.) That's another substantial concession covering every single complaint filed with the Commission, since the Commission and its staff engage in a deliberative process for them all.

IRG therefore tacitly recognizes that the Provisions can be validly applied during *every* complaint's investigative phase and to the Commission's deliberations.

**B. The Confidentiality Provisions are also valid post-dismissal.**

The parties' only apparent dispute concerns the "perpetual" confidentiality for complaints the Commission dismisses. (Dkt. 40:6 (arguing against "perpetual ban"), 7 (same), 8 (same), 13 (similar), 14 (similar), 15 (same).) That is, IRG challenges only how in "*this* case" it can't publicly discuss the complaint it filed, now that the Commission has "examined [IRG's] request, found no probable cause, and then closed the matter." (Dkt. 40:5; *see also id.* (critiquing state interests "after dismissal").)

That narrow challenge fails too. As the Supreme Court recognized in a very similar context, "the interests in grand jury secrecy . . . are not eliminated merely because the grand jury has ended its activities." *Douglas Oil Co. of Cal. v. Petrol Stops Nw.*, 441 U.S. 211, 222 (1979). So too here. Wisconsin's interests in preserving confidentiality continue after the Commission dismisses meritless complaints.

### 1. Preserving confidentiality after dismissal is essential.

It's important to first pinpoint what exactly IRG wants to disclose publicly. IRG doesn't merely want to criticize "what the government itself decided"—that is, the Commission's "decisions not to investigate." (Dkt. 40:7.) That public discussion isn't possible unless IRG also discloses (1) the fact that it filed a complaint with the Commission, (2) the targeted judicial official's identity, (3) the nature of the alleged misconduct, and (4) any supporting evidence. Wisconsin has several compelling interests in maintaining the confidentiality of that information, even after dismissal.

#### a. Several compelling state interests outlast dismissal.

Wisconsin's interest in protecting the quality and reputation of its elected state judiciary is a state interest "of the highest order." *Kamasinski v. Jud. Rev. Council*, 44 F.3d 106, 110 (2d Cir. 1994). Preserving confidentiality after meritless complaints are dismissed advances this whole set of state interests: preserving the reputation of individual judges, protecting broader confidence in the judiciary, and attracting qualified judges. (Dkt. 36:11–14.)

IRG recognizes that the "overwhelming majority of requests" filed with the Commission "are meritless or do not warrant investigation," (Dkt. 40:5), which is exactly the point (*see* Dkt. 42:5 ¶ 13). As to that "overwhelming majority," IRG simply ignores the American Bar Association's recognition that it's "unfair to the judge and undermines the work of the commission . . . to allow any adverse inferences to be drawn from the mere existence of a complaint when it was not substantial enough to state a possible ground for discipline." *Model Rules for Judicial Disciplinary Enforcement*, Am. Bar Ass'n (Aug. 13, 2018),

https://www.americanbar.org/groups/professional_responsibility/model_rules_judicial_disciplinary_enforcement/rule11/. The "adverse inference," even when the Commission dismisses a complaint, is obvious: Disclosing that a complaint was filed implies that the allegations were serious enough, even if dismissed, to merit a filing. Indeed, that's exactly the inference IRG wants people to draw—it says a complainant's "credibility" increases if they can affirmatively answer the question "have you filed a complaint?" (Dkt. 40:12.) Those adverse inferences cause "incremental harm" to the judiciary, above and beyond the permissible public discussion of a complaint's underlying factual allegations. (Dkt. 40:7.)

Preserving confidentiality after dismissal also serves Wisconsin's interest in helping the Commission do its job effectively. Most importantly, IRG offers no real rebuttal to how confidentiality encourages witness participation (Dkt. 36:14–15, 28), something IRG recognizes is "essential to the Commission's work" (Dkt. 42:9 ¶ 22). There's no genuine dispute over the following key facts:

- "Numerous complainants and witnesses have expressed significant reservations and concerns to the Commission and Commission staff about possible retaliation from judicial officials and other interested parties for providing information or materials to the Commission." (Dkt. 42:8 ¶ 21.[1])
- This "concern often remains . . . even if the Commission has elected to dismiss

[1] IRG says this proposed fact "lacks foundation" and is a "legal conclusion[ ]." (Dkt. 42:8 ¶ 21.) But it's plainly a fact, not a legal conclusion. And its "foundation" is observations by the Commission's Executive Director, who oversees the Commission's investigations. (Dkt. 42:2–3, 8 ¶¶ 3, 5–6, 21.) IRG also calls the fact an "opinion," but the fact reports concrete events the Executive Director has observed. (Dkt. 42:8 ¶ 21.) And IRG cites no other evidence in the record to contradict this fact.

the matter without the filing of a public complaint." (Dkt. 42:8 ¶ 21.[2])

- Absent confidentiality of Commission proceedings, potential witnesses "who may be more willing to speak to or cooperate with the Commission because of the confidentiality of their identity, would be less likely to cooperate with the Commission." (Dkt. 42:8 ¶ 20.[3])

Despite these undisputed facts, IRG announces (without explaining further) that Wisconsin's interest in encouraging witness cooperation "evaporates once an investigation ends." (Dkt. 40:7.) But why would a potential witness worried about "retaliation from judicial officials" (Dkt. 42:8 ¶ 21) feel any better about cooperating, knowing that everything could become public if the Commission ultimately dismisses the complaint? That possibility would only make witnesses *less* likely to cooperate. Perhaps if "no witnesses have been interviewed" (Dkt. 40:5), publicly disclosing a complaint might not put anyone at risk of retaliation. But perhaps not—the target judicial official might not know that the Commission didn't interview any witnesses and instead simply presume that the relevant witnesses cooperated with the Commission. Either way, IRG's quarrel becomes even narrower: confidentiality for dismissed complaints where no witnesses were interviewed. And even setting witness-protection interests aside, Wisconsin's separate interests in protecting its judiciary all apply equally here too.

Lastly, disclosing complaints after dismissals would undermine Wisconsin's

[2] IRG's objections fail for the same reasons described in footnote 2. (Dkt. 42:8 ¶ 21.)

[3] Although this proposed finding is closer to an opinion (Dkt. 42:8 ¶ 20), lay opinion testimony is permitted under Fed. R. Evid. 701, and IRG offers no contrary evidence that undermines it.

interest in encouraging the voluntary resignation or retirement of investigated judicial officials. (Dkt. 36:15–16.) Simply put, judges won't voluntarily resign or retire rather than face public proceedings if even dismissed complaints can become public. IRG calls this interest "irrelevant" in this particular case (Dkt. 40:7), but there's no workable way to draw such a line without placing the Commission in a Catch-22—the Commission can't confirm or deny whether a judge had retired or resigned during a particular investigation without breaching confidentiality.

**b. *Landmark* supports these interests.**

IRG also continues to insist that *Landmark* rejects all these interests as *ever* justifying confidentiality. (Dkt. 40:9–14.) In IRG's view, *Landmark* means that confidentiality provisions "cannot immunize judges or judicial-discipline proceedings from public discussion" and that confidentiality interests are *always* "insufficient to suppress speech about those proceedings." (Dkt. 40:9.) But that sweeping reading of *Landmark* is incorrect and can't be squared with IRG's concessions. If confidentiality can be validly required both during the Commission's investigative phase and as to the Commission's deliberative process—and IRG recognizes as much (Dkt. 40:15–16)—then *Landmark* means that these interests *can* justify confidentiality.

Indeed, *Landmark* held that these state interests don't justify confidentiality only in "narrow and limited" circumstances involving "criminal sanctions" on "nonparticipants." *Landmark Commc'ns, Inc. v. Virginia*, 435 U.S. 829, 838, 841 (1978). In other words, *Landmark* only prohibits confidentiality provisions with two attributes: those that (1) impose criminal sanctions (2) on nonparticipants to the disciplinary proceedings. IRG proposes discarding these two key limitations as the

mere happenstance of "what was presented" in the case, asserting that *Landmark*'s "critical holding" doesn't "depend on those distinctions." (Dkt. 40:10.) But that's not a reasonable reading of the case.

First, the distinction between criminal and lesser punishments was critical to *Landmark*'s holding and reasoning. Beginning with the very first paragraph, *Landmark* emphasized how Virginia punished confidentiality breaches with "criminal sanctions." *Landmark*, 435 U.S. at 830. The Court repeated that fact over and over, incorporating it both into the question presented and the holding. *See id.* at 837–38 (question presented and holding), 841 (question presented), 843 (same). Equally important, the Court also repeatedly contrasted Virginia's draconian approach with other jurisdictions that protected confidentiality *without* using criminal punishment. *Id.* at 834 n.5 (mentioning how proposed federal system wouldn't "impose criminal sanctions"), 836–37 (noting how "criminal sanctions" were "not a common characteristic of the state plans"), 841 (similar). And to top it off, the Court all but blessed "careful internal procedures"—rather than criminal sanctions—to "protect the confidentiality of [disciplinary commission] proceedings." *Id.* at 845.

Second, the distinction between "participants" and "third persons" was critical too. *Id.* at 837. Again, *Landmark* framed the issue as whether "third parties, not themselves involved in the [disciplinary] proceedings" could be punished. *Id.* at 836; *see also id.* at 837 (question presented involved only "third persons who are strangers to the inquiry"), 841 (addressing punishment of "nonparticipants"). The Court expressly reserved judgment on whether a State could "punish participants" for

breaching confidentiality. *Id.* at 837. And the Court again expressly contrasted Virginia's provision with others, this time with those that only covered "participants" to the disciplinary proceedings. *Id.* at 841 n.12. IRG therefore gets it backwards in arguing that *Landmark* somehow "applies with even greater force" to complainants. (Dkt. 40:9.) Those are precisely the kind of participants who can be subjected to "careful internal procedures" that preserve confidentiality. *Landmark* at 845.

*Landmark* therefore didn't merely provide a "factual statement about that particular case" when it emphasized how Virginia's provision criminally sanctioned nonparticipants. (Dkt. 40:10.) Rather, those attributes were material to *Landmark*'s holding. Because the Confidentiality Provisions here lack them, *Landmark* strongly suggests that the Provisions comply with the First Amendment.

**2. The Confidentiality Provisions are narrowly tailored.**

IRG doesn't meaningfully dispute all the ways in which the Confidentiality Provisions are narrowly tailored: they allow discussion of the underlying facts, aren't punishable through criminal sanctions or fines, don't carry consequences for third parties, and end upon a finding of probable cause. (Dkt. 36:23–28.) Instead, IRG incorrectly says this tailoring is "incomplete or legally irrelevant." (Dkt. 40:4.)

***Underlying facts aren't confidential.*** IRG can publicly discuss the alleged misconduct underlying its complaint, an ability IRG doesn't expressly contest. (Dkt. 40:12.) That's all *Butterworth v. Smith*, 494 U.S. 624 (1990), requires for witnesses who testify before grand juries—they can disclose the substance of their testimony but not the fact that they testified, *see id.* at 636 (Scalia, J., concurring)—and it's good enough here too. IRG's contrary arguments aren't persuasive.

Most prominently, IRG says that it still can't criticize the Commission itself for not "doing its job." (Dkt. 40:12.) In other words, IRG apparently wants to "hold [the Commission] accountable" for how IRG's complaint was handled. (Dkt. 40:12.)

But that doesn't outweigh Wisconsin's confidentiality interests, as shown by a comparison to the similar secrecy rule for grand juries. Judicial disciplinary commissions have "functions . . . similar to those of the grand jury,"[4] and so the "traditional notion of protection for a non-indicted target applies equally well in the disciplinary setting." *First Amend. Coal. v. Jud. Inquiry & Rev. Bd.*, 784 F.2d 467, 473 (3d Cir. 1986). One main purpose of "preserving the secrecy of [grand jury] proceedings" is to "assure that persons who are accused but exonerated by the grand jury will not be held up to public ridicule." *Douglas Oil Co. of Cal.,* 441 U.S. 211 at 219. Although exceptions exist, there isn't one for people who want to criticize a grand jury for declining to return an indictment—the "proper functioning of our grand jury system" outweighs that interest. *Id.* at 218. By analogy, that's true here too. The proper functioning of judicial disciplinary commissions outweighs IRG's interest in criticizing the Commission for its work in particular cases. If IRG wants to criticize the Commission for declining to investigate and charge enough judges, it can do so using public statistics. (Dkt. 42:5 ¶ 13.)

IRG also complains that an accuser's credibility is "hurt" if they can't disclose that they've filed a complaint with the Commission. (Dkt. 40:12.) But that makes

[4] Much like grand juries, disciplinary commissions "cannot impose, but only recommend, punishment." *First Amend. Coal. v. Jud. Inquiry & Rev. Bd.*, 784 F.2d 467, 473 (3d Cir. 1986).

little sense. If an accuser is asked whether they've done so, they can simply respond, "state law forbids me from telling you if I had." No one could reasonably draw any negative inferences from that answer. Wisconsin's interests in an effective disciplinary process outweigh any marginal credibility impact on accusers anyway.

Last, IRG sometimes still suggests that it's "barred from disclosing the substance of [its] own complaint or testimony" and can't speak "about [its] own allegations." (Dkt. 40:13.) That's just not true—IRG staff *did* publicly discuss the conduct addressed in its complaint. (Dkt. 38:7 ¶¶ 30–32.) Confidentiality only applies to the Commission's "proceedings," not the underlying alleged facts. Wis. Stat. § 757.93(1)(a). And IRG makes the same mistake when it says confidentiality somehow "discourage[s] the filing of complaints" because those who don't file aren't subject to confidentiality requirements. (Dkt. 40:7.) Similarly, IRG compares apples to oranges in contrasting complainants (who can't discuss the "fact that a complaint was filed" with non-complainants (who can engage in "unrestricted *public* speech . . . regarding those same underlying allegations"). (Dkt. 40:15.) Both complainants and non-complainants can publicly discuss underlying alleged facts, and so there's no asymmetry between the two that might dissuade someone from filing a complaint.

***No criminal or civil penalties.*** As *Landmark*'s emphasis on "criminal sanctions" shows, 435 U.S. at 830, the absence of criminal (or even civil) penalties here matters greatly for narrow tailoring. The Commission has at its disposal only the kinds of "internal procedures" implicitly blessed in *Landmark*: dismissing a complaint or admonishing breachers. *See* Wis. Admin. Code JC § 3.01.

In response, IRG first references a "letter" from members of the Wisconsin Supreme Court complaining about someone else's confidentiality breach in a different matter. (Dkt. 40:11.) That's speech from someone *other* than the Commission, not any sort of penalty *by* the Commission. And IRG's conjecture about "conflicts of interest" arising from how that Court appoints some Commission members (Dkt. 40:11; *see* Wis. Stat. § 757.83(1)) is both gratuitous and beside the point. IRG may question the process for Commission appointments without breaching confidentiality.

And IRG speculates about the possible "chilling effect" of the Commission's referring confidentiality breaches to Wisconsin's Office of Lawyer Regulation (OLR). (Dkt. 40:12.) That Commission speech isn't a penalty or even an "administrative" consequence that follows from any "official process[ ]" or "power" of the Commission. (Dkt. 40:12.) The only case IRG cites here—*New York Times Co. v. Sullivan*, 376 U.S. 254 (1964)—involved the "pall of fear and timidity" caused by threatened monetary judgments under civil libel laws. *Id.* at 277–78. Those civil consequences reside in another universe from the Commission hypothetically communicating with OLR about confidentiality breaches (which there's no evidence it has ever done).

At bottom, *Landmark*'s heavy focus on the remedy for confidentiality breaches makes little sense if even such lenient consequences violated the First Amendment.

***No penalties on third parties.*** Other than misstating *Landmark*, IRG offers no response to how third parties face no consequences whatsoever for breaching confidentiality. IRG merely notes that the "speech at issue is materially identical" whether coming from a participant to Commission proceedings or a third party.

(Dkt. 40:10–11.) True, but *Landmark* strongly suggested that this distinction matters by carving out "punish[ing] participants" from its holding and citing (without criticism) provisions providing for exactly that. 435 U.S. at 837, 841 n.12.

***Confidentiality ends if probable cause is found.*** Recognizing that confidentiality obligations cease when the Commission finds probable cause of a violation and files a public complaint, IRG responds that they should also end when the Commission *doesn't* find probable cause and dismisses a complaint. But that would raise all the problems discussed above. Preserving confidentiality only during an investigation isn't enough to protect the judiciary and the Commission's work. Contrary to IRG's suggestion (Dkt. 40:13), *Adams v. Comm'n on Jud. Conduct & Disability*, 165 F. Supp. 3d 911 (N.D. Cal. 2016), supports that logic. There, federal disciplinary proceedings had ended (with a misconduct finding, unlike here), and the plaintiffs wanted access to investigative materials. But the court affirmed the "bar on disclosure, even after the conclusion of the proceedings," because the "government's interest in maintaining confidentiality" doesn't "end[ ] once the proceedings conclude." *Id.* at 929–30.

**3. Commission counter-speech wouldn't be an adequate replacement for confidentiality.**

Instead of confidentiality, IRG proposes that the Commission rely solely on counter-speech to "correct the public record" when Commission proceedings are publicly disclosed. (Dkt. 40:16); *see* Wis. Stat. § 757.93(2). IRG seems to envision something like this: if a complainant publicly says "I filed a complaint against Judge X with the Commission," the Commission might respond with something like

"Judge X is innocent until proven guilty." That wouldn't adequately replace confidentiality for several reasons.

For one, this kind of counter-speech couldn't cure the harm to the Commission's own effectiveness caused by public disclosures. Assume for now that counter-speech might mitigate harm to a judge's reputation. But if Commission proceedings can be (and are) discussed publicly, counter-speech can't fix two other problems. One, witnesses would still be dissuaded from cooperating with Commission investigations. And two, the Commission itself would have a harder time insulating its deliberations from public pressure. Nothing the Commission might say to "correct the public record" could undo those harms. Nor would counter-speech adequately protect the judiciary's reputation either. Public allegations of judicial misconduct met with Commission qualifications would yield, at best, an apparent he-said-she-said that would still tarnish the reputation of individual judges and the judiciary as a whole.

The "evidence" that IRG demands regarding the ineffectiveness of counter-speech (Dkt. 40:17) can be found in the "collective judgment" of virtually all jurisdictions that confidentiality is essential to judicial discipline.[5] *Landmark*, 435 U.S. at 836; *cf. Butterworth*, 494 U.S. at 635 (noting that other jurisdictions' practices

---

[5] IRG vaguely asserts that "many" other jurisdictions have "narrower" confidentiality restrictions or "explicit exceptions" that Wisconsin's lacks. (Dkt. 40:8.) But it doesn't identify a single such jurisdiction or cite any sources for this assertion. Information gathered by the National Center for State Courts indicates that confidentiality extends after dismissal in most jurisdictions. *See* Ctr. For Jud. Ethics, *Judicial Ethics Governance*, Nat'l Ctr. for State Cts., https://www.ncsc.org/resources-courts/judicial-ethics-governance ("Confidentiality of Proceedings" tab) (last visited Nov. 16, 2026); *see also* Mary Ellen Keith, *Judicial Discipline: Drawing the Line Between Confidentiality and Public Information*, 41 S. Tex. L. Rev. 1399, 1402 (2000) ("Most states . . . make public the matter only after some level of probable cause findings.").

are "probative of the weight to be assigned [to a state's] asserted interests and the extent to which the prohibition in question is necessary to further them"). Put differently, if counter-speech alone sufficed to protect the critical state interests at play here, there'd be no need for confidentiality provisions in the first place. But virtually all jurisdictions have come to a different conclusion: only robust confidentiality can ensure an ethical judiciary and an effective disciplinary process.

**C. Severance would be proper for any invalid applications.**

At most, IRG shows only that some applications of the Confidentiality Provisions are invalid: when they require confidentiality after the Commission has dismissed a complaint for lack of probable cause. Those applications, if invalid, should be severed from the many that IRG concedes are lawful: confidentiality during the investigative phase and as to the Commission's deliberative process. (Dkt. 36:30–31.)

IRG responds that the good must be thrown away with the bad, citing *United States v. Stevens*, 559 U.S. 460 (2010). (Dkt. 40:20.) But *Stevens* involved a statute that was "substantially overbroad" under the First Amendment because its "presumptively impermissible applications . . . far outnumber[ed] any permissible ones." 559 U.S. at 481–82. There's no such lopsided ratio here, especially given IRG's recognition that *some* confidentiality validly shields every single proceeding. Nor in *Stevens* was there any "simple" line to be drawn. *See Ayotte v. Planned Parenthood of N. New England*, 546 U.S. 320, 329 (2006). The statute at issue generally barred "depictions of animal cruelty"—restricting it to just "extreme" examples would have still required significant "prosecutorial restraint" to ensure First Amendment compliance. *Stevens*, 559 U.S. at 462, 464, 480. Here, there's a very simple, clear, and

administrable line that could be drawn: confidentiality for pre-dismissal proceedings that ends upon dismissal.

And IRG ignores three cases that recognize how severance is appropriate in cases just like this one. First, *Broadrick v. Oklahoma*, 413 U.S. 601, 613 (1973), endorses "partial invalidation" when confronted with overbroad statutes in the First Amendment context. Second, *Butterworth* used exactly that kind of remedy. The statute there prohibited grand jury participants from disclosing witness testimony (with only narrow, inapplicable exceptions). 494 U.S. at 627. Yet the Supreme Court invalidated the statute only "insofar as [it] prohibit[ed] a grand jury witness from disclosing his own testimony after the term of the grand jury has ended." *Id.*; *see also id.* at 636 (affirming invalidation of only a "portion of the . . . statute"). Justice Scalia, concurring, confirmed that the statute could still bar witnesses from disclosing "the fact that [they] conveyed . . . information to the grand jury." *Id.* (Scalia, J., concurring). Third, *First Amendment Coalition* mimicked *Butterworth*'s remedy as to judicial discipline confidentiality. There, too, the court concluded that witnesses can't be barred from disclosing the substance of their own testimony. *First Amend. Coal.*, 784 F.2d at 479. But the court held that the provision still "may be enforced" to prevent participants from "disclosing proceedings" before the body. *Id.*

The same kind of limited remedy is all that would be appropriate here. Simply put, there's no good reason to expose all the Commission's proceedings to public view when a surgical fix would easily cure the only possible issue IRG still identifies.

## II. The Confidentiality Provisions aren't unconstitutionally vague.

IRG offers no meaningful response to how the Confidentiality Provisions have

an "an ascertainable core of meaning," *Smiley v. Jenner*, 173 F.4th 865, 872 (7th Cir. 2026), an especially easy test to meet given the lack of civil or criminal penalties. *See Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489, 498 (1982). IRG's concessions recognize a host of applications at the "core" of the Provisions. And even where IRG is supposedly confused, IRG understood the Provisions well enough to file this case challenging how it can't discuss a specific complaint, even after the complaint's dismissal. Nor does Wis. Admin. Code JC § 3.01's "residual clause" allow the Commission to "invent new consequences without any legislative standards," (Dkt. 40:19); the Commission can't invent penalties without statutory authorization. *See Koschkee v. Taylor*, 2019 WI 76, ¶ 14, 387 Wis. 2d 552, 929 N.W.2d 600.

## III. A permanent injunction wouldn't be proper.

The Commission "did not . . . address" IRG's request for a permanent injunction (Dkt. 40:21) because IRG's claim fails on the merits for all the reasons discussed above and in the Commission's opening brief. And even if IRG prevails, a permanent injunction still would be improper because declaratory relief alone would suffice—government officials presumably follow the law absent evidence they'll do otherwise. *See Badger Cath., Inc. v. Walsh*, 620 F.3d 775, 782 (7th Cir. 2010) (noting that "the choice between declaratory judgment and an injunction" is "left to the district judge's discretion"); *Krasno v. Mnookin*, No. 21-CV-99-WMC, 2025 WL 3642074, at *3 (W.D. Wis. Dec. 16, 2025) (in First Amendment case, finding "a declaratory judgment [would] provide sufficient relief" and "mak[e] an injunction an unnecessary").

Dated this 16th day of November 2026.

Respectfully submitted,

JOSHUA L. KAUL
Attorney General of Wisconsin

s/ Colin T. Roth
COLIN T. ROTH
Assistant Attorney General
State Bar #1103985

FAYE B. HIPSMAN
Assistant Attorney General
State Bar #1123933

Attorneys for Defendants

Wisconsin Department of Justice
Post Office Box 7857
Madison, Wisconsin 53707-7857
(608) 266-7636 (CTR)
(608) 264-9487 (FBH)
(608) 294-2907 (Fax)
colin.roth@wisdoj.gov
faye.hipsman@wisdoj.gov

## CERTIFICATE OF SERVICE

I certify that on November 16, 2026, I electronically filed Defendants' Memorandum of Law in Support of their Summary Judgment Motion and in Opposition to Plaintiff's Summary Judgment Motion with the clerk of court using the CM/ECF system, which will accomplish electronic notice and service for all participants who are registered CM/ECF users.

<u>s/ Colin T. Roth</u>
COLIN T. ROTH
Assistant Attorney General
State Bar #1103985